UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUCLIDES SOTO, LOUIS A. MARTINEZ, JOSE RAMIREZ, CLEMENTE HERNANDEZ, CESAR PIZARO, ELISON PENA, JUAN COLON, JOSE ORTIZ, RAFAEL TORRES, ANGEL BAEZ, ANTONIO MARTINEZ, WILFREDO ORTIZ, EULOGIO ORTIZ, MIRRAIN MIRANDA, RAFAEL MORENO, NELSON ACEVEDO, and RAMON RODRIGUEZ, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STEELWORKERS OF AMERICA AND ITS LOCAL 421-U, ET AL. <br><br> DEFENDANTS | NO. 04-10892-JLT |

## MOTION TO AMEND COMPLAINT TO ADD NATIONAL UNION AND DISCRIMINATION COUNT

This is the first motion to amend in this case. Amendments should be freely given under Fed. R. Civ. P. 15. Before moving to amend the complaint, each plaintiff filed an administrative complaint at the Massachusetts Commission Against Discrimination (MCAD) and the Equal Employment Opportunity Commission (EEOC). The Steelworker's union has engaged in a pattern and practice of continuous discrimination against its Hispanic membership at the Farnsworth Fibre Corporation (Farnsworth), in violation of Massachusetts General Laws, c.151B, §4, ¶2 and Title VII of the 1964 Civil Rights Act. Various plaintiffs lost fingers and suffered burns of their bodies at Farnsworth while the Steelworker's were their union. Each Complainant is

Hispanic, who worked for Farnsworth. During the entire course of his employment, each was a dues-paying member of Local 421-U (District 4) of the United States Steelworkers of America. During the entire course of his employment, the union failed to provide him with the privileges accorded to non-Hispanic union members.  Although the entire work force at his job site was Hispanic, the union local failed to provide a Spanish-speaking interpreter to keep the membership appraised of issues. .The union failed to engage management in any way (including failing to file grievances) to address the issues of an unsafe workplace. The union failed to put in place any apprentice, training, or educational program at his work site. On November 7 and 14, 2003, the first and second shifts, respectively, were laid off and shop closed. The entire shop had been placed on notice on October 31, 2004 that the shop was closing. The union did nothing to address the lay off issue, although the contract gives it the right to grieve the closing. The membership attempted to enlist the aid of the International Steelworkers Union regarding the local's complete failure to represent the membership. The International did nothing. The terms of collective bargaining agreement and the failure to bargain about the effects of the layoff were unlawful.  The claims, thus, have little bearing on the collective bargaining agreement (CBA). In essence, the union is being called to task for taking dues from Hispanic members in a sweat-shop where fingers were lost and bodies incinerated.

    The plaintiffs anticipate an opposition based on jurisdictional grounds because the MCAD ruled that it had no jurisdiction over the case. It is hard to imagine that letting Hispanic members be burned in industrial fires and to lose digits in a sweat shop involves conduct that American law protects for the good of labor unions. In *Morales-Vallellanes v. UPS*, 339 F.3d 9 at 15 (2003), Judge Lipez found a way out of these cabalistic pre-

emption arguments by writing for the majority that "the more prudent course is to broadly construe the allegations of the amended complaint as alleging a cause of action under the collective bargaining agreement and Title VII."

Preemption analysis relies of the assumption that 'the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was clear and manifest purpose of Congress.'" *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67, S.Ct. 1146, 91 L.Ed 1447 (1947). The burden is on the party seeking preemption to establish that enforcement of the state laws would frustrate and interfere with the purpose of the Federal Act. *See Abdu-Brisson v. Delta Air Lines, Inc.*, 128 F.3d 77, 83 (2nd Cir.1997) (citing *New York State Conf. Of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995); *Gade v. National Solid Wastes Management Ass'n* 505 U.S. 88, 98 (1992); and *LaRosa v. UPS*, 23 F. Supp.2d 136 (D. Mass. 1998). The gravamen of the amended complaint is violation of discrimination laws regarding a "labor organization."

The defendant's first preemption argument is that the plaintiff's claim is preempted by the collective bargaining agreement between the union and the employer which, among other things, provides a grievance and arbitration procedure. Labor Management Act, § 301, 29 U.S.C. § 185. The argument fails, however, because the present controversy concerns the plaintiff's rights under state and federal statutes which exist independently of the collective bargaining agreement and do not require interpretation of that agreement. *Livadas v. Bradshaw*, 512 U.S. 107, 123-124, 114 S.Ct. 2068, 129, L.Ed.3d 93 (1994); *Hawaiian Airlines v. Norris,* 512 U.S. 246, 261, 114 S. Ct.

