UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  | CIVIL ACTION |
| --- | --- |
| EUCLIDES SOTO, LOUIS A. MARTINEZ, JOSE RAMIREZ, CLEMENTE HERNANDEZ, CESAR PIZARO, ELISON PENA, JUAN COLON, JOSE ORTIZ, RAFAEL TORRES, ANGEL BAEZ, ANTONIO MARTINEZ, WILFREDO ORTIZ, EULOGIO ORTIZ, MIRRAIN MIRANDA, RAFAEL MORENO, NELSON ACEVEDO, and RAMON RODRIGUEZ, Plaintiffs, v. SHERMAN-FEINBERG CORPORATION, FARNSWORTH FIBRE CORPORATION, UNITED STEELWORKERS OF AMERICA, LOCAL 421-U, AND UNITED STEELWORKERS OF AMERICA, Defendants. | NO.: 04-10892-JLT |

## TRIAL MEMORANDUM

### KEY ISSUES AND DAMAGES.

To ensure that discrimination and harassment are rooted out of the workplace, Title VII and Gen. L. ch. 151 B make both employers and labor organizations accountable for their discriminatory acts. If Title VII and Chapter 151 B only included the former it would often fail in its mission. This is because labor organizations stand as a firewall, as protection for its members, in the face of employer discrimination. Labor organizations therefore occupy a critical battle-line position in fighting discrimination and harassment. As a result, labor organizations can either choose to fight the good fight

or tacitly encourage employer discrimination and harassment by intentionally failing to stand their guard. *Rainey v. Warren and United Steelworkers of America*, 80 F.Supp. 2d 5 (D.R.I. 2000). The union did not stand its guard.

The Steelworker's union has engaged in a pattern and practice of continuous discrimination against its Hispanic membership at the Farnsworth Fibre Corporation (Farnsworth), in violation of Massachusetts General Laws, c.151B, §4, ¶2 and Title VII of the 1964 Civil Rights Act. See Complaint, *passim*. Euclides Soto, Louis A. Martinez, Jose Ramirez, Clemente Hernandez, Cesar Pizaro, Elison Pena, Juan Colon, Rafael Torres, Angel Baez, Antonio Martinez, Wilfredo Ortiz, Eulogio Ortiz, Mirrain Miranda, Rafael Moreno, Nelson Acevedo and Ramon Rodriguez bring this claim. They are from Puerto Rico and the Dominican Republic and speak Spanish. Various of them lost fingers and suffered burns of their bodies at Farnsworth. The Steelworker's were their union and worked for the now defunct Farnsworth. During the entire course of his employment, each was a dues-paying member of Local 421-U (District 4) of the United States Steelworkers of America. During the entire course of his employment, the union failed to provide him with the privileges accorded to non-Hispanic union members. Id. Although the entire work force at his job site was Hispanic, the union local failed to provide a Spanish-speaking interpreter to keep the membership appraised of issues, and failed to post work safety notices. Id. The union failed to engage management in any way (including failing to file any grievances for injuries or workplace discrimination) to address the issues of an unsafe workplace. The union failed to put in place any apprentice, training, or educational program at his work site. There were constant fires at the plant. On November 7 and 14, 2003, the first and second shifts, respectively, were

laid off and shop closed. The entire shop had been placed on notice on October 31, 2003 that the shop was closing. The union did nothing to address the lay off issue, although the contract gives it the right to grieve the closing. The membership attempted to enlist the aid of the International Steelworkers Union regarding the local's complete failure to represent the membership. The International did nothing. The terms of collective bargaining agreement and the failure to bargain about the effects of the layoff were unlawful. Id. The plaintiffs Euclides Soto, Louis A. Martinez, Jose Ramirez, Clemente Hernandez, Cesar Pizaro, Elison Pena, Juan Colon, Rafael Torres, Angel Baez, Antonio Martinez, Wilfredo Ortiz, Eulogio Ortiz, Mirrain Miranda, Rafael Moreno, Nelson Acevedo and Ramon Rodriguez support these allegations in their depositions. Mr. Eugelio Ortiz "uncovered the machine, the machine took my hand and took my hand away," Ortiz, 3-24-05, p. 20; was never notified of meetings; lives on welfare; and at the plant many people were hurt and nobody could help them, id., 21-4. Mr. Elison Pena noted that there were fires during the entire period of time he was there. Pena, 3-22-05, p. 37. Mr. Soto would only see union people when the contract was renewed, Soto, 3-22-05, 16, and worked on a 100 year old machine whose blade snapped, and cut him in the face, id. 26. A 66 year old Mr. Ramirez said "the only thing they [the union] took was money... and didn't tell us about the meetings." Ramirez, 3-22-05, p.35. The employer would "fire people all the time," Pizarro, 3-22-05, p. 15, but there were no union notices of activities or union warnings, id. at 17. One union member has been homeless and hungry since the plant closing. Martinez, 3-23-05, p. 27, and the plant had chemicals and fires and dust all over the plant, id. at 30

