UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUCLIDES SOTO et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>SHERMAN-FEINBERG CORPORATION, )<br>FARNSWORTH FIBRE CORPORATION, )<br>UNITED STEELWORKERS OF AMERICA, )<br>LOCAL 421-U, and UNITED STEELWORKERS )<br>OF AMERICA, )<br><br>Defendants. ) | Civil Action No.<br>04-10892-JLT |

## UNION'S REPLY TO PLAINTIFFS' OPPOSITION TO THE UNION'S MOTION FOR SUMMARY JUDGMENT

When considering a motion for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, such motion will be granted if the pleadings, depositions, answers or interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Aponte-Santiago v. Lopez Rivera, 957 F.2d 40, 41 (1st Cir. 1992). In this case, even taking as true the "factual" allegations made by plaintiffs, they have failed to state a claim upon which relief can be granted.[1] Therefore, for the reasons argued in this Reply and the union's Memorandum of Law in Support of the Union's Motion for Summary Judgment, incorporated herein, the union is entitled to judgment as a matter of law and plaintiffs' claims against the union should be dismissed in their entirety.

---

[1] As described herein, infra part I, the plaintiffs have made many assertions that are either not factual or are unsupported by any record evidence.

I.      THIS COURT SHOULD EITHER STRIKE PLAINTIFFS' FACTUAL STATEMENT
        OR HOLD THAT DEFENDANT'S FACTS ARE DEEMED ADMITTED BECAUSE
        THE STATEMENT FAILS TO COMPLY WITH THE BASIC REQUIREMENTS OF
        RULE 56 AND LOCAL RULE 56.1.

        Local Rule 56.1 "was adopted to expedite the process of determining which facts are

genuinely in dispute, so that the court may turn quickly to the usually more difficult task of

determining whether the disputed issues are material." See Brown v. Armstrong, 957 F. Supp.

1293, 1298 (D. Mass. 1997). The rule accomplishes this objective by requiring the summary

judgment motion to include "a concise statement of the material facts of record as to which the

moving party contends that there is no genuine issue to be tried" with citation to the record. See

Fed. R. Civ. P. 56. The opposition must then "include a concise statement of material facts of

record as to which it is contended there exists a genuine issue to be tried" – also with citations to

the record. D. Mass. Local R. 56.1. If the moving party complies with the local rule, any

material facts of record set forth within their statement "will be deemed for purposes of the

motion to be admitted . . . unless controverted by the statement required to be served by opposing

parties." Id. The non-movant's response must "state what specific facts are disputed and

prevent summary judgment." Vasapolli v. Rostoff, 864 F. Supp. 215, 218 (D. Mass. 1993),

aff'd, 39 F.3d 27 (1st Cir. 1994).

        In enforcing this rule, the First Circuit has held that it is not sufficient to "generate a lot

of dust," but rather, the responding party must "further the goal of sharply focusing areas of

dispute." See Key Trust Co. of Maine v. Doherty, Wallace, Pillsbury & Murphy, P.C., 811 F.

Supp. 733, 734 n. 2 (D. Mass. 1993). Indeed, where a responding party's statement of facts

"makes conclusory statements and allegations that are not supported by citations to the record,"

or "even where citations are provided, [where] the cited portion of the record often does not

support the point for which it is cited," it is appropriate for the Court to impose the sanction of

deeming all of the facts set forth in the moving party's statement to be admitted, at least where the moving party provides proper citations to the record that support the assertion of fact in question. Brown, 957 F. Supp. at 1298.

Turning to the present case, the plaintiffs have submitted some 35 pages of alleged facts, nine pages of which are rambling, sometimes incomprehensible quotes from deposition testimony without any numbering of such facts in any coherent order. [See Plaintiffs' Opp. at 5-14.] Moreover, as described below, most of the alleged facts are simply non-admissible opinion testimony. For example, with respect to the critical issue of whether the plaintiffs can show that the union's actions were motivated by racial or ethnic animus, the plaintiffs provide the following in their "statement of fact:"

> Q:    Do you believe it was because you are Hispanic that the union did not invite you to meetings or otherwise protect you?
>
> A:    Yes.
>
> Q:    Did you feel humiliated about being on welfare?
>
> A:    Yes. Exactly . . . because every time they would come over [the union] they would go straight to their [management's] office.

Id. at 5-6.

