UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| EUCLIDES SOTO, LOUIS A. MARTINEZ, JOSE RAMIREZ, CLEMENTE HERNANDEZ, CESAR PIZARO, ELISON PENA, JUAN COLON, JOSE ORTIZ, RAFAEL TORRES, ANGEL BAEZ, ANTONIO MARTINEZ, WILFREDO ORTIZ, EULOGIO ORTIZ, MIRRAIN MIRANDA, RAFAEL MORENO, NELSON ACEVEDO, and RAMON RODRIGUEZ,<br>Plaintiffs,<br><br>v.<br><br>SHERMAN-FEINBERG CORPORATION, FARNSWORTH FIBRE CORPORATION, UNITED STEELWORKERS OF AMERICA, LOCAL 421-U, AND UNITED STEELWORKERS OF AMERICA,<br>Defendants. | CIVIL ACTION<br>NO.: 04-10892-JLT<br><br><br>FED.R.CIV. P. 64 |

## MOTION TO ATTACH ASSETS OF THE UNITED STEELWORKERS OF AMERICA (FED.R.CIV.P. 64)

### RELIEF SOUGHT

Pursuant to Rule 64 of the Federal Rules of Civil Procedure, the plaintiffs move this court for an order of attachment of the real estate, goods, chattels, cash, accounts receivable, and other assets of the United Steelworkers of America, most of which are in Las Vegas, Nevada, and Pennsylvania, and the Pension Funds, Health Funds and Welfare Funds in Pennsylvania, to satisfy the judgment for damages and costs, which the plaintiff may recover in the sum of $13,695,000.00 in wage, discrimination and emotional distress damages, and $65,000,000.00 punitive damages.

**GROUNDS FOR RELIEF**

1. Rule 64 applies to this federal law claim. See *Peacock v. Thomas*, 516 U.S. 349, 356-57 (1996) (ERISA attachment.)

2. Plaintiffs supply a summary of damages based on their deposition testimony. Affidavit of Robert O. Berger; and see also Ex. 1. The plaintiffs are in three classes: 1) unemployed plaintiffs (5 of them); 2) unemployable plaintiffs (2 of them); and 3) employees with some employment since plant closing (5 of them). For the first category of five unemployed plaintiffs, past wages are $60,000, future wages are $150,000, emotional distress of $400,000, punitive damages of $200,000. For the two unemployable plaintiffs, past wages are $60,000, future wages are $175,000, emotional distress of $400,000, punitive damages of $200,000. Finally, for the five mixed employed-unemployed, past wages are $40,000, future wages are $120,000, emotional distress of $400,000, punitive damages of $200,000. Damages are compensatory and punitive, along with emotional distress, under 151B and Title VII – 42 U.S. § 2000e-2-5; Section 301, see *Zeman v.Jones*, 91 F.Supp 2d 1247 (2000). Attorney fees also available under 151B, Title VII – 42 U.S.C. § 2000e-5(k), and the Section 301 claim. Emotional distress damages also available in all claims. *Soto-Segarra v. Sea Land Service, Inc.*, 581 F.2d 291 (1st Cir. 1978). $65,000,000.00 Punitive. See *BMW of North America, Inc. v. Gore*, 517 U. S. 559 (1996) and *Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*, 527 U. S. 627 (1999). Principle is that nobody but jury or fact-finder can gainsay remedy for breaches like civil rights ones or constitutional ones.

Merits of Case. In discovery, in their own words, the plaintiffs testified:

**Deposition of Antonio Martinez of March 23, 2005 (Exhibit 2)**

(P15, 16)  Q  Now, in the plant were there fires constantly?
A  Oh, yes.
Q  And in the plant, was there dust flying around?
A  Too much, a lot.
Q  In the plant, did people lose fingers?
A  Yes.
Q  Well what safety -- what did the union -- well, strike that.
Did the union have a bulletin board for posting notices?
A  No.

Q  Did the union ever look at any of machines like this one where this accident happened?
A  No.
Q  You were going to describe other injures that happened there?

Q  And how about for the handling of paints and chemicals?
A  No.
Q  Did, in your opinion, the union care about what happened to the safety of the people in this plant that consisted solely of Hispanics?
    MR. LICHTEN: Objection.
A  No. They never cared for anything, no.
Q  And you're not a member of the Upholstery Workers Union, are you? You're a member of the Steelworkers union?
    MR. LICHTEN: Objection.
A  Yes.

(P29)  Q  Were there some grinder machines there?
A  Yes.
Q  How old were they?
A  They're old. They're antique. They're so old they don't even have replacement parts or pieces for those machines.

(P37)  A  ...Because on certain occasions, I was obligated -- we were obligated to work overtime. And sometimes, they would make us -- make me extinguish fires by ourselves. Sometimes I would have to get on top of a room myself to extinguish a

3

>fire on top of a machine, and all of that smoke, I was inhaling.

<u>The union's conduct disclosed in discovery</u>. The union never grieved any discharges. Deposition of Lowell Alexander, p. 24. (Exhibit 10) The hourly wage at this plant starts off at $7.00. The union dues of all Steelworkers are 1.3% of the wage. Id. 21. With respect to other plants, Alexander answered that Sealy Mattress, Bee-Bee Rubber; Rosboro Plastics had plant closing severance language in the collective bargaining agreements. The instant plant did not, nor was it requested in negotiations, Id. 94-95. Furthermore, there was no negotiation of the effects of closing the plant, only bumping rights and medical benefits, id. at 100. (Bumping rights involve intra-union seniority.) There was no right to severance here but there was at the Sealy Mattress, Bee-Bee Rubber, Rosboro Plastics plants. Id. The union provided all drafts of the collective bargaining agreement in English and only the binding one was in Spanish. Id. at 14. There was no provision for severance or plant closing in this agreement. Id. at 11 and 28. The prospect of a plant closing was not even an issue in the collective bargaining at this plant. Id. 15. For, the Union had not checked the books of Farnsworth Fibre and Sherman-Feinberg to find out their financial picture although the union wrote the companies in 2002 to request them. Alexander heard scuttlebutt about them taking the money and converting the building into a condominium at one of the meetings prior to the company closing. Id. at 18. The plant had no apprenticeship or training program. Id. at 54. Although there were fires until the closing of the plant, the union was unaware of fires at the plant even though its representative visited the plant. Id. at 84. The union did not know whether employer kept material data safety slips. Id. at 76. There was no hazard

4

safety program or health and safety officer at the plant. Id. at 77 and 81. Alexander had been a Steelworker union steward for the gas company; he learned when there was catastrophic injury in his steward capacity; and he simply does not know why he never learned of catastrophic injury at this entirely Latino plant when he was union representative. Id. at 85.

There is a reasonable likelihood that the plaintiffs will recover judgment, including interest and costs, against the United Steelworkers in such amount;

The plaintiff knows no liability insurance that is available to satisfy a judgment in this case;

    c. There has been no property attached by other writ of attachment.

Respectfully Submitted,

/s/ John Lee Diaz and Robert O. Berger<br>
John Lee Diaz, Esq.<br>
Robert O. Berger, BBO #: 038900<br>
11 Beacon Street, Suite 1210<br>
Boston, MA 02108<br>
Tel (617) 423-7575<br>
Attorney for Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 2/13/06

## Assessment of Damages
*Euclides Soto, et. al. v. Sherman-Feinberg, et. al.*

|  | Lost Wages | Future Wages | Emotional Distress | Punitive | Total Damages |
|---|---|---|---|---|---|
| **Unemployed** | | | | | |
| Each Plaintiffs | $60,000 | $150,000 | $400,000 | $200,000 | $810,000 |
| 5 Plaintiffs | | | | | **$4,050,000** |
| | | | | | |
| **Unemployable** | | | | | |
| Each Plaintiff | $60,000 | $175,000 | $400,000 | $200,000 | $835,000 |
| 7 Plaintiffs | | | | | **$5,845,000** |
| | | | | | |
| **Mixed** | | | | | |
| Each Plaintiff | $40,000 | $120,000 | $400,000 | $200,000 | $760,000 |
| 5 Plaintiffs | | | | | **$3,800,000** |

**Grand Total**         **$13,695,000.00**