UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

EUCLIDES SOTO, LOUIS A. MARTINEZ, )
JOSE RAMIREZ, CLEMENTE HERNANDEZ, )
CESAR PIZARO, ELISON PENA, )
JUAN COLON, JOSE ORTIZ, RAFAEL TORRES, )
ANGEL BAEZ, ANTONIO MARTINEZ, )
WILFREDO ORTIZ, EULOGIO ORTIZ, )
MIRRAIN MIRANDA, RAFAEL MORENO, )
NELSON ACEVEDO, and )
RAMON RODRIQUEZ, )
                                                             )   Civil Action No.
        plaintiffs, )   04-10892-JLT
                                                              )
v. )
 )
SHERMAN-FEINBERG CORPORATION, )
FARNSWORTH FIBRE CORPORATION, )
UNITED STEELWORKERS OF AMERICA, )
LOCAL 421-U, and UNITED STEELWORKERS )
OF AMERICA, )
 )
        Defendants. )
_____)

**MOTION IN LIMINE OF THE DEFENDANTS UNITED STEELWORKERS,
LOCAL 421-U AND UNITED STEELWORKERS
TO PRECLUDE EVIDENCE RELATING TO THE
<u>STATE-LAW DISCRIMINATION CLAIMS</u>**

Now come the Defendants, United Steelworkers, Local 421-U (the Local) and United Steelworkers (the International, and hereby submit this motion in limine to preclude evidence and testimony regarding plaintiffs' state-law discrimination claims as those claims are preempted under <u>San Diego Building Trades Council v. Garmon</u>, 359 U.S. 236 (1959) and by section 301 of the Labor-Management Relations Act.

1. The State Claims Under Chapter 151B Must Be Dismissed As They are Preempted by the NLRA.

Because the plaintiffs essentially claim violations of the National Labor Relations Act, their claims are completely preempted under the so-called Garmon preemption doctrine. San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959) (forbidding state and local regulation of activities that are protected by § 7 of the NLRA or constitute unfair labor practices under § 8 of the Act). Further, because the claims asserted by the plaintiffs require interpretation of the collective bargaining agreement as an integral part of such claim, such claims are completely preempted under Section 301 of the Labor Management Relations Act.

Generally, where a state law claim concerns conduct that is actually or arguably either protected or prohibited by the National Labor Relations Act, the state law claim is presumptively preempted and must be dismissed. See Chaulk Services, Inc. v. Massachusetts Commission Against Discrimination, 70 F.3d 1361 (1st Cir. 1965); see also Local 12004, United Steelworkers of America v. Massachusetts Commission Against Discrimination, 377 F.3d 64 (1st Cir. 2004).

In the present case, it is simply undeniable that the claims asserted by the plaintiffs allege conduct by the union which is arguably prohibited under the National Labor Relations Act. The claims, fairly construed, assert that the union failed to properly represent the Farnsworth Fibre employees and that there were claims that the union could have made on behalf of the employees, both before the shutdown and at that time, which it did not make as a result of the bargaining unit being comprised of Hispanic employees. As demonstrated below, if the plaintiffs are correct, then the

2

conduct of the local union and the International is prohibited under the National Labor Relations Act, and, hence, the state law discrimination claims are preempted.

It is beyond dispute that when a union fails to properly represent a member or group of members for some arbitrary or discriminatory reason, such conduct is a violation of the National Labor Relations Act, Sections 8(b)(1)(A) and 8(b)(2).  The National Labor Relations Board has continually held that the union's obligation under Section 9 of the Act is to represent

> all employees fairly and impartially, giving rise to a right of the employees under Section 7 [of the Act] to fair representation by the union.  Any unfair representation in the union's performance of its Section 9 duty is an infringement of a Section 7 right and is thereby a violation of Section 8(b)(1)(A).

The Developing Labor Law at 1884(Patrick Hardin and John E. Higgins, Jr., eds., 4th ed. 2001).  See also Miranda Fuel Co., 140 NLRB 181 (1962).

In addition, a union's breach of its fair representation duty is also deemed a violation of Section 8(b)(2) of the Act because any arbitrary union action would tend to discourage union membership even if its motivating consideration does not specifically involve union membership.  The Developing Labor Law at 1885.

More specifically, in Independent Metal Workers, Local 1 and 2 and the Hughes Tool Co., 147 NLRB 1573 (1964), the National Labor Relations Board held squarely that a union's failure to process an employee grievance because of race was an unfair labor practice under Sections 8(b)(1)(A) and 8(b)(2) and 8(b)(3) of the Act.  In addition, the Board has held that a union breaches its duty of fair representation and, therefore, violates the National Labor Relations Act, when it administers the collective bargaining

3

agreement in a bad faith or racially "discriminatory" manner.  See Rubber Workers, Local 12, 150 NLRB 312, enforced 730 F.2d 768 (2d Cir. 1984).

Recently, the Third Circuit has held in a preemption context that state law discrimination claims against a union are "presumptively preempted" by the NLRA when they concern conduct that is actually or arguably prohibited under the NLRA.  See Scott v. Graphic Communications Union, 2004 W.L. 516164 (3d Cir. 2004), citing Pennsylvania Nurses Association v. Pennsylvania State Education Association, 90 F.3d 797 (3d Cir. 1996).

Based on the above, the claims asserted by the individual plaintiffs here are clearly preempted under established federal case law because it is beyond dispute that the conduct alleged to have been committed by the union constitutes a breach of the duty of fair representation and, therefore, enjoys complete preemption from any state law claim.  Recent decisions of the First Circuit involving MCAD claims make clear that the First Circuit would find the state discrimination claims here preempted.  First, in Chaulk Services, 70 F.3d 1361, the First Circuit held that because the complainant's allegations against the company (in that case, sex discrimination) were arguably prohibited and/or protected under the National Labor Relations Act, the case before the Commission was completely preempted and could not proceed.  That holding was reinforced more recently in Local 12004, 377 F.3d 64.  In both cases, the touchstone was that the discriminatory conduct complained of by the plaintiffs also involved conduct which was arguably prohibited or protected by the National Labor Relations Act.

In the present case there is even more reason to invoke the doctrine of Garmon preemption.  The alleged discriminatory conduct by the union relates to how it

administered its collective bargaining agreement with the employer and its alleged failure to properly negotiate on behalf of the bargaining unit members when Farnsworth Fibre closed.  The plaintiffs' claims fall into two categories; first, that the union failed to properly present grievances alleging violations of the collective bargaining agreement and failed to properly negotiate a contract because the plaintiffs were Hispanic, and second, that it failed to take appropriate action when the Farnsworth Fibre announced that it was closing.  These claims are issues which are clearly governed by decisions of the National Labor Relations Board, and, if the conduct actually occurred for discriminatory reasons, is prohibited by the Act.  (See above.)  In order to assess whether the plaintiffs' claims have any merit, this Court would have no choice but to interpret the rights and obligations of the union during plant closing situations, an analysis which the National Labor Relations Board, and not this Court, is authorized to make in the first instance.  For example, the question of whether an employer and a union have appropriately bargained the effects of a plant closing, and what remedies flow from the failure to bargain in good faith over such closing, are quintessential issues governed by the National Labor Relations Act.  See generally NLRB v. Waymouth Farms, Inc., 172 F.3d 598 (8th Cir. 1999); Fabian v. Cooper Industries, Inc., 1993 W.L. 332629 (E.D. Mich. 1993); Burklow v. Baskin-Robbins, 274 F.Supp.2d 899 (W.D. Ky. 2003).  Since the substance of the plaintiffs' main complaint here is that the union failed to grieve or prevent the plant closing of Farnsworth Fibre, or to properly bargain over the effects of this closure, this Court cannot address or resolve these issues without attempting to resolve questions exclusively reserved to the National Labor Relations Board.

Accordingly, to the extent that the plaintiffs have asserted state law claims of discrimination under Mass. Gen. Laws ch.151B, which are so integrally tied to conduct governed by the National Labor Relations Act, the doctrine of <u>Garmon</u> preemption demands that these claims not be adjudicated in this proceeding.

    2.    <u>Alternatively, the State Law Discrimination Claims Here Are Preempted Under Section 301 of the Labor Management Relations Act.</u>

As set forth above, when a plaintiff alleges conduct that is arguably prohibited by the National Labor Relations Act, such state law claim is preempted under so-called <u>Garmon</u> Preemption. In addition, where the state law claim would require interpretation of the collective bargaining agreement, the claim is also completely preempted under Section 301 of the Labor Management Relations Act. <u>See</u> <u>Martin v. Shaw's Supermarkets</u>, 105 F.3d 40 (1st Cir. 1997). Section 301 preemption exists "whenever a court in passing upon the asserted state law claim would be required to interpret a plausibly disputed provision of the collective bargaining agreement." <u>Id.</u> at 42. <u>See also</u> <u>Lingle v. Norge Division of Magic Chef</u>, 486 U.S. 399 (1988). Simply stated, if the state law claim requires interpretation of the contract, it is preempted. Thus, the first question in such a case is "whether resolution of plaintiffs' claims would require an interpretation of a collective bargaining agreement." <u>Martin</u>, 105 F.3d at 42.

In the present case, although styled as a discrimination claim, the plaintiffs allege in main part that the union failed to pursue to successful resolution a number of grievances which should have been filed and which would have protected bargaining unit members' rights, both in terms of "safety" and with regard to the plant shutdown of Farnsworth Fibre. Implicit in the plaintiffs' assertions is their contention that had the

6

union not discriminated against them based upon their national origin, the union would have successfully won grievances regarding these matters. For example, the plaintiffs allege in their complaint that "the union failed to engage management in any way, including failing to file grievances to address the issues of an unsafe workplace." [Complaint ¶ 28.] Additionally, the plaintiffs assert that:

> . . . the union did nothing to address the layoff issue, although the contract gives it the right to grieve the closing. The membership attempted to enlist the aid of the International Steelworkers Union regarding the local's complete failure to represent the membership. The International did nothing. The terms of collective bargaining agreement and the failure to bargain about the effects of the layoff were unlawful.

[See Complaint ¶¶ 5-6.] Whatever the above is intended to mean, it is clear that this Court cannot resolve the discrimination claims without resorting to and interpreting key provisions of the collective bargaining agreement in order to determine whether or not there were meritorious grievances which the union could have but did not file because the plaintiffs were Hispanic.

A grievance is simply a claim that the employer has violated a provision of the collective bargaining agreement. Thus, for this Court to decide whether or not plaintiffs' assertions have merit, this Court could not avoid interpreting the collective bargaining agreement to determine whether or not, as the plaintiffs assert, the union failed to pursue meritorious grievances. Given these facts, it is clear that the plaintiffs' state law discrimination claims are preempted under Section 301. See Reece v. Houston Lighting and Power Company, 79 F.3d 45 (5th Cir. 1996) (preempting race discrimination claims); Martin, 105 F.3d 40 (preempting handicap discrimination claims).

7

Undoubtedly, there are many discrimination claims involving a unionized employer which do not directly involve an interpretation of a collective bargaining agreement, and such state law claims can proceed independently in court.  See, e.g., Ralph v. Lucent Technologies, 135 F.3d 166 (1st Cir. 1998).  For example, a claim that someone was fired or not hired because of his or her race would not directly require the interpretation of a collective bargaining agreement; thus, these claims are not preempted under Section 301 preemption.  But where such state law claims are allowed to proceed, they are allowed to proceed because their claims do not involve any significant interpretation of the collective bargaining agreement.  Id. at 171.  This is not such a case.  It is impossible to address the merits of the plaintiffs' claims here without first interpreting the collective bargaining agreement.  This is so because if the union failed to pursue grievances under the collective bargaining agreement that had no merit, it is obviously not guilty of discrimination for not filing them.  Conversely, if the union failed to pursue claims that were meritorious under the contract, including alleged safety issues and the plant closing, , this would be some evidence of discrimination.  The court cannot determine either of these points without addressing the collective bargaining agreement as a core, not peripheral, part of this case.  For all of these reasons, the discrimination claim is preempted under Section 301.

Finally, the Massachusetts Commission Against Discrimination, whose interpretations are entitled to some deference, also concluded that the plaintiffs' discrimination claims here, when they were filed at the MCAD, were preempted and, therefore, the MCAD dismissed the claims.  (See Exhibit A attached hereto.)

Thus, the state law claims are preempted and the Court must preclude the adjudication of those claims.

|  |  |
|---|---|
|  | Respectfully submitted,<br>UNITED STEELWORKERS, LOCAL 421-U<br>AND UNITED STEELWORKERS,<br>By their attorneys, |
| Dated:  February 21, 2006 | __s/Harold L. Lichten_____<br>Harold L. Lichten, BBO # 549689<br>Alfred Gordon, BBO # 630456<br>Pyle, Rome, Lichten, Ehrenberg<br>     & Liss-Riordan, P.C.<br>18 Tremont St., Ste. 500<br>Boston, MA  02108<br>(617) 367-7200 |

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by first class mail on the attorney of record for each party on February 21, 2006.

  __s/Harold L. Lichten_____
  Harold L. Lichten