# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

EUCLIDES SOTO, LOUIS A. MARTINEZ,
JOSE RAMIREZ, CLEMENTE HERNANDEZ,
CESAR PIZARO, ELISON PENA,
JUAN COLON, JOSE ORTIZ, RAFAEL TORRES,
ANGEL BAEZ, ANTONIO MARTINEZ,
WILFREDO ORTIZ, EULOGIO ORTIZ,
MIRRAIN MIRANDA, RAFAEL MORENO,
NELSON ACEVEDO, and
RAMON RODRIQUEZ,

                 Plaintiffs,

v.

SHERMAN-FEINBERG CORPORATION,
FARNSWORTH FIBRE CORPORATION,
UNITED STEELWORKERS OF AMERICA,
LOCAL 421-U, and UNITED STEELWORKERS
OF AMERICA,

                 Defendants.

_____

Civil Action No.
04-10892-JLT

## PRETRIAL MEMORANDUM OF THE DEFENDANTS UNITED STEELWORKERS, LOCAL 421-U AND UNITED STEELWORKERS

Pursuant to the Court's Order dated January 26, 2006, Defendants United

Steelworkers, Local 421-U and United Steelworkers[1] (the union) respectfully

submit the following Pretrial Memorandum:

**A.     Trial Counsel:**

Harold L. Lichten
Alfred Gordon
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
18 Tremont Street, Suite 500

---

[1] The United Steelworkers of America has merged, and now, the official name is United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union.

Boston, MA 02108
(617) 367-7200

Robert Alexander
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Ste. 1000
Washington, DC 20005
(202) 842-2600

**B.    Matters Addressed in the Court's Pretrial Order**

**1.    Concise Summary of Evidence**

Plaintiffs are former employees of the Defendants Sherman Feinberg

Corp. and Farnsworth Fiber Corp. (the company) who lost their jobs when the

company closed its mattress factory and went out of business.  At all relevant

times, the plaintiffs were represented by the union, which took over as the

plaintiffs' exclusive representative when the Upholsters International Union

merged into the United Steelworkers.  When, in early October 2003, the

company stated its intention to close the factory and cease all operations, the

union met with the company and the company refused to offer any severance

benefits because the company was going out of business.  Such a scenario is

typical of small companies that close their doors without offering any severance

to their employees despite the union's attempt to negotiate such benefits.  Here,

in November of 2003, the union did file three grievances relating to the closing,

all of which were settled by the union in the employees' favor.

Though the plaintiffs contend that they suffered health and safety issues at

the factory prior to the closing – such as injuries from broken machinery or small

fires at the plant – none of the plaintiffs, nor indeed any employee, ever brought

any such concerns to the Steelworkers representative assigned to the bargaining

unit nor indeed to any other union representative, until many months after the plant closed.  The union was therefore unaware of these issues until such time as it could no longer address them through the grievance and arbitration machinery that existed under the collective bargaining agreement.

### 2.    Facts Established by the Pleadings

There have been no stipulations or admissions of counsel.  The following facts are established by the pleadings:

Plaintiffs are all Hispanic.

Plaintiffs were employed by the Defendant company until the company closed in November 2003 and were members of the union during the period of their employment with the company.  Plaintiffs became members of Local 421-U, an amalgamated local union of the United Steelworkers, after the Upholstery Workers union merged with the United Steelworkers

The company and the union entered into a number of collective bargaining agreements over the years, the most recent of which was effective from November 1, 2002, to October 31, 2006.  The contract contained no provision preventing the plant from shutting down.  In addition, the contract contained no provision for severance pay in the event of a plant shutdown, though it did require the company to continue paying into the union's pension fund.

Lowell Alexander was the union's International Representative assigned to the plaintiffs' unit since January 2002.  He is an African-American.

Since at least 2001 and during all relevant times, Masiel DaSilva was an administrative assistant at the Steelworkers' District 4 office in Milford, Massachusetts, where Mr. Alexander works.  Ms. DaSilva is herself Hispanic and speaks fluent Spanish.

At relevant times during 2002-2003, Jose Ortiz, one of the plaintiffs in this case, was elected by his fellow employees to serve as unit chair/shop steward.  Miguel DeJesus (who is not a plaintiff in the case) was selected by his fellow employees to serve as Local Union Committee Representative.  Mr. Ortiz and Mr. DeJesus were on the union's negotiating team with Mr. Alexander during the contract negotiations that led to the November 1, 2002, collective bargaining agreement.  Both Mr. Ortiz and Mr. DeJesus recommended that the employees ratify the

agreement, and the employees did so.  After the contract was executed and ratified, the union translated the contract into Spanish and provided copies of the agreement to the employees.

Pursuant to Article 16 of the collective bargaining agreement, the only duly authorized agents of the union for the purposes of enforcing the terms of the contract were the Staff Representative assigned by the United Steelworkers, Mr. Alexander, and for the purposes of filing and adjusting grievances, the shop steward, Mr. Ortiz.  Pursuant to Article 18 of the collective bargaining agreement, the shop steward is responsible for initiating grievances that arise at the facility, and several employees brought such concerns or grievances to Mr. Ortiz.

Mr. Alexander encouraged Mr. Ortiz to attend a special training seminar being put on by the United Steelworkers at the Holiday Inn in Braintree in January 2003, which was entitled "Union Stewards Training in Spanish." In order to encourage Mr. Ortiz to attend, Mr. Alexander secured the Steelworkers International's agreement to let Mr. Ortiz attend at the International's expense (the International would pay his tuition).  The Steelworkers did put on this training on January 3, 2003, and it did pay for a number of Spanish-speaking union representatives to attend, though Mr. Ortiz chose not to attend.

In the summer of 2003, at the request of Mr. Ortiz, Mr. Alexander arranged to meet with the workers at Farnsworth Fibre on the shop floor, with the machines turned off, to answer any questions the employees had about the union.  Mr. Alexander brought with him Masiel DaSilva to translate.

In early October of 2003, the company announced that it was shutting down its facility completely and going out of business.  Mr. Alexander came to the facility with Ms. DaSilva (as an interpreter) to meet with the employees and the company.  Mr. Alexander answered employees' questions regarding such issues as vacation pay and pension entitlements, and Ms. DaSilva had later conversations with at least one employee about his pension entitlement.  (The plaintiffs do not dispute these facts; they only dispute whether issues such as vacation pay and pension benefits are related to the plant closing.  See Pl. Opp. to SJ at ¶¶ D23.)

Later, after conferring with Mr. Ortiz and the workers, Mr. Alexander filed three grievances alleging the follow contract violations: (1) that the company attempted to stop health insurance coverage for employees at the time of the shutdown without providing such benefits until the end of the month; (2) that the second shift was terminated before the first shift without affording senior individuals on the second shift the right to bump to the first shift; and (3) that the company failed to pay report pay to employees on the second shift who showed up for work but were told that

4

the shift had already been disbanded.  Mr. Ortiz participated in preparing those grievances and signed them, and though he was invited to attend the grievance meetings with the company, Mr. Ortiz did not attend.  During the grievance meeting on November 19, 2003, Mr. Alexander settled each of the three grievances, receiving monetary compensation for the affected employees.  (The plaintiffs do not dispute that these grievances were filed and resolved; they only dispute whether these grievances are related to the plant closing.  See Pl. Opp. to SJ at ¶¶ D24-26.)

**3.    Contested Issues of Fact**

1.    Whether any claims are within the relevant statutes of limitation.

2.    Whether defendants were ever requested to and failed to file or pursue any grievance on behalf of any member.

3.    Whether defendants could have forced the employer to pay severance pay, or otherwise prevented the plant from closing in November of 2003.

**4.    Jurisdictional Questions**

None.

**5.    Questions Raised by Pending Motions**

Motions in Limine – For the reasons asserted in the union's motions, the

Court should disallow evidence to be taken on the following matters:

- Evidence regarding state law claims that are preempted.

- Evidence regarding matters falling outside the relevant statute of limitations for duty of fair representation claims

- Evidence regarding matters falling outside the relevant statute of limitations for discrimination claims.

- Unspecific testimony regarding incidents that occurred at the Farnsworth Fibre plant.

- Evidence regarding emotional distress, punitive damages, and front pay regarding the plaintiffs' duty of fair representation claims.

Motion for Attachment – The Court must deny the plaintiffs' motion for attachment for the reasons asserted in the union's opposition to the plaintiffs' motion.

## 6.    Issues of Law

### Duty of Fair Representation Issues

The six-month statute of limitations for duty of fair representation claims bars consideration of any incidents alleged by plaintiffs prior to November 5, 2003, including open-ended allegations that the union failed to address safety concerns or failed to provide employees with privileges accorded to non-Hispanic employees.[2]

Plaintiffs' claims against the union for breach of the duty of fair representation necessarily fail because plaintiffs do not allege or otherwise demonstrate that the company violated the collective bargaining agreement when it terminated them or otherwise failed to maintain the safety of the facility and yet it is necessary to establish both that the union breached a duty of fair representation and that the employer breached the collective bargaining agreement to succeed in a hybrid breach of contract and fair representation claim.[3]

The union cannot be found to have breached its duty of fair representation by failing to prevent job terminations or otherwise negotiate provisions in the contract regarding the effects of plant closure because there is no contractual obligation on the part of the union to prevent plant closures or terminations or to provide severance benefits, and none is required under federal labor law.[4]

---

[2] DelCostello v. Teamsters, 462 U.S. 151 (1983) (a claim charging breach of the duty of fair representation must be brought within a six month statute of limitations); Goulet v. Carpenters District Council of Boston, 884 F. Supp. 17, 24 (D. Mass. 1994) (claims accrued at least one year prior to bringing action barred under statute of limitations).

[3] DelCostello v. Teamsters, 462 U.S. 151, 164-65 (1983); Demars v. General Dynamics Corp., 779 F.2d 95, 97 (1st Cir. 1985); Teamsters v. Terry, 494 U.S. 558, 564 (1990); Miller v. U.S. Postal Service, 958 F.2d 9 (1st Cir. 1993).

[4] First National Maintenance Corp. v. NLRB, 452 U.S. 666, 677, 681-82 (1981) (a company has a duty to bargain only over the effects on employees of a shutdown of operations, and not the decision itself); Textile Workers V. Darlington Mfg. Co., 380 U.S. 263, 274 (1985) (employer has right to close its entire business, thereby ending employer-employee relationship); Magic Fraser v. Magic Chef-Food Giant Markets, Inc., 324 F.2d 853, 855-56 (6th Cir. 1963) (an employer has right to cease operations even when business is discontinued during the life of a collective bargaining agreement).

Plaintiffs' allegations regarding safety infractions at the plant involve company conduct, not union conduct, and must be dismissed on that basis alone, as there is no general far-reaching duty of a union to provide employees with a safe working environment in the absence of a contractual requirement.[5]

Even if the plaintiffs could establish that the union failed to provide services in Spanish, which is simply untrue, the union cannot be found to have breached the duty of fair representation if it provides services and publications in English but not in Spanish.[6]

The plaintiffs cannot introduce the kind of vague and unspecific testimony of safety problems at the plant as were offered in pretrial motions since such evidence is not probative of the issues relevant to this case, is too vague to be admissible, and would unfairly prejudice Defendants.[7]

Vague allegations that the union has not provided apprenticeship, educational, or safety programs are without merit since a union has no duty under state or federal law to provide apprenticeship, educational or safety programs and the plaintiffs have failed to produce evidence of programs or privileges withheld from Farnsworth Fibre employees.[8]

Under well settled precedent, the plaintiffs are not entitled to punitive damages, emotional distress damages, or front pay with regard to their duty of fair representation claims.[9]

---

[5] USWA v. Rawson, 495 U.S. 362 (1990); Condon v. Local 2944, United Steelworkers of America, 683 F.2d 590 (1st Cir. 1982); Goulet v. Carpenters District Council of Boston, 884 F. Supp. 17, 23 (D. Mass. 1994).

[6] Lebron v. International Brotherhood of Electrical Workers, 1992 U.S. Dist. LEXIS 8887 (D. Mass. June 9, 1992) (no breach of duty of fair representation for failure of union to employ interpreter during arbitration hearing)

[7] Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) (evidence must meet certain rudiments of specificity); Kaufman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1172-73 n.5 (1st Cir. 1988) (the evidence "must generate the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations."); Dente v. Riddell, Inc., 664 F.2d 1, 5 (1st Cir. 1981) (discussing the use of the balancing test in Rule 403 as a guide to exclude prejudicial evidence).

[8] USWA v. Rawson, 495 U.S. 362, 376 (1990) (to the extent that a union assumes any obligations of care towards its members, they derive from the collective bargaining agreement).

[9] International Brotherhood of Electrical Workers v. Foust, 442 U.S. 42 (1979) (punitive damages); Soto Segarra v. Sea-Land Service, Inc., 581 F.2d 291 (1st Cir. 1978) (emotional distress and front pay)

## Chapter 151B State-Law Issues

Because the state law discrimination claims asserted by the plaintiffs allege conduct by the union which, fairly construed, is prohibited under sections 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act, such claims are completely preempted under San Diego Building Trades Council v. Garmon, 359 U.S. 236 (1959) (forbidding state and local regulation of activities that are protected by § 7 of the NLRA or constitute unfair labor practices under § 8 of the Act).[10]

Because the state law discrimination claims require interpretation of the collective bargaining agreement, the state law claims are completely preempted under Section 301 of the Labor Management Relations Act.[11]

## Title VII Issues (also relating to any remaining Chapter 151B claims)

The plaintiffs' allegations regarding race or national origin discrimination must necessarily fail because the plaintiffs have not alleged any intentional conduct on the part of the union relating to their protected status.[12]

The plaintiffs cannot introduce the kind of vague and unspecific testimony of safety problems at the plant as were offered in pretrial motions since

---

[10] Chalk Services, Inc. v. Massachusetts Commission Against Discrimination, 70 F.3d 1361 (1st Cir. 1965) (where a state law claim concerns conduct that is actually or arguably either protected or prohibited by the National Labor Relations Act, the state law claim is presumptively preempted and must be dismissed); see also Local 12004, United Steelworkers of America v. Massachusetts Commission Against Discrimination, 377 F.3d 64 (1st Cir. 2004).

Independent Metal Workers, Local 1 and 2 and the Hughes Tool Co., 147 NLRB 1573 (1964) (holding that a union's failure to process an employee grievance because of race was an unfair labor practice under Sections 8(b)(1)(A) and 8(b)(2) and 8(b)(3) of the Act); Rubber Workers, Local 12, 150 NLRB 312, enforced 730 F.2d 768 (2d Cir. 1984) (holding that a union breaches its duty of fair representation and, therefore, violates the National Labor Relations Act, when it administers the collective bargaining agreement in a bad faith or racially "discriminatory" manner).

[11] Martin v. Shaw's Supermarkets, 105 F.3d 40, 42 (1st Cir. 1997) (Section 301 preemption exists "whenever a court in passing upon the asserted state law claim would be required to interpret a plausibly disputed provision of the collective bargaining agreement."); See also Lingle v. Norge Division of Magic Chef, 486 U.S. 399 (1988); Reece v. Houston Lighting and Power Company, 79 F.3d 45 (5th Cir. 1996) (preempting race discrimination claims).

[12] Pipe Fitters Assoc., Local Union 597, 334 F.3d 656 (7th Cir. 2003); Barbour v. Dynamics Research Corp., 63 F.3d 32, 39 (1st Cir. 1995) (plaintiffs must offer proof that the "defendant acted with the specific intent of discriminating against the plaintiff.").

such evidence is not probative of the issues relevant to this case, is too vague to be admissible, and would unfairly prejudice Defendants.[13]

Plaintiffs' discrimination claims relating to the union's alleged failure to file grievances on their behalf are time-barred since no plaintiff ever sought or was denied the union's assistance in filing a supportable grievance within 300 days of the plaintiffs' filing with the MCAD/EEOC.[14]

### 7.    Requested Amendments to Pleadings

In the time since this action was initiated, the union has merged with another organization and has changed its name.  The union therefore requests that the caption in this case be amended to reflect its new name:

### 8.    Additional Matters

None.

### 9.    Probable Length of Trial

As all of the seventeen plaintiffs have expressed their intention to testify, the Defendants estimate that the trial will last for approximately two weeks, or slightly longer.

### 10.    Witnesses to Be Called

Lowell Alexander
Theresa Merrill Stones
Albert H. Polk

---

[13] Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) (evidence must meet certain rudiments of specificity); Kaufman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1172-73 n.5 (1st Cir. 1988) (the evidence "must generate the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations."); Dente v. Riddell, Inc., 664 F.2d 1, 5 (1st Cir. 1981) (discussing the use of the balancing test in Rule 403 as a guide to exclude prejudicial evidence).

[14] National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002); Luciano v. Coca-Cola, 307 F.Supp.2d 308, 318 (D. Mass. 2004)

Masiel DaSilva
Kenneth J. Doucette
Lawrence S. Feinberg
Nelson Acevedo
Angel Baez
Clemente Hernandez
Antonio Martinez
Luis A. Martinez
Jose E. Ortiz
Eulogio Ortiz
Juan R. Colon Ortiz
Wilfredo C. Ortiz
Elison Pena
Cesar Narciso Pizarro
Jose D. Ramirez
Ramon Rodriguez
Euclides Soto
Rafael Torres
Mirrain Miranda
Rafael Moreno

**11.    Proposed Exhibits**

a.    Collective bargaining agreement between Sherman-Feinberg Corp. & Farnsworth Fibre Corp. and U.S.W.A. Local 421-U (English version)

b.    Collective bargaining agreement between Sherman-Feinberg Corp. & Farnsworth Fibre Corp. and U.S.W.A. Local 421-U (Spanish version)

c.    Collective bargaining agreement between Sherman-Feinberg Corp. & Farnsworth Fibre Corp. and Upholsterers International Union.

d.    Letter designating Lowell Alexander as staff representative for Local 421 U-6.

e.    Salary voucher for Jose Ortiz's participation in collective bargaining

f.    Notice of Spanish stewards training

g.    Memo and checks relating to Spanish stewards training

h.    Letter from Feinberg to Alexander announcing the shop closing

i.      Benefit report for Jose Ramirez

j.      Grievance Report regarding medical benefits

k.      Grievance Report regarding seniority provisions

l.      Grievance Report regarding report pay

m.      Collective bargaining agreement between Sealy Mattress Co. and USWA, Local 421-U

n.      Sealy Mattress plant closure agreement

o.      Collective bargaining agreement between Beebe Rubber Co. and USWA, Local 570

p.      Collective bargaining agreement between Cone Blanchard Machine Co. and USWA

q.      Collective bargaining agreement between Rosbro Plastics and USWA

r.      Rosbro Plastics closing agreement

s.      Seniority listing for Sealy Mattress Company's Randolph, MA, plant

t.      Deposition transcript for Jose Enrique Ortiz

u.      Deposition transcript for Nelson Acevedo

v.      Deposition transcript for Angel Baez

w.      Deposition transcript for Clemente Hernandez

x.      Deposition transcript for Antonio Martinez

y.      Deposition transcript for Luis A Martinez

z.      Deposition transcript for Eulogio Ortiz

aa.     Deposition transcript for Juan R. Colon Ortiz

bb.     Deposition transcript for Wilfred Ortiz

cc.     Deposition transcript for Elison Pena

dd.     Deposition transcript for Cesar Pizarro

ee.    Deposition transcript for Jose D. Ramirez

ff.    Deposition transcript for Ramon Rodriguez

gg.    Deposition transcript for Euclides Soto

hh.    Deposition transcript for Rafael Torres

ii.    Letter from Robert Berger to union – March 4, 2004

jj.    Letter from Theresa Merrill Stones to Robert Berger – March 18, 2004

kk.    Letter from Berger to Merrill Stones – April 1, 2004

ll.    Letter from Kenneth Doucette to Berger – April 6, 2004

mm.    Letter from Merrill Stones to Berger – April 7, 2004

Respectfully submitted,

UNITED STEELWORKERS, LOCAL 421-U and UNITED STEELWORKERS, AFL-CIO,

By their attorneys,

___s/Harold L. Lichten_____
Harold L. Lichten, BBO # 549689
Alfred Gordon, BBO # 630456
Pyle, Rome, Lichten, Ehrenberg
    & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA  02108
(617) 367-7200

DATE:    February 24, 2006

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by first class mail on the attorney of record for each party on February 23, 2006.

_ s/Harold L. Lichten_____
Harold L. Lichten