UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUCLIDES SOTO, LOUIS A. MARTINEZ, JOSE RAMIREZ, CLEMENTE HERNANDEZ, CESAR PIZARO, ELISON PENA, JUAN COLON, JOSE ORTIZ, RAFAEL TORRES, ANGEL BAEZ, ANTONIO MARTINEZ, WILFREDO ORTIZ, EULOGIO ORTIZ, MIRRAIN MIRANDA, RAFAEL MORENO, NELSON ACEVEDO, And RAMON RODRIGUEZ,<br>　　　　　　　Plaintiffs,<br><br>V.<br><br>SHERMAN-FEINBERG CORPORATION, FARNSWORTH FIBRE CORPORATION, UNITED STEELWORKERS OF AMERICA, LOCAL 421-U AND UNITED STEELWORKERS OF AMERICA,<br>　　　　　　　Defendants. | CIVIL ACTION<br>NO.: 04-10892-JLT |

**OPPOSITION TO MOTION IN LIMINE OF THE DEFENDANTS UNITED STEELWORKERS LOCAL 421-U AND UNITED STEELWORKERS TO PRECLUDE EVIDENCE RELATION TO THE STATE-LAW DISCRIMINATION CLAIMS**

The amended complaint alleges, in part, that the Steelworker's union and its local have engaged in a pattern and practice of continuous discrimination against its Hispanic membership at the Farnsworth Fibre Corporation (Farnsworth), in violation of Massachusetts General Laws, c.151B, §4. The presumption, of course, is against preemption for the 151 B claim. Preemption analysis relies of the assumption that 'the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was clear and manifest purpose of Congress.'" *Rice v. Santa Fe Elevator Corp.*, 331

U.S. 218, 230, 67, S.Ct. 1146, 91 L.Ed 1447 (1947). The burden is on the party seeking preemption to establish that enforcement of the state laws would frustrate and interfere with the purpose of the Federal Act. *See Abdu-Brisson v. Delta Air Lines, Inc.,* 128 F.3d 77, 83 (2nd Cir.1997) (citing *New York State Conf. Of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 654 (1995); *Gade v. National Solid Wastes Management Ass'n* 505 U.S. 88, 98 (1992). *LaRosa v. UPS*, 23 F. Supp.2d 136 (D. Mass. 1998). The defendant's first preemption argument is that the plaintiff's claim is preempted by the collective bargaining agreement between the union and the employer which, among other things, provides a grievance and arbitration procedure. Labor Management Act, § 301, 29 U.S.C. § 185. The argument fails, however, because the present controversy concerns the plaintiff's rights under state and federal statutes which exist independently of the collective bargaining agreement and do not require interpretation of that agreement. *Livadas v. Bradshaw,* 512 U.S. 107, 123-124 (1994); *Hawaiian Airlines v. Norris,* 512 U.S. 246, 261 (1994). *Ralph v Lucent Tech.*, 135 F.3d 166, 171 (1st Cir. 1998) (applying federal law to MCAD proceeding).

  The second pre-emption argument is a purely factual inquiry which likewise does not turn on the meaning of any provision of a collective-bargaining agreement. Thus, the state-law remedy in this case is "independent" of the collective bargaining agreement in the sense of "independent" that matters for § 301 pre-emption purposes: resolution of the state-law claim does not require construing the collective-bargaining agreement. *Lingle v. Norge Division of Magic Chef*, 413 U. S. 399,413(1988). ("In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the just cause language of a collective bargaining agreement.").

This case does not involve discrimination during a union job action. Compare *Local 12004 v. Massachusetts Commission Against Discrimination*, 377 F.3d 64 (1st Cir. 2004). The First Circuit reasoned as follows: "Most notably, there is no question that the insults and epithets that union members directed towards McGrath while they were picketing are, at the very least, arguably protected by § 7 of the NLRA. The NLRA clearly protects the right of picketing workers to use a variety of harsh and insulting speech -- including racial, ethnic, and homophobic slurs -- in furtherance of their § 7 right to engage in 'concerted activities for the purpose of collective bargaining or other mutual aid or protection.' 29 U.S.C. § 157. *See, e.g.*, *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 283 (1974) ('[F]ederal law gives a union license to use intemperate, abusive, or insulting language without fear of restraint or penalty if it believes such rhetoric to be an effective means to make its point.'); *Milk Wagon Drivers Union of Chi., Local 753 v. Meadowmoor Dairies, Inc.*, 312 U.S. 287, 293 (1941) (peaceful picketing is protected despite 'moment[s] of animal exuberance'); *Nat'l Council of Young Israel*, 276 N.L.R.B. 1123, 1136 & n.14 (1985) (calling replacement workers '[n]iggers' was protected conduct under § 7); *Ben Pekin Corp.*, 181 N.L.R.B. 1025, 1028 (1970) ('[O]ffensive, vulgar, defamatory, or opprobrious remarks uttered during the course of protected, concerted activities will not automatically destroy the right conferred by the Act to engage in conduct otherwise safeguarded by its text.'). At the same time, it also may be 'facially conclusive' that at least the alleged instances in which union members made credible threats of violence against McGrath are arguably prohibited by § 8 of the NLRA. *See* 29 U.S.C. § 158(b)(1)(A)." The First Circuit only said this much. The Court did not uphold a finding of pre-emption. The Court only said

that the case could go forward on preemption grounds in the District Court, for "arguably" there may be a violation of labor law. This case is the opposite. As the Supreme Court has said "a collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in state-law is entitled. See *Baldrachhi v. Pratt & Whitney Aircraft Div, United Technologies Corp.,* 814 F.2d, at 106. Although federal law would govern the interpretation of the agreement to determine proper damages, the underlying state-law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and separate state-law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted. As we said in *Allis Chalmers Corp. v. Lueck*, U.S., at 211, "not every dispute…tangentially involving a collective-bargaining agreement, is pre-empted by §301…." *Lingle*, 486 U.S. at 399, 413, n.12. Nor does this case involve discrimination while an NLRB claim was pending, compare *Chalk Services v. Massachusetts Commission Against Discrimination*, 70 F.3d 1361 (1st Cir. 1995).

The preemption defense does not establish the elements of dismissal. All reasonable inferences which may be drawn from the complaint and which are favorable to the complainant establish a claim that is not pre-empted by the NLRA, the LRMA, an interpretation of the CBA, or a pending unfair labor charge (there is none). At worst, the state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and separate state-law analysis that does not turn on the agreement.

4

In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted. *Lingle*, 486 U.S. at 413, n. 12. If the judgment exceeds the Title VII cap on damages, the issue can be revisited but there is no substantive difference between the state and federal claims. When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty, implied from its status under § 9(a) of the NLRA as the exclusive representative of the employees in the unit, to represent all members fairly. See, e. g., *Ford Motor Co. v. Huffman,* 345 U.S.330, 337 (1953); *Vaca v. Sipes,* 386 U.S.171, 177 (1967).In *Vaca v. Sipes,* the duty of fair representation requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Ibid.* In other words, a union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith. *Id.,* at 190. See also *Air Line Pilots v. O'Neill,* 499 U.S.65, 67 (1991) (reaffirming this tripartite standard). The court should also consider whether the union's conduct was arbitrary or in bad faith. The statutory duty of fair representation was first developed in cases involving allegations of racial discrimination by unions. See *Steele v. Louisville & Nashville Railroad, 323 U.S. 192 (1944 and Turnstall v. Brotherhood of Locomotive, Firemen and Enginemen*, 323 U.S. 210 (1944). As enunciated by the Supreme Court, the doctrine requires a union "to serve the interests of all members without hostility or discrimination toward any, to exercise discretion with complete good faith and honesty and to avoid arbitrary conduct." See *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). Here,the prima facie case, described above in Part A, establishes enough material facts in controversy for the

5

*Vaca* standard. Here, there was a duty on the part of the employer to negotiate the plant closing, and no such thing occurred, and the union failed to file a grievance about it, no matter what excuse it offered about being in or out of the collective bargaining agreement, as Alexander admitted. At the very least, Alexander could have asked for effects bargaining items like the severance benefits for people already making only $7.00-$14.00 an hour. It is a triable issue whether the union is correct when it contends that even though it failed to get protective plant closing language and it did not ask for it, the union escapes liability. For, in March, 2004, every plaintiff asked in writing for the union to process grievances for termination, that is, for help, and got attacked.

Plaintiffs argue that work safety was arbitrarily omitted from this process. However, the union has a duty to negotiate over safety to conform to OSHA and should have asked for a safety officer or safety committee at this plant. The union collected fees and dues from bargaining unit employees under its statutory grant of authority to serve as the exclusive bargaining representative. But then it used that money for purposes wholly unrelated to the grant of authority that gave it the right to collect that money, and in ways that were antithetical to the interests of some of the workers that it was required to serve. This aspect of the union's conduct, and not just the fact that the conduct violated the statute, made the union's actions a breach of the duty of fair representation. Above all, the Plaintiffs (including the shop steward) demanded arbitration by the union in March and April 2004 and the defendant union refused to do anything for them. Therefore, there was a written request within the six months and there was a failure to enter any grievances for the layoff. *Montgomery v. City of Armore*, 365 F. 3d 926 (10th Cir. 2004); *Bakers v. IBP, Inc.*, 357 F. 3d 685 (7th Cir. 2004); and *Fiori v. Truck Drivers, Local 170*,

354 F. 3d 84 (1st Cir. 2004). The union's duty of fair representation is implied from its status as the exclusive bargaining representative of the bargaining unit workers. As such, the union is empowered to bargain collectively with the employer on behalf of all employees in the bargaining unit over wages, hours, and other terms and conditions of employment, § 9(a), 29 U.S.C. § 159(a), and it accordingly enjoys "broad authority . . . in the negotiation and administration of [the] collective bargaining contract." *Humphrey v. Moore,* 375 U.S. 335, 342 (1964). This broad authority, however, is tempered by the union's "statutory obligation to serve the interests of all members without hostility or discrimination toward any," *Vaca v. Sipes,* 386 U.S. 171, 177 (1967), a duty that extends not only to the negotiation of the collective-bargaining agreement itself but also to the subsequent enforcement of that agreement, including the administration of any grievance procedure the agreement may establish. *Ibid.* The plaintiffs simply requested that the defendant Unions process their grievances in a simple straightforward letters in March and April 2004, but the Unions refused to grieve their claims. As a result, this is a classic and timely duty of fair representation claim brought to the federal court because the Unions would not comply with their duties under the federal labor law. In addition, the defendant union lost this argument in its motion for summary judgment.

                                                Respectfully submitted,

Dated: February 24, 2006                    /s/ Robert O. Berger
                                                Robert O. Berger (BBO#: 038900)
                                                11 Beacon Street, Ste. 1210
                                                Boston, MA 02108
                                                (617) 423-7575 Tel
                                                (617) 275-8000 Fax
                                                Attorney for Plaintiffs

                                                /s/ John Lee Diaz
                                                John Lee Diaz (BBO#: 542819)
                                                801A Tremont Street
                                                Boston, MA 02118
                                                (617) 445-7900 Tel
                                                Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

     I hereby certify that a true copy of the above document was served by electronic transfer on the attorney of record for each party on February 24, 2006.

Dated: February 24, 2006                    /s/ Robert O. Berger
                                                Robert O. Berger (BBO#: 038900)