UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| EUCLIDES SOTO, LOUIS A. MARTINEZ, JOSE RAMIREZ, CLEMENTE HERNANDEZ, CESAR PIZARO, ELISON PENA, JUAN COLON, JOSE ORTIZ, RAFAEL TORRES, ANGEL BAEZ, ANTONIO MARTINEZ, WILFREDO ORTIZ, EULOGIO ORTIZ, MIRRAIN MIRANDA, RAFAEL MORENO, NELSON ACEVEDO, and RAMON RODRIGUEZ,<br>            Plaintiffs,<br><br>v.<br><br>UNITED STEELWORKERS OF AMERICA, AFL-CIO/CLC AND UNITED STEELWORKERS OF AMERICA, LOCAL 421U<br>            Defendants. | CIVIL ACTION<br>NO.: 04-10892-JLT |

## **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

1. The plaintiffs are individuals who reside in Suffolk County, Massachusetts.

2. All of the above-mentioned individuals are Hispanic, employed by defendant Employers, and members of defendant Union.

3. The defendant, United Steelworkers of America, Local 421-U is a local of such union with its principal place of business at 100 Medway Road, Milford, MA 01757.

4. The defendant, United Steelworkers of America, AFL-CIO/CLC (hereinafter "United Steelworkers of America") is a national union located in Pittsburgh, PA.

5. Venue lies in Massachusetts where the events giving rise to the claim occurred. 28 U.S.C. §1391.

6. The plaintiffs have exhausted their remedies before coming to court.

7. The district court has original jurisdiction of this civil action arising under the laws of the United States.  28 U.S.C. §1331.

### COUNT I:  DISCRIMINATION CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

8. The United Steelworkers of America and its local were guilty of intentional and willful discriminatory practices in failing to process negotiations, maintain safety programs, having participation of the minority membership, asserting instances of racial discrimination as grievances, and in tolerating and tacitly encouraging racial harassment, and neglecting to bargain for plant shut down benefits for the whole Latino workforce as demonstrated by express and circumstantial evidence. The defendants committed egregious or outrageous discrimination in intentional discrimination. The defendants acted with malice or with reckless indifference to the plaintiffs' federally protected rights.  As a result, the plaintiffs assert their rights under Title VII of the Civil Rights Act of 1964.

9. Under § 703(c) of Title VII, a "labor organization," such as the Union, may not discriminate. See *42 U.S.C. §  2000e-2*(c) and 2(m) ("an unlawful employment practice is established when the complaining party demonstrates that...national origin was a motivating factor for an employment practice, even though other factors also motivated the practice.") See, *e.g.,* 42 U. S. C. § § 2000e-2(k)(1)(A)(i), 2000e-5(g)(2)(B). For instance, § 2000e-5(g)(2) (B) requires an employer to "demonstrat[e] that [it] would have taken the same action in the absence of the impermissible motivating factor" in order to take advantage of the partial affirmative defense.

10. During the entire course of his employment, each plaintiff was a dues-paying member of Local 421-U (District 4) of the United States Steelworkers of America, making between $10.00 and $13.00 per hour at the time of the plant's closing.

11. Plaintiffs were never invited to the quarterly meetings of the Defendant Unions. In fact, most did not even know that the Defendants conducted such quarterly meetings. Plaintiffs never received any notice, literature or invitation of any sort to attend these meetings. At least one plaintiff believed he was not invited to the meetings because he was Hispanic. The plaintiffs stated that there was no bulletin board hung where notices could be posted informing workers of union news, worker's compensation, OSHA notices etc. In fact, there were no notices anywhere in the plant that indicated that the plaintiffs were represented by the Defendant Unions. Therefore, the Unions willfully discriminated against the plaintiffs.

12. During the entire course of their employment, the union failed to provide them with the privileges accorded to non-Hispanic union members, such as plant closing protection or any arbitration of any grievance. At no time in 25 years did the union process a single arbitration about any term or condition of the work of the Latino workforce. Therefore, the Unions willfully discriminated against the plaintiffs.

13. Unlike other collective bargaining agreements ("CBA"), the one here lacked plant closing protections. The CBA is a November 1, 2002 - October 31, 2006, Agreement between Sherman-Feinberg Corporation and the Farnsworth Fibre Corporation ("Employers"), and U.S.W.A. Local 421-U ("Union"). With respect to other plants, Sealy Mattress, Bee-Bee Rubber, and Rosboro Plastics had plant closing severance language in the collective bargaining agreements. The instant plant did not, nor was it requested in negotiations. Therefore, the Unions willfully discriminated against the plaintiffs

14. The Employers gave notice of termination to second-shift employees on November 7, 2003, and to first-shift employees on November 14, 2003. The union did not bargain over the decision to lay- off the 100% Latino workforce. Therefore, the Unions willfully discriminated against the plaintiffs.

15. Before the terminations, on or about November 12, 2003, Lowell Alexander of the Union met with Kenneth Doucette of the Employers. Upon learning that the plant was closing, Jose Ortiz called Lowell Alexander to inform him of the announcement and asked him to come down. Lowell Alexander met with the plaintiffs. The plaintiffs were upset about the lack of notice by the employer. Lowell Alexander told them there was not much the Defendant Union could do about it because the owners could do whatever they wanted. They also inquired about any benefits the Union could secure for them. Lowell Alexander told them the only benefits they would be getting were unemployment benefits. Alexander told Jose Ortiz that the Union could do nothing, waiving the right to negotiate or grieve the 100% lay off of the Latino workforce. Furthermore, there was no negotiation of the effects of closing the plant, only bumping rights and medical benefits. (Bumping rights involve intra-union seniority.) Therefore, the Unions willfully discriminated against the plaintiffs.

16. Therefore, the plaintiffs engaged a lawyer, and they demanded in writing that a grievance be filed and a complaint lodged about the interpretation, application, or compliance with the terms of the Agreement with respect to the terminations of the 100% Latino workforce. On March 4, 2004, the plaintiffs wrote the defendants requesting,

> …under the provisions of the November 1,2002-October 31,2006 Agreement between Sherman-Feinberg Corporation and the Farnsworth Fibre Corporation ("Employers"), and U.S.W.A. Local 421-U ("Union"), the National Labor Relations Act, state and federal antidiscrimination laws, and the constitution of the United Steel Workers of America. All of the above-mentioned individuals in the bargaining unit are Hispanic, employed by said Employers, and members of said Union.

4

Shop Steward, Jose Ortiz, took up the question of the protection of said individuals under the Agreement with Kenneth J. Doucette, agent of the Employers. No adjustment was reached within forty-eight (48) hours. The Employers gave notice of termination to second-shift employees on November 7, 2003, and to first-shift employees on November 14, 2003.

Before the terminations, on or about November 12, 2003, Lowell Alexander of the Union met with Kenneth Doucette of the Employers. Next, Ortiz met with Alexander; Alexander told him that the Union could do nothing. The dispute was not submitted in writing by the Union or the Employers and presented for adjustments to the company's representative and the Union's representative. <u>Therefore, the individuals hereby demand that a grievance be filed and a complaint lodged about the interpretation, application, or compliance with the terms of the Agreement with respect to the terminations. The failure to do so will be considered an action predicated upon racially discriminatory motivation, which is a breach of the duty of fair representation and breach by the Employers of the labor contract. The above-referenced employees demand that there be adjustment or grievance of the terminations of said employees to the extent that the Agreement provides relief.</u>

<u>The above-referenced individuals also assert that their rights have been violated as set forth under the provisions of M.G.L. c. 151B, §4(2) and the federal laws regarding employment discrimination. The individuals are in a protected class due to their national heritage and have been treated in a disparate manner. They will assert their rights for remedies beyond the scope of the National Labor Relations Act, including but not limited to: front wages, punitive damages, interest, costs, and attorneys' fees.</u> Above all, there is no overlap between the Employers' and Unions' labor practices and discriminatory conduct. For example, the Shop Steward, Jose Ortiz, was not provided with the Union Constitution. Significantly, the Agreement does not provide for the effects of the terminations of said employees. Nor does the Agreement reflect effects bargaining. We submit that the Union and the companies are liable for all remedies available under the state and the federal anti-discrimination laws.

Kindly within fourteen (14) days respond adequately to this demand for relief to the extent that you, and/or your agents, have engaged in unfair labor practices and/or breached the duty of fair representation within the meaning of the National Labor Relations Act. Furthermore, the above-referenced individuals expressly reserve the right to pursue claims under state and federal antidiscrimination laws.

Emphasis added.

The union did nothing to grieve or arbitrate the discriminatory lay-off of the complete Latino workforce. Therefore, the Unions willfully discriminated against the plaintiffs.

17. Plaintiffs did not contact the Defendant Union directly because they had no idea that was their right. No one ever explained to them that they could by-pass the shop steward and call the Union Representative directly. There were no notices posted detailing that right (or any other right). In fact, at one meeting with Lowell Alexander, he told the plaintiffs that they could not call him personally; that they had to contact the shop steward and shop steward would then call him. Plaintiffs were never invited to the quarterly meetings of the Defendant Union. In fact, most did not even know that the Defendant conducted such quarterly meetings. Plaintiffs never received any notice, literature or invitation of any sort to attend these meetings. At least one plaintiff believed he was not invited to the meetings because he was Hispanic. Therefore, the Unions willfully discriminated against the plaintiffs.

18. Each of the plaintiffs suffered adverse work impact where there was the failure by the union and its local to negotiate or grieve discharges and severance in an all Latino workforce when the plant closed in November 2003. Therefore, the Unions willfully discriminated against the plaintiffs.

19. There was no negotiation about the effects of the plant closing for severance when the plant closed in November, 2003 for the entire Latino workforce. Therefore, the Unions willfully discriminated against the plaintiffs.

20. There was a fire at the plant in November, 2003, causing damage to the plaintiffs, even though the union was either conspiring with the employer to avoid maintaining safety measures or obligated to provide safety measures. Despite the fact that the plaintiffs were working with heavy very old machinery, Mr. Alexander never did anything to ensure that the employer developed a written hazard program. He never checked if the employer kept

material safety data sheets. Therefore, the Unions willfully discriminated against the plaintiffs.

21. There was no hazard safety program or health and safety officer at the plant in November, 2003 unlike at all Commonwealth Gas locations employing Steelworkers. The conditions of the plant made it such that fires were constantly breaking out right up until the plant's closing. Elison Pena recalls that the last fire occurred in November, 2003. Wilfredo Ortiz recalls having to get on top of the machine to put out a fire, all the while inhaling the smoke from the fire. Therefore, the Unions willfully discriminated against the plaintiffs.

22. Whatever else may or may not have been in the collective bargaining agreement, Mr. Alexander acknowledged that he has "in past practice" grieved things that were not within the specific terms of the collective bargaining agreement. Lowell Alexander Deposition at p. 28 Therefore, the Unions willfully discriminated against the plaintiffs.

23. Lowell Alexander acknowledged that as Union Representative, it was his obligation to make sure that the employer followed health and safety policies although he never checked to determine what, if any, policies were in place. Deposition of Lowell Alexander at p. 73-74. The machinery with which the Plaintiffs worked was heavy and antiquated. Some machinery was so old that the employer could not get replacement parts in the event a machine broke. Even Mr. Alexander acknowledged that the machinery in the plant was old. Therefore, the Unions willfully discriminated against the plaintiffs.

24. According to Mr. Alexander, the Defendant Union would address safety concerns if they became aware of them, even in the absence of a formal complaint. Mr. Alexander was on-site of the plant on more than one occasion. He had the opportunity to see the dust flying all over the place, yet he never took any steps to ensure that the employer had proper

7

ventilation for the plant. Neither he nor anyone else from the Defendant Union ever walked around the plant to examine whether the plaintiffs were protected from fire, dust or chemicals. Therefore, the Unions willfully discriminated against the plaintiffs.

25. Eulogio Ortiz lost two fingers at the plant. Ramon Rodriquez fell and hurt his back while at work. There were no notices posted informing him he could contact the Defendant Union directly about his complaint. Euclides Soto cut his face on a broken machine. The machine was not fixed until after his injury. As the Steelworkers undertook safety obligations for their white workforce at Commonwealth Gas, they treated the plaintiffs disparately. Alexander had been a Steelworker union steward for the gas company; he learned at the gas company when, where and how there was catastrophic injury in his steward capacity; and he simply does not know why he never learned of catastrophic injury at this entirely Latino plant when he was union representative. Therefore, the Unions willfully discriminated against the plaintiffs.

26. Although the entire work force at his job site was Hispanic, the union local failed to provide a Spanish collective bargaining agreement during negotiations until after negotiations. It was not until after the agreement was signed that the agreement was distributed in Spanish. Therefore, the Unions willfully discriminated against the plaintiffs.

27. There was no provision for severance or plant closing in this agreement. The prospect of a plant closing was not even an issue in the collective bargaining at this plant. For, the Union had not checked the books of Farnsworth Fibre and Sherman-Feinberg to find out their financial picture although the union wrote the companies in 2002 to request them. Alexander heard scuttlebutt about them taking the money and converting the building into a

condominium at one of the meetings prior to the company closing. Therefore, the Unions willfully discriminated against the plaintiffs.

28. At least one discriminatory act occurred within the 300 day limitations period here, 1) there was no negotiation about the effects of the plant closing for severance when the plant closed in November, 2003; or 2) there was a fire at the plant in November, 2003; or 3) there was no posting of union notices at the time the plant closed in November, 2003; or 4) the union was unaware of safety hazards at the plant even though its representative visited the plant in November, 2003 ; or 5) or the union did not know whether employer kept material data safety slips in November, 2003; or 6) there was no hazard safety program or health and safety officer at the plant in November, 2003; or, finally, 7) in March and April 2004, the plaintiffs requested grievances and the defendant unions refused to process them.; (2) the alleged timely discriminatory acts have a substantial relationship to the alleged untimely discriminatory acts (the union only points to its long history of neglect to prove that there was discrimination then and now, which is unpleasant and cynical);  (3) earlier violations outside the 300 day limitations period did not trigger each plaintiff's awareness and duty' to assert his rights, i.e., that plaintiff could not have formed a reasonable belief at the time the employment actions occurred that they were discriminatory.

29. For actions prior to 300 days before filing the claim, the plaintiffs assert that no informational notices were posted and that they had no knowledge of their legal rights until informed by their attorney; the plaintiffs having no education beyond the eighth grade and being from the Dominican Republic and Puerto Rico had a lack of actual notice of the filing requirement; the plaintiffs had a lack of constructive knowledge of the filing requirement; the plaintiffs had diligence in pursuing their rights. Equitable estoppel is not to be sparingly

applied hereto. There is an absence of prejudice to the defendant. The plaintiffs had reasonableness in remaining ignorant of the filing requirement for discriminatory acts, if any, 300 days prior to the filing requirement.

## COUNT II DISCRIMINATION CLAIMS UNDER 42 U.S.C. §1981

30. As alleged above, the defendants committed egregious or outrageous discrimination in intentional discrimination. The defendants acted with malice or with reckless indifference to the plaintiffs' federally protected rights. As a result, the plaintiffs assert their rights under all federal and state discrimination laws, 42 U.S.C. § 1981, for back wages, front wages, punitive damages, interest, costs, and attorneys' fees.

## COUNT III DISCRIMINATION CLAIMS UNDER MASSACHUSETTS GENERAL LAWS CHAPTER 151B

32. As alleged above, the defendants committed egregious or outrageous discrimination in intentional discrimination. The defendants acted with malice or with reckless indifference to the plaintiffs' state protected rights. As a result, the plaintiffs assert their rights under state discrimination laws, for back wages, front wages, punitive damages, interest, costs, and attorneys' fees, under Massachusetts General Laws Chapter 151 B.

WHEREFORE, the plaintiffs request the entry of judgment for back pay, front pay, benefits, interest, costs, punitive damages and attorney fees against the defendants.

**PLAINTIFFS HEREBY INVOKE THEIR RIGHT TO TRIAL BY JURY.**

/s/ Robert O. Berger
Robert O. Berger, Esq.
11 Beacon Street, Suite 1210
Boston, MA 02108
Tel: 617-423-7575
BBO #: 038900
Attorney for Plaintiffs

/s/ John Lee Diaz
John Lee Diaz, Esq.
801A Tremont Street
Boston, MA 02118
BBO #: 542819
Attorney for Jose Ortiz