2239, 2248, 129 L.Ed.2d 203 (1994).  *Ralph v Lucent Tech.*, 135 F.3d 166, 171 (1st Cir. 1998, applying federal law to MCAD proceeding).

The second pre-emption argument is a purely factual inquiry which likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement. *Lingle v. Norge Division of Magic Chef*, 413 U. S. 399, 413 (1988). ("In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the just cause language of a collective bargaining agreement."). This case does not involve discrimination during a union job action; compare *Local 12004 v. MCAD*, Slip Op. 03-2352. The Appeals Court reasoned as follows: "Most notably, there is no question that the insults and epithets that union members directed towards McGrath while they were picketing are, at the very least, arguably protected by § 7 of the NLRA. The NLRA clearly protects the right of picketing workers to use a variety of harsh and insulting speech -- including racial, ethnic, and homophobic slurs -- in furtherance of their § 7 right to engage in 'concerted activities for the purpose of collective bargaining or other mutual aid or protection.' 29 U.S.C. § 157. See, e.g., *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 283 (1974) ('[F]ederal law gives a union license to use intemperate, abusive, or insulting language without fear of restraint or penalty if it believes such rhetoric to be an effective means to make its point.'); *Milk Wagon Drivers Union of Chi., Local 753 v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 293 (1941) (peaceful picketing is protected despite 'moment[s] of

animal exuberance'); *Nat'l Council of Young Israel*, 276 N.L.R.B. 1123, 1136 & n.14 (1985) (calling replacement workers '[n]iggers' was protected conduct under § 7); *Ben Pekin Corp.*, 181 N.L.R.B. 1025, 1028 (1970) ('[O]ffensive, vulgar, defamatory, or opprobrious remarks uttered during the course of protected, concerted activities will not automatically destroy the right conferred by the Act to engage in conduct otherwise safeguarded by its text.'). At the same time, it also may be 'facially conclusive' that at least the alleged instances in which union members made credible threats of violence against McGrath are arguably prohibited by § 8 of the NLRA. *See* 29 U.S.C. § 158(b)(1)(A)." The Appeals Court only said this much. The Appeals Court did not uphold a finding of pre-emption. The Appeals Court only said that the case could go forward on preemption grounds in the District Court, for "arguably" there may be a violation of labor law. This case is the opposite. As the Supreme Court has said "a collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in state-law is entitled. See *Baldrachhi v. Pratt & Whitney Aircraft Div, United Technologies Corp.*, 814 F.2d, at 106. Although federal law would govern the interpretation of the agreement to determine proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted. As we said in *Allis Chalmers Corp. v. Lueck*, U.S., at 211, 105 S.Ct., at 1911, "not every

dispute...tangentially involving a collective-bargaining agreement, is pre-empted by §301...." *Lingle*, 486 U.S. at 399, 413,n.12. Nor does this case involve discrimination while an NLRB claim was pending, compare *Chalk Services v. MCAD*, 70 F.3d 1361 (1st Cir. 1995).

The preemption defense does not establish the elements of dismissal. The agency is to review the allegations as set forth in the complaint mindful that, " '[i]n testing the correctness of a judgment dismissing a complaint for failure to state a claim on which relief can be granted, we accept as true all of the allegations of the complaint and all reasonable inferences which may be drawn from the complaint and which are favorable to the party whose claims have been dismissed. Further, a motion to dismiss a complaint on such grounds should not be allowed unless all reasonable inferences which may be drawn from the complaint and which are favorable to the party whose claims have been dismissed." Fed. R. Civ. P. 12 (b) (6) Reporters Notes. All reasonable inferences which may be drawn from the complaint and which are favorable to the complainant establish a claim that is not pre-empted by the NLRA, the LRMA, an interpretation of the CBA, or a pending unfair labor charge (there is none). At worst, the state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted. *Lingle*, 486 U.S. at 413, n. 12.

As noted, *Morales-Vallellanes v. UPS, op. cite,* "the more prudent course is to broadly construe the allegations of the amended complaint as alleging a cause of action under the collective bargaining agreement and Title VII."

Respectfully Submitted,

Robert O. Berger
John Lee Diaz
Attorney for Plaintiffs
11 Beacon Street, Suite 1210
Boston, MA 02108
(617) 423-7575