In discovery the union made the following admissions. The union neglected to grieve any discharges based on violation of civil rights under the collective bargaining agreement. Lowell Alexander, the union representative, who does not speak Spanish, is not aware that many of the members in that plant have suffered the loss of fingers or suffered burns to their extremities. There were no postings about safety at the workplace. A merger resulted in the Steelworkers getting upholstery workers like the plaintiffs. Union representatives have been advised "to do your best to negotiate as best you can". The original agreement proposals were in English and did not consider plant closings. The Union had not checked the books of Farnsworth Fibre and Sherman-Feinberg to find out their financial picture. Alexander heard scuttlebutt about them taking the money and converting the building into a condominium at one of the meetings prior to the company closing. The hourly wage at this plant starts off at $7.00. The union dues of all Steelworkers is 1.3% of the wage, even if the member gets $35.00 an hour. Plaintiffs did not get the agreement in Spanish before the signing of the agreement. There is no language in the contract that specifies plant closure. The company drafts it; the union reviews it. With respect to other plants, Alexander answered that Sealy Mattress, Bee-Bee Rubber, Rosboro Plastics had plant closing severance language in the collective bargaining agreements, but this plant did not and was not ever asked for by him or anyone else.

Damages are in three classes: 1) unemployed plaintiffs (5); 2) unemployable plaintiffs(2); and 3) some employment since plant closing (5). For the first category of five unemployed plaintiffs, past wages are $60,000, future wages are $150,000, emotional distress of $400,000, punitive damages of $200,000. For the two unemployable

plaintiffs, past wages are $60,000, future wages are $175,000, emotional distress of $400,000, punitive damages of $200,000. Finally, for the five mixed employed-unemployed, past wages are $40,000, future wages are $120,000, emotional distress of $400,000, punitive damages of $200,000. Damages: Damages are compensatory and punitive, along with emotional distress, under 151B and Title VII – 42 U.S. § 2000e-2-5. Attorney fees available as damages under 301 claim – *Zeman v.Jones*, 91 F.Supp 2d 1247 (2000). Attorney fees also available under Title VII – 42 U.S.C. § 2000e-5(k). Emotional distress damages also available in unfair representation claims. *Soto-Segarra v. Sea Land Service, Inc.*, 581 F.2d 291 (1st Cir. 1978). Each plaintiff seeks compensatory damages for the period of time of the plant closing to the time of trial and future lost wages at either the difference between the job now and them or full future wages for those unemployed or unemployable, emotional distress of a fair amount, and punitive damages for this horror.

Deposition transcripts of the union representative and the above mentioned plaintiffs to be delivered by courier.

### Plaintiff's Disparate Treatment Claim

Under § 703(c) of Title VII, a "labor organization," such as the Local Union, may not discriminate. See *42 U.S.C. § 2000e-2*(c). Plaintiffs complain of "disparate treatment" by the Local Union for its failure to process her complaints. This burden may be satisfied by either producing direct or circumstantial evidence. See *Woodman v. Haemonetics Corp., 51 F.3d 1087, 1093 (1st Cir. 1995); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1214 (3rd Cir.1988)*, cert. denied, *490 U.S. 1098, 104 L. Ed. 2d 1004, 109 S. Ct. 2449*

5

*(1989)*. Absent direct evidence of intentional discrimination, a plaintiff in Rainey's position must resort to the familiar burden-shifting framework set forth in *Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-256, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)* and *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973)*; see also *Resare v. Raytheon Co., 981 F.2d 32, 39-44 (1st Cir.1992)* (applying the burden-shifting framework under Title VII in "mixed motive" and "pretext" situations of disparate treatment discrimination); *Iacampo v. Hasbro, Inc., 929 F. Supp. 562, 574-575 (D.R.I.1996)* (same). This Court need not analyze the entire [**28] McDonnell Douglas framework for purposes of this motion. For a summary of Title VII disparate treatment jurisprudence in this Circuit, see *Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 420-422 (1st Cir.1996)*.

> It is clear that the disparate treatment claim is a "pretext" claim. n4 In order to prevail at time of trial in a "pretext" case, plaintiff will have to establish by a preponderance of the evidence that national origin "played a role in [the Local Union's decision making] process and had a determinative influence on the outcome." *Hazen Paper Co. v. Biggins, 507 U.S. 604, 610, 123 L. Ed. 2d 338, 113 S. Ct. 1701 (1993)* (applying Title VII jurisprudence to age discrimination case).

In an employer pretext case, a plaintiff will submit evidence which casts doubt on the legitimate reasons offered by the employer, or would allow a fact finder to infer that discrimination was more likely than not a motivating cause for the decision made by the employer. See *Hicks, 509 U.S. at 510-511, 125 L. Ed. 2d 407, 113 S. Ct. 2742*. In other words, because the fact finder may infer from the combination of the plaintiff's prima facie case and its own rejection of the employer's non-discriminatory reasons that it unlawfully discriminated against the plaintiff and was merely trying to conceal its act with the articulated reasons, see id., a plaintiff who has established a prima facie case

may defeat a motion for summary judgment by pointing to circumstantial or direct evidence that discrimination was more likely than not a motivating factor for the action taken. These same rules apply when the defendant is a labor union. Proof patterns for establishing union liability in disparate treatment claims where the union is alleged to have discriminated actively will not differ from the pattern in cases involving an employer's discriminatory hiring or promotion policies. See, e.g., *Lucas v. Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, 741 F. Supp. 136 (N.D.Ohio 1989),* aff'd, *904 F.2d 707 (6th Cir. 1990); Pennsylvania v. Local 542, Int'l Union of Operating Engineers, 469 F. Supp. 329 (E.D.Pa. 1978),* aff'd, *648 F.2d 922 (3rd Cir.),* rev'd on other grounds, *458 U.S. 375 (1981);* Larson, 2 *Employment Discrimination, § 37.04* (2nd ed. 1999). Quite simply, if plaintiff has pointed to some evidence discrediting or contradicting the non-discriminatory reasons proffered by the defendant, then summary judgment is unwarranted if plaintiff can show "that the defendant acted with the specific intent" of discriminating against plaintiff. *Barbour v. Dynamics Research Co., 63 F.3d 32, 39 (1st Cir.1995),* cert. denied, *516 U.S. 1113, 133 L. Ed. 2d 845, 116 S. Ct. 914 (1996); Fuentes v. Perskie, 32 F.3d 759, 764 (3rd Cir. 1994)* ("holding that a plaintiff can avoid summary judgment by pointing to some evidence from which a fact finder could reasonably conclude that defendant's proffered reasons were fabricated").

In this case, plaintiff has obviously set forth a prima facie case of disparate treatment, to the extent that the framework established in McDonnell Douglas, is applicable. Plaintiff is a member of a protected class, and there is no doubt that the normal grievance procedures were not used. The plaintiff's burden of proof in establishing a prima facie case under Title VII is de minimis. See *Barbour, 63 F.3d at 38.*

The non-discriminatory reasons proffered by the Local Union for not filing plaintiff's grievances are untenable.

As the First Circuit has recently held in a "pretext" Title VII case, at this stage in the summary judgment analysis, "an inquiring court does not ask whether the plaintiff has adduced direct evidence of discrimination, but asks instead whether the evidence presented, regardless of its character, suffices to raise a genuine issue about the pretextuality of the employer's explanation for" its challenged acts. *Fernandes v. Costa Brothers Masonry, Inc., 199 F.3d 572, 1999 U.S. App. LEXIS 34283 (1st Cir. 1999), 1999 WL 1252868*,13-14. In this case, plaintiff's proffered evidence of discriminatory motive, on the part of the Local Union is enough to preclude summary judgment on the "disparate treatment" claim because it indicates a discriminatory motive behind the union's refusal to file grievances for plaintiff or bargain for plant closing language. It was next to impossible for plaintiffs to put their complaints in writing because the union representative, from whom they sought help, repeatedly told them that they had no recourse to the grievance procedure. Consequently, plaintiff has successfully pointed to some evidence of a discriminatory motive, thereby satisfying her burden. See *Barbour, 63 F.3d at 39*.

A union and employer can, by their own actions and omissions violate Title VII and G.L. c. 151B[1] by discriminating against employees. Greenier v. Pace, 201 F.Supp.2d at 180 and cases cited therein. The union's failure to adequately represent its members in the face of employer discrimination can subject the union to liability under either Title

---

[1] See Eggers v. Local 276, Plumbers & Pipefitters Union, AFL-CIO, 644 F. Supp. 795, 806 (D. Mass. 1986)(plaintiff permitted to assert Title VII claims and G.L. c. 151B claims against union for discrimination).

8

VII or its duty of fair representation[2]. Id. at __. This theory focuses on the employer's discriminatory treatment of its employers and the union's failure to file grievances on its member's behalf. See Goodman v. Lukens Steel Co., 482 U.S. 656, 667 (1987). It is axiomatic that a union's failure to adequately represent union members in the face of employer discrimination may subject the union to liability under either Title VII or its duty of fair representation." Rainey v. Town of Warren, 80 F.Supp.2d 5, 17 (D. R.I. 2000).

A union's conduct is discriminatory where the union acquiesces in or encourages employer discrimination the union deliberately chooses not to process grievances of discrimination by the employer. Goodman v. Lukens Steel Co., 482 U.S. 656, 667 (1987). Specifically, in Goodman, the Supreme Court held:

> "A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer and thus improve its chances of success on other issues, or in deference to the perceived desires of its white membership, is liable under both Title [VII] and § 1981, regardless of whether, as a subjective matter, its leaders were favorably disposed toward minorities."

Id.; see Rainey v. Town of Warren, 80 F.Supp.2d 5 (D. R.I. 2000) (union which knew of the nature and extent of the sexual harassment of plaintiff and failed to file grievances on her behalf will be liable under Title VII). In such cases, the plaintiff establishes a prima facie case by presenting evidence to establish that the union was aware of the

---

[2] Although a breach of the duty of fair representation under the National Labor Relations Act can result in a violation of Title VII, it is not a necessary element of plaintiff's case to establish a union's violation of Title VII. See Rainey v. Town of Warren, 80 F.Supp.2d 5, 17 (D. R.I. 2000), citing e.g., Farmer v. Local 1064, United Catering Workers, 1978 U.S. Dist. LEXIS 16407, 21 Fair Empl. Prac. Cas. (BNA) 1599, 1619-1621 (E.D.Mich.1978), aff'd sub nom., Farmer v. ARA Serv. Inc., 660 F.2d 1096, 1104 (6th Cir.1981) ("In fact, it is almost axiomatic that a union's breach of the duty of fair representation also subjects it to liability under Title VII . . .")

9

discriminatory work environment but took no action on its member's behalf. Rainey, supra at 16.

First, although a breach of the duty of fair representation under the National Labor Relations Act can result in a violation of Title VII, it is not a necessary element of plaintiff's case to establish a union's violation of Title VII. See, e.g., *Farmer v. Local 1064, United Catering Workers, 1978 U.S. Dist. LEXIS 16407, 21 Fair Empl. Prac. Cas. (BNA) 1599, 1619-1621 (E.D.Mich.1978)*, aff'd sub nom., *Farmer v. ARA Serv. Inc., 660 F.2d 1096, 1104 (6th Cir.1981)* ("In fact, it is almost axiomatic that a union's breach of the duty of fair representation also subjects it to liability under Title VII . . ."). Clearly, a union can violate Title VII absent a breach of its duty of fair representation. Id. It is axiomatic that a union's failure to adequately represent union members in the face of employer discrimination may subject the union to liability under either Title VII or its duty of fair representation. See 2 Larson, *Employment Discrimination, § 37.05* (2nd ed. 1999) (although the two overlap a great deal they are not identical since there are different standards that apply to each). However, because such proof is not necessary to impose liability on the Local Union under the hostile work environment claim, many of the arguments presented by the Union Defendants on this point miss the mark completely.

The seminal case in addressing union liability for acquiescing in a hostile work environment under § 703(c) of Title VII in circumstances similar to the case sub judice is *Goodman v. Lukens Steel Co., 482 U.S. 656, 96 L. Ed. 2d 572, 107 S. Ct. 2617 (1987)*. In Goodman, the unions argued that they could not be liable under Title VII for failure to pursue racial discrimination grievances on behalf of black union members. The facts in

Goodman revealed that the employer was discriminating against blacks by discharging probationary employees. The facts demonstrated that the unions "were aware of [the discrimination] but refused to do anything by way of filing proffered grievances or otherwise . . .and the Unions had ignored grievances based on instances of harassment which were indisputably racial in nature. . ." *Goodman, 482 U.S. at 666.* In affirming the judgment against the unions based on these facts, the Supreme Court held that:

> A union which intentionally avoids asserting discrimination claims, either so as not to antagonize the employer, . . .or in deference to the perceived desires of its [] membership is liable under . . . Title [VII] . . ."

*Id. at 669.* Goodman clearly establishes that a union that "deliberately chooses not to process grievances" of discrimination by the employer violates Title VII. *Id. at 667.* The Court went on to say that the plain language of the statute supports this conclusion. Id. The outcome of the case turned on the fact that the unions knew of the discrimination and, thus, acted "deliberately" when they chose not to file grievances. The Court did not have to reach the more abstract question of whether the unions had an affirmative duty to ferret out and combat employer discrimination in order to meet its duty. A number of Circuit Courts have also applied the Goodman holding that a union violates Title VII by acquiescing in or encouraging employer discrimination if, with knowledge of the discrimination, the union deliberately chooses not to file grievances. See *Marquart v. Lodge 837, 26 F.3d 842, 853 (8th Cir.1994)* ("If the Union refused to process the sexual harassment complaints of its male and its female members, the union would still violate Title VII because a union may not encourage its employer to discriminate.") (citations omitted); *Seymore v. Shawver & Sons, Inc., 111 F.3d 794, 798 (10th Cir.), cert. denied,*

Courts generally weigh five factors when considering whether to allow equitable tolling in a particular case: "'(1) lack of actual notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the [filing] requirement.'" *Kelley v. N.L.R.B.*, 79 F.3d 1238, 1248 (1st Cir. 1996) (quoting *Kale*, 861 F.2d at 752). These factors are not exhaustive, however; "[i]t is in the nature of equity to entertain case-specific factors that may counsel in favor of tolling." .

The factual inquiry in the trial will examine the failure of the union to post notices, process grievances, invite the Hispanic membership to meetings and only appearing for contract negotiations so that the plaintiffs are strong on this point.

Respectfully Submitted,

John Lee Diaz, Esq.
Robert O. Berger, BBO #: 038900
11 Beacon Street, Suite 1210
Boston, MA 02108
Tel (617) 423-7575

# Assessment of Damages
*Euclides Soto, et. al. v. Sherman-Feinberg, et. al.*

|  | Lost Wages | Future Wages | Emotional Distress | Punitive | Total Damages |
|---|---|---|---|---|---|
| **Unemployed** | | | | | |
| Each Plaintiffs | $60,000 | $150,000 | $400,000 | $200,000 | $810,000 |
| 5 Plaintiffs | | | | | **$4,050,000** |
| | | | | | |
| **Unemployable** | | | | | |
| Each Plaintiff | $60,000 | $175,000 | $400,000 | $200,000 | $835,000 |
| 7 Plaintiffs | | | | | **$5,845,000** |
| | | | | | |
| **Mixed** | | | | | |
| Each Plaintiff | $40,000 | $120,000 | $400,000 | $200,000 | $760,000 |
| 5 Plaintiffs | | | | | **$3,800,000** |

**Grand Total**      **$13,695,000.00**

14