> A:    But since we all have rights, the fact that we're Hispanics and we didn't speak the language they would take vengeance on us because of that.
>
> Q:    Take advantage of you? Okay, but do you mean take advantage of you?
>
> A:    Yes, like discriminating me.

Id. at 7.

> A:    My opinion is that the union didn't back us up, they did not give us any support in the way they should have done at the moment when we needed them the most.

3

> Q:    And do you think that was connected to the fact that all of the
>        workers were Hispanic?
>
> A:    I would think that, yes.

Id. at 9.

Again and again in their opposition, plaintiffs make conclusory arguments that fail to raise issues of material fact or evidence that the union discriminated against plaintiffs on the basis of their Hispanic heritage. What plaintiffs allege as "material facts" — both in rebutting the union's statement of material facts and in adding their own — are nothing more than conclusory and unsupported accusations.

With respect to the issue of safety problems at the plant, including fires or injuries, the assertions again are vague, self-serving, and do not state explicit facts that demonstrate union discrimination or otherwise demonstrate actionable conduct by the union.. For example, the plaintiffs make the following assertions of facts in their opposition:

> Q:    Now in the plant, were there fires constantly?
>
> A:    Oh yes.
>
> Q:    And in the plant was there dust flying around?
>
> A:    Too much, a lot.
>
> Q:    In the plant, did people lose fingers?
>
> A:    Yes.[2]
>
> Q:    Tell me, is there any doubt in your mind whether they know about
>        people who had lost their fingers and people who had been cut on
>        their face?  [Presumably they being the union.]

---

[2] Just about all of the questions and answers cited by the plaintiffs in their brief are questions which plaintiffs' attorneys asked of their own witnesses during the deposition. The questions were leading, and in most cases resulted in objections. Because of the leading nature of these questions, they would be inadmissible at trial. Opposition at pp. 5-12.

A:     Yes, I know, I've seen them. There have been many accidents here.

Id. at 6-7.

Q [BY LICHTEN]:     Are you aware of any instances in which someone in which an employee at Farnsworth complained about working conditions or that the workplace was unsafe?

A:     No. Almost at any time, we have to—flee the place because all of a sudden something would catch fire often and all of us would have to just flee the place all the time.

Id. at 12. The plaintiffs in their testimony do not identify dates or individuals involved in the alleged fires and plant accidents, nor do they identify union representatives who allegedly knew of such occurrences. Testimony that accidents generally occurred is not dispositive and does not demonstrate explicit facts in dispute.

In a separate section of their statement of material facts entitled "The Union," which is not separately numbered, plaintiffs make additional assertions that are either untrue or are grossly misleading. For example, plaintiffs contend that "the union never grieved any discharges." Id. at 12. The problem with this assertion is that the plaintiffs fail to identify (in either their statement or their citation to the record) discharges that the union should have grieved but did not. While the contract allowed the union to grieve discharges made without just cause, when the plant closed down in October of 2004, the employees were not discharged for cause, they were simply laid off as a result of a plant shutdown. Therefore, it is unclear from the statement of facts whether the plaintiffs are discussing the plant closing and the layoffs as a result thereof or some other undisclosed discharges about which the court is never apprised.

Next, the plaintiffs assert that "there was no negotiation of the effects of closing the plant, only bumping rights and medical benefits." Id. at 14. Yet the evidence discloses that as soon as Lowell Alexander was informed that the plant was closing, he came down to the plant and met

5

with management. The first thing he attempted to do was to see if there was any way to prevent the plant closing, but he was informed by the company that the decision had been made, the plant was shutting down forever. [See Union's SOF ¶ 22.] Also, plaintiffs concede that the union engaged in negotiations over bumping rights and medical benefits upon the shutdown of the facility. Whether or not they consider such negotiations "effects bargaining"— a union's remedying of grievances involving layoffs and medical benefits pursuant to plant shutdowns constitutes bargaining over the effects of plant shutdowns. Thus, while the union may not have been in a position to obtain severance benefits from the company where none were required under the collective bargaining agreement, it is simply wrong to say that there were no negotiations.

The plaintiffs similarly make the following assertion of alleged material fact:

> Alexander heard scuttlebutt about them [the company] taking the money and converting the building into a condominium at one of the meetings prior to the company closing.

Id. at 15. First, assuming the company did shutdown and convert the plant into condominiums, this fact is in no way material and cannot form the basis of any liability. In the United States, nothing prevents a company from shutting down due to unprofitability and selling off the factory. Just as significantly, all Alexander is alleged to have heard was a rumor. As far as he knew, the rumor could have been started by the employees themselves. This is not a proper fact.

Next, the plaintiffs harp on the fact that "the plant had no apprenticeship or training program." Id. at 15. Once again, there is no materiality to this assertion. The union was not required to have apprenticeship or training programs. Moreover, there is no factual showing that the Steelworkers had such programs at any other plants or factories.

In another section beginning on page 15, which is entitled "Defendant's Purported Undisputed Facts," the plaintiffs continue with their unsupported and non-material facts. For example, they state:

> Plaintiffs dispute the allegation that they were members of the defendant union, their particular Unit, Unit 6 of Local 421-U, was not treated like members because they did not receive benefits, such as invitations to meetings, safety compliance visits by safety officers, and training that other members of the Defendant Unions received.

The citation for this statement is plaintiff's statement of undisputed facts, paragraphs 33 to 95, which would require the court to peruse 62 paragraphs of statements to find out which apply to this assertion. Yet, a review of those assertions and, indeed, of the whole record, discloses no support for any of these allegations. There is no evidence in the record that there were "safety compliance officers" who visited any other Steelworker plants in the New England region. There is no evidence that invitations were sent to individual members of the bargaining unit at other plants and not at Farnsworth Fibre.

In paragraph 8 of their statement on page 17, the plaintiffs state as an assertion of fact that "several Plaintiffs testified that José Ortiz [the union steward] was ignored by the Defendant Unions when he called them for help." Again, the citation for this is "plaintiff's statement of additional facts, paragraphs 37 to 42." A review of those paragraphs reveals no testimony which supports that allegation, and, indeed, Mr. Ortiz never stated that he made a call to the union office for assistance but did not receive assistance. The evidence discloses that Mr. Ortiz *never* made a call to the union office that was ignored or not responded to promptly. [See Union's SOF ¶¶ 18-19, 27.]

In paragraph 10 on page 17, plaintiffs assert "Mr. Ortiz . . . does not speak or understand English." Again, the citation is to the deposition of Lowell Alexander, but Alexander never

testified to that effect. Under another section entitled "Plaintiff's Statement of Additional Material Facts," in paragraph 36, the plaintiffs state:

> José Ortiz was chosen to be the Shop Steward primarily because his English was better than the other workers.

Yet this statement contradicts the statement set forth above that Mr. Ortiz "could not speak English."[3] In the same sentence plaintiffs assert that Mr. Ortiz was chosen as the shop steward because "essentially, there was no vote because the employer told the workers to pick him." Id. Yet, it is conceded that the workers voted for Mr. Ortiz and elected him, so the plaintiffs' assertion is a false accusation that is belied by José Ortiz's own testimony.

Compounding this misstatement of fact, plaintiffs then make assertions of fact that Mr. Ortiz would "call the union with their complaints and either the union Representatives would not show up or they would come to the plant and go straight to the office." [Plaintiffs' Opp. at 23.] Again, plaintiffs offer no specific statement of any time that Mr. Ortiz ever called the union office and did not get assistance or help. [See Plaintiff's SOF ¶ 37.] Another statement of fact is that Ms. Caminero "complained to José Ortiz to call the Union and he told her that the Union was 'not in favor with the workers, they side with the factory.'" [See Plaintiff's SOF ¶ 40 at 24.] Putting aside that this statement is compound hearsay, Mr. Ortiz never testified to this fact, and there is no description of when and how this conversation allegedly took place.

These additional statements of fact go on ad nauseam from pages 22 to 38 of the plaintiffs' opposition, most without any specific statement of fact, all opinion and conjecture, and none supported by a proper showing of a witness with personal knowledge.

It should not be the burden of this Court and the defendants to have to parse through hundreds of assertions and opinions, many of which are not relevant to any issue before this

---

[3] Indeed, Mr. Ortiz interpreted for the other plaintiffs at the Court-ordered mediation session.

Court, and many of which are hyperbole, argumentative, and self-serving. In short, what plaintiffs and their counsel have done in their statement of facts is expressly what the rules requiring a concise statement of material facts seek to prevent. Instead of narrowing the issues and permitting the Court to understand specifically what is and what is not in dispute, the plaintiffs have instead blown up a lot of "dust" but little light on the subject. Key Trust Co., 811 F. Supp. at 734 n. 2. As this Court did in Brown, 957 F. Supp. at 1298, cited above, the union's statement of material facts should be deemed admitted. Alternatively, the Court should strike plaintiffs' statement as not comporting with the express requirements and the purpose underlying Rule 56.1.

## II.    THE APPLICABLE STATUTE OF LIMITATIONS HAS EXPIRED ON ALMOST ALL CLAIMS MADE BY PLAINTIFFS

Although plaintiffs admit that their claims are untimely under the six-month duty of fair representation (DFR) and 300-day Title VII statute of limitations with the exception of plant closure and isolated plant safety claims, they argue that principles of equitable tolling apply. [Plaintiffs' Opp. at 2-3.] In support of their argument that they lacked actual notice of a filing requirement, plaintiffs cite Mercado v. Ritz Carlton San Juan Hotel, 410 F.3d 41 (1st Cir. 2005). However, plaintiffs' citation to Mercado v. Ritz Carlton San Juan Hotel is misplaced. Ritz-Carlson involved the question of whether equitable tolling would be applied against an employer, not a union, due to the employer's failure to comply with EEOC regulations requiring employers to post notices advising employees of their legal rights relating to employment discrimination. 410 F.3d at 44. The plaintiffs in Ritz-Carlton argued that their employer was barred from asserting timeliness as a defense to charges of Title VII discrimination because it failed to comply with such posting and notice regulations. Id. at 44. The cases cited by the First Circuit in Ritz-Carlton exclusively identify an employer's duty to post such notices and apply the theory

9

of equitable tolling only against employers for failure to do so. Id. at 47-48. The present case is inapposite because unions have no statutory duty, as employers do, to post notices of Title VII rights and procedures or to post other notices, nor can they be held accountable for an employer's failure to do so.[4]

Plaintiffs utterly fail to refute the union's assertion that the alleged injuries at the plant did not occur within the relevant statute of limitations. If dates of injury are identified at all, such dates fall well outside the statute of limitations.[5]

III.     PLAINTIFFS HAVE FAILED TO MAKE EVEN A PRIMA FACIE CASE OF DISCRIMINATION OR TO OFFER ANY CREDIBLE EVIDENCE OF PRETEXT.

While the plaintiffs spent a great deal of time and energy trying to prove pretext, the Court need not even get that far, because the plaintiffs have failed to make out a prima facie case of discrimination that would get the Court to the question of pretext. And even were to Court to address the question of pretext, the plaintiffs have failed to prove the falsity of the union's stated reasons for its actions.

A.     Plaintiffs Have Failed to Make Out a Prima Facie Case of Discrimination.

What the plaintiffs have done in their submission is to direct their entire argument toward trying to prove pretext; they failed even to attempt to make the required prima facie showing of discrimination, which must be met before the Court gets to the issue of pretext. While the U.S. Supreme Court has held that sufficient evidence of pretext, together with the plaintiff's prima facie case and some other additional evidence of animus, could permit a trier or fact to conclude

---

[4] Moreover, plaintiffs in this case could not satisfy the five factors that determine whether to allow equitable tolling, especially "absence of prejudice to the defendant." Id. at 48. It would be prejudicial to hold a union accountable for an employer's failure to post EEOC notices — especially where, as here, plaintiffs make no allegations that the employer violated employees' rights by failing to post such notices.

[5] The six-month statute of limitations bars consideration of any incidents alleged by plaintiffs prior to November 5, 2003, for the DFR claims; for the EEOC claims, the 300-day statute of limitations bars consideration of any incidents alleged by plaintiffs prior to July 11, 2003.

that discrimination has occurred, the Court has never wavered from the baseline requirement that

a plaintiff must first establish a prima facie case of discrimination. Reeves v. Sanderson

Plumbing Products, Inc., 530 U.S. 133, 141-149 (2000); see also, Ronda-Perez v. Banco Vilbao

Vizcaya Argentaria–Puerto Rico, 404 F.3d 42, 44-45 (1st Cir. 2005) (applying Reeves and

reiterating the requirement that the plaintiff establish a prima facie case). Here, in order to prove

a prima facie case of national origin discrimination based on discriminatory treatment, the

plaintiffs must show at a minimum that they are in a protected class; that the union failed to

represent them in some way; and that the union treated similarly situated members outside of the

protected class differently from members within the protected class. See, e.g., Goodman v.

Lukens Steel Co., 482 U.S. 656 (1987); Rainey v. Town of Warren, 80 F.Supp.2d 5, 14-16

(D.R.I. 2000). Taking the plaintiffs' contentions one by one, [see Opposition at 42-45], the

plaintiffs have plainly failed to show either that the union failed to represent them or that the

union treated any other similarly situated non-Hispanic members differently than it treated them.

        1.      Conditions at the Plant: Safety and Health Allegations

        The plaintiffs fail to make a prima facie case regarding safety and health conditions

because they cannot show that the union failed to do anything about any problems it was made

aware of. In this regard, the plaintiffs failed to allege that the union's International office or

Local Union offices were notified of safety problems or that the union intentionally failed to

grieve safety matters brought to its attention by plaintiffs. Indeed, as demonstrated in the

deposition testimony of plaintiffs, no bargaining unit member brought safety concerns to the

attention of Lowell Alexander, the International's only authorized agent for the unit, nor did

anyone at Farnsworth Fibre, including Union Steward José Ortiz, ask the United Steelworkers to

file safety and health grievances. [See Union's SOF ¶¶ 18-19, 27.] While the plaintiffs suggest

11

that Alexander must have been aware of certain conditions, like dust flying about the plant, they offer no testimony that he was present when such conditions occurred. [See id. ¶ 16 (indicating that the machines were off when Alexander was on the shop floor).]

In sum, the plaintiffs have offered absolutely no evidence that the union was aware of any of the conditions about which they presently complain. There can be no discrimination and no duty to file a grievance by a union where employees never requested the union's assistance in filing a grievance and the union was itself unaware of any grievable circumstance. Moreover, the plaintiffs have failed to demonstrate that the union was required to have its own safety and health program or that it treated non-Hispanic bargaining units better than the bargaining unit at Farnsworth Fibre. Therefore, the plaintiffs have failed to make out a prima facie case of discrimination regarding their safety and health allegations.

2.     Failure to Grieve or Bargain the Plant Closing

Despite the plaintiffs' assertions to the contrary, the uncontested facts demonstrate that the union treated employees of Farnsworth Fibre fairly and consistently with respect to severance and shutdown benefits compared to employees of other United Steelworkers facilities.

There is no merit or factual evidence to support plaintiffs' contention that the union failed to bargain severance benefits for plaintiffs while bargaining such benefits for "every other Steelworker plant." [Plaintiffs' Opp. at 43, 21]. Plaintiffs attempt to use Alexander's testimony to support such allegation; however, Alexander testified that several of the CBAs which he bargained did not contain provisions for severance benefits — including facilities such as Cone Blanchard, which employed relatively few minorities. [Union's SOF ¶ 31.] By contrast, Alexander negotiated severance benefits for the predominately Hispanic employees at Rosboro

Plastics and Sealy Mattress in Randolph, Massachusetts, showing that the union has indeed negotiated severance benefits for similarly situated Hispanic bargaining units. [Id. ¶¶ 30, 32.]

These examples clearly demonstrate that the union did not negotiate more favorable severance packages for non-Hispanic employees than for Hispanic employees. For these reasons, the plaintiffs have failed to make out a prima facie case of discrimination.

3.    Failure to File Discrimination Grievances.

Plaintiffs have failed to make out a prima facie case regarding discrimination grievances because they cannot show that the union failed to take any action on discrimination that the union was aware of. Plaintiffs argue that the union "failed to assert instances of racial discrimination as grievances despite express requests" and tolerated and encouraged racial harassment. [Plaintiffs' Opp. at 50]. That such conclusion is baseless is evidenced by plaintiffs' own testimony that they did not bring grievances to the attention of Alexander or other union representatives. [See Union's SOF ¶¶ 18-19, 27.] Moreover, plaintiffs' citation of case law supports rather than undermines the union's position that the plaintiffs' claims are without merit. [Plaintiffs' Opp. at 40, 50.] See Goodman v. Lukens Steel, 482 U.S. 656 (1987), and Rainey v. Town of Warren, 80 F. Supp. 2d 5 (D.R.I. 2000).

In Goodman, 482 U.S. at 667-669, the Supreme Court held that a union could be held liable for *knowingly* and *intentionally* failing to process the grievances of employees on the basis of a protected category. The union in that case knew of race discrimination claims but followed a policy of not pursuing them as grievances. Id. Similarly, in Rainey, the Court found that a female plaintiff endured "undisputed sexual harassment" by the employer, which was "severe and constant," and which plaintiff repeatedly brought to the attention of the union, but which the union failed to act upon. 80 F.Supp.2d at 17-18. It is undisputed that, in this case,

employees did not bring any grievances to Alexander's attention, and he knew of no complaints or grievances that needed to be raised (aside from those he did raise). Therefore, there is no evidence of a knowing and intentional failure to bring grievances on behalf of Farnsworth Fibre employees. Moreover, the company's closure of its facility and subsequent terminations of plaintiffs were due to economic and financial considerations of the employer. There could have been no viable allegation that the company discriminated against its Hispanic employees, because the closing of the plant affected *all* of the company's employees, so there would have been no valid discrimination grievance for the union to pursue.

While it is true that the plaintiffs, through their counsel, did ultimately request that the Union file a grievance on their behalf regarding the closure of the plant, such request did not occur until March 2004, four months after the company went out of business. [See Attachment 1 to this Reply.] In addition, the plaintiffs failed to explain how the company was alleged to have violated the collective bargaining agreement or what any grievance should allege. Id. The subsequent correspondence between counsel for the plaintiffs and the union makes clear that the plaintiffs never presented any timely or grievable matter to the union. [See Attachments 1-4.] Moreover, unions have no duty to keep employers' facilities open, nor do they breach a duty simply by failing to bargain over the closure of facilities. Textile Workers v. Darlington Mfg. Co., 380 U.S. 263, 274 (1985) (employer has right to close its entire business, thereby ending employer-employee relationship).

Therefore, the evidence plainly indicates that the Union never failed to file a grievance regarding a grievable matter of which it was made aware. The plaintiffs have failed to show that the union treated any similarly situated non-Hispanic members differently or that it discriminated

against plaintiffs in any way. Therefore, the plaintiffs have failed to make out a prima facie case of discrimination.

    4.    Allegations Concerning Notice Postings and Translation of Documents

Again, plaintiffs fail to establish a prima facie case of discrimination regarding notices and translation because they can point to no such actions that the union was required to take. Contrary to plaintiffs' allegations, unions have no obligation to post notices to employees regarding local union meetings or other matters. Significantly, plaintiffs point to no statute or case law that requires such conduct, and indeed, no such duty exists. In addition, plaintiff José Ortiz admitted that Alexander notified him of local union meetings and stewards training, which Ortiz failed to attend. Whether Ortiz and other plaintiffs failed to attend local union meetings or training due to transportation or other problems, it is not discriminatory or a breach of the duty of fair representation for a staff representative to fail to provide transportation to such events.

In addition, unions do not breach the duty of fair representation or discriminate against their members by failing to provide translated materials to members before a contract is ratified or otherwise to post notices in Spanish. Lebron v. Int'l Bhd. of Electrical Workers, 1992 U.S. Dist. LEXIS 8887 (D.Mass. June 9, 1992) (no breach of the duty of fair representation for failure of union to employ interpreter during arbitration hearing). The fact remains that the union in this case went beyond its obligations when it did provide interpretation and translation services for its employees — including the translation of the 2002 CBA into Spanish and the interpretation of several meetings organized by Lowell Alexander with Farnsworth Fibre employees in 2003.

Plaintiffs also argue that the union discriminated against them and breached its duty because José Ortiz, who assisted in negotiating the CBA and initiated grievances, allegedly could not understand or speak English. [Plaintiffs' Opp. at 17, ¶ 10]. José Ortiz, however, admitted in his own deposition testimony that he speaks English and communicated in English during the

2002 CBA negotiations. [Ex. B (José Ortiz Dep.) at 21, 89; see also Plaintiffs' Opp. at 23, ¶ 36.]

Ortiz even provided interpretation services for other plaintiffs at the Court-ordered mediation.[6]

Based on the foregoing, the plaintiffs have utterly failed to establish a prima facie case of

discrimination because they have failed to demonstrate that the union did not represent them in

some required way or that the union treated some other non-Hispanic employees better than it

treated them.

B.    Plaintiffs Have Failed to Address the Union's Stated Reasons for its Actions and
      Have Failed to Show That Any Such Reasons Are False.

Not only have plaintiffs failed to make out their prima facie case, they have even failed in

their attempt to establish pretext, because they cannot prove any of the union's articulated

reasons for its actions are false. See Reeves, 530 U.S. at 147 (reasoning that "it is *permissible*

for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's

explanation" (emphasis in original).)

The plaintiffs incorrectly assert that the only "non-discriminatory reason proffered by the

Unions for not protecting the plaintiffs" is that "Ortiz was a lousy steward." [Plaintiffs' Opp. at

46.] This is not the union's stated reason for its actions, and the plaintiffs cannot be allowed to

establish pretext by making up their own reasons and knocking them down. In reality, the union

has asserted legitimate reasons for all of its actions, and the plaintiffs have failed to show in any

way that these reasons are pretextual.

With regard to grievances the plaintiffs contend the union should have filed, the union

has clearly asserted that it was unaware of such grievances, and the plaintiffs all admitted that

they did not bring any of these concerns to the union. [Plaintiffs' SOF ¶¶ 49, 53-54; Union's

---

[6] The undersigned counsel was in attendance at that mediation session and, by his signature on this document, swears that such fact is true and correct.

SOF ¶¶ 18-19, 27.] With regard to the allegations that the union failed to bargain over the plant closure, the plaintiffs cannot refute the fact that this was not an instance where the union had any power to stop the shutdown of the plant, since the union could not force the employer to stay in business. However, while there was nothing the union could do about the plant closing itself, the union came to the facility, tried to negotiate with the employer, met with the workers, and filed several grievances regarding grievable contract matters relating to the plant closure.[7] [See Union's SOF ¶¶ 21-26.] These facts are undisputed. Finally, with regard to the plaintiffs' contention that the union should have provided training programs or new jobs, the plaintiffs have failed to show that the union had any such obligations, so there can be no finding of pretext.

The plaintiffs have utterly failed to prove the falsity of the union's stated reasons for its actions; therefore, the plaintiffs have not demonstrated any evidence of pretext to support their baseless discrimination allegations.

## IV.    NO ISSUES OF MATERIAL FACT EXIST REGARDING ANY REMAINING DUTY OF FAIR REPRESENTATION ALLEGATIONS, AND SUCH ALLEGATIONS HAVE NO MERIT.

Although plaintiffs continue to allege that the union somehow breached its duty of fair representation because it failed to grieve discharges and provide new jobs or skills training for the employees, they point to no case law to support such obligation, nor do they refute the union's citation of cases that demonstrate that no such duty exists. USWA v. Rawson, 495 U.S. 362, 376 (1990); Textile Workers v. Darlington Mg. Co., 380 U.S. 263, 274 (1985) (employer has right to close its entire business, thereby ending employer-employee relationship). Unions

---

[7] Plaintiffs' assertion that Alexander told employees during meetings held prior to the shutdown that the only benefits they would get were unemployment benefits is similarly baseless. [Plaintiffs' Opp. at 33, ¶ 71.] It is undisputed that Alexander filed grievances relating to the plant shutdown dealing with November 2003 layoffs, report pay, and medical insurance issues—which were subsequently remedied. [Union's Memo. Ex. A, ¶ 24; Exs. 9-11; Ex. B at 53-56.] Moreover, José Ortiz admitted that Alexander discussed such issues as the provision of pension, vacation pay and medical insurance as well as other shutdown issues with the employees prior to the shutdown. [Ex. B at 42-46].

such as the United Steelworkers could not afford to operate if they were obligated to train and find employment for the thousands of workers who have been laid off due to changing economic conditions, the introduction of new technologies, and the displacement of manufacturing jobs. Though it is unfortunate that this plant closed due to changing technology, it is not the obligation of the union to prevent such closing, to fund job training, or to find jobs for such employees.

Moreover, plaintiffs' safety allegations involve company conduct, not union conduct, and must be dismissed on that basis alone. As more fully argued in the union's previous memorandum, unions have no general far-reaching duty to provide employees with a safe working environment. USWA v. Rawson, 495 U.S. 362 (1990); Condon v. Local 2944, United Steelworkers of America, 683 F.2d 590 (1st Cir. 1982); Goulet v. Carpenters District Council of Boston, 884 F.Supp. 17, 23 (D. Mass. 1994). To the extent that a union assumes any obligations of care towards its members, they derive from the collective bargaining agreement. See Rawson, 495 U.S. at 396 (syllabus); Goulet, 884 F.Supp. 17.

The union in this case had no statutory obligation to prevent safety infractions by the employer, to perform "safety compliance visits by safety officers," to provide safety and health training, to develop written hazard programs, to oversee compliance with material safety data sheets, or to replace old machinery, [Plaintiffs' Opp. at 16, 56], and the union assumed no such duty in the CBA. Tellingly, the plaintiffs have not alleged that the union failed to enforce provisions of the CBA with respect to safety. Whether or not "dust was flying" when Alexander visited the plant, [Plaintiffs' Opp. at 56], Alexander was not aware that employees of Farnsworth Fibre had complaints regarding their working conditions or that injuries or fires occurred within the facility. Therefore, plaintiffs' allegations that the Union failed to preserve workplace safety must be dismissed.

## V.    PLAINTIFFS FAILED TO DEMONSTRATE THAT THE COMPANY BREACHED ANY PROVISIONS OF THE COLLECTIVE BARGAINING AGREEMENT.

In its motion for summary judgment memorandum, the union established that plaintiffs failed to allege or otherwise demonstrate that Farnsworth Fibre violated the CBA when it terminated them or otherwise failed to maintain the safety of the facility—and such failure to demonstrate a hybrid breach of contract claim means that claims against the union for breach of the duty of fair representation must fail. DelCostello v. Teamsters, 462 U.S. 151, 164-65 (1983).

While the plaintiffs argue that the union has misstated the rule from DelCostello requiring the plaintiffs to prove its claims against both parties, even a cursory reading of the DelCostello opinion makes clear that the plaintiffs are required to prove their claim against the employer to properly make a claim against the union. The Court held that such hybrid claims are "inextricably interdependent" and that although "[t]he employee may, if he chooses, sue one defendant and not the other; . . . the case he must prove is the same whether he sues one, the other, or both." Id. at 164; see also Demars v. General Dynamics Corp., 779 F.2d 95, 97 (1st Cir. 1985) (hybrid breach of contract claim against employer and breach of the duty of fair representation against union are "inextricably linked," and failure to provide either one results in a failure of the entire action). Therefore, even had the plaintiffs sued only the union, they would have still had to prove that the company engaged in some sort of contract violation to prove that the union failed in its duty to administer the contract.

Other than plaintiffs' legal argument, which is wrong as a matter of law, plaintiffs are notably silent with respect to the union's evidence regarding their failure to make a claim against the employer, and such failure to rebut the union's argument destroys their DFR claim against the union. Therefore, plaintiffs concede the union's argument and have abandoned those claims.

19

VI.    STATE LAW CLAIMS ARE PREEMPTED UNDER GARMON AND SECTION 301
OF THE LABOR-MANAGEMENT RELATIONS ACT.

As argued in the union's memorandum, the plaintiffs' state law claims are preempted

under San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959), and under section

301 of the Labor Management Relations Act. [See Union's Memo., part III(C)(1) & (2).] The

plaintiffs' state law claims are specifically preempted under Garmon because they conflict with

the National Labor Relations Act. Moreover, the allegations that the union failed to grieve

matters on the plaintiffs' behalf require an inquiry into the meaning of the CBA and thus are

preempted under section 301. Therefore, for the reasons fully explored in the union's

memorandum, the plaintiffs' state law claims must be dismissed as preempted.

VII.    CONCLUSION

For all the above-stated reasons, and for the reasons stated in the union's earlier

memorandum in support of its motion for summary judgment, the Court should grant the union's

motion for summary judgment and dismiss plaintiffs' claims against the union in their entirety.

Respectfully submitted,

Dated: September 20, 2005

Harold L. Lichten, BBO # 549689
Alfred Gordon, BBO # 630456
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA 02108
(617) 367-7200

Theresa Merrill
Assistant General Counsel
United Steelworkers of America
Five Gateway Center
Pittsburgh, PA 15222
(412) 562-2533

20

## CERTIFICATE OF SERVICE

I hereby certify that, in addition to being electronically filed, a true copy of the above document was served by U.S. Mail on the attorney of record for each party on September 20, 2005.

_____
Alfred Gordon