UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| EUCLIDES SOTO, LOUIS A. MARTINEZ, ) | |
| JOSE RAMIREZ, CLEMENTE HERNANDEZ, ) | |
| CESAR PIZARO, ELISON PENA, ) | |
| JUAN COLON, JOSE ORTIZ, RAFAEL TORRES, ) | |
| ANGEL BAEZ, ANTONIO MARTINEZ, ) | |
| WILFREDO ORTIZ, EULOGIO ORTIZ, ) | |
| MIRRAIN MIRANDA, RAFAEL MORENO, ) | |
| NELSON ACEVEDO, and ) | |
| RAMON RODRIQUEZ, ) | |
| ) | Civil Action No. |
| plaintiffs, ) | 04-10892-JLT |
| ) | |
| v. ) | |
| ) | |
| UNITED STEELWORKERS OF AMERICA, ) | |
| LOCAL 421-U, and UNITED STEELWORKERS ) | |
| OF AMERICA, ) | |
| ) | |
| Defendants. ) | |

_____)

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' SUPPLEMENTARY
MOTION TO ATTACH ASSETS OF THE UNITED STEELWORKERS OF AMERICA**

***Introduction***

Defendants United Steelworkers, Local Union 421-U, and United Steelworkers,

AFL-CIO/CLC (collectively, the "Union") hereby submit this memorandum in support of

their opposition to Plaintiffs' Supplementary Motion to Attach Assets of the United

Steelworkers of America. As set forth below and as set forth more fully in the Union's

initial Memorandum in Support of Union Defendants' Opposition to Plaintiffs' Motion to

Attach, attached hereto as Exhibit 1 and made a part hereof, plaintiffs' motion is

procedurally insufficient and fails to meet plaintiffs' burden of establishing a reasonable

likelihood of recovering judgment in the requested amount and should therefore be denied.

### *Discussion*

Plaintiffs filed their original Motion to Attach Assets of the United Steelworkers of America and memorandum in support thereof in this matter on February 13, 2006.  In response, the Union filed a motion to strike the plaintiffs' motion together with an Opposition to the Plaintiffs' Motion to Attach, attached hereto as Exhibit 1.  The Court held a hearing on the plaintiffs' motion on March 2, 2006, in which the Court indicated its intention to grant the Union's motion to strike and deny the plaintiffs' motion for attachment.  The Court agreed to revisit the motion based on the representations of plaintiffs' counsel that the required affidavits were in the record of this case, and the Court agreed.  However, without seeking leave of the Court, the plaintiffs filed the pendent supplementary motion to attach.[1]

As with their initial motion to attach, the supplementary motion seeks to attach an astronomical amount, more than $78 million, including pension funds held by the United Steelworkers of America for the benefit of its currently retired and future retired members, sums which are specifically exempt from attachment under state and federal law.  As set forth below and in the Union's original Opposition to the Plaintiffs' Motion to Attach, see Exhibit 1, the request for an attachment must be denied because the plaintiffs cannot show that they have a likelihood of success on the merits and have made no showing that they have suffered any damages, let alone $78 million in damages.  The Court should therefore deny the plaintiffs' outrageous motion for a $78 million attachment.

---

[1] See the Union's Motion to Strike the Plaintiffs' Supplementary Motion to Attach, filed this date.

I.    **PLAINTIFFS' MOTION TO ATTACH DOES NOT CONTAIN ANY PROPER SUPPORT FOR THE REQUIRED FINDINGS OF REASONABLE LIKELIHOOD OF A JUDGMENT IN THE AMOUNT REQUESTED.**

    A.    **Plaintiffs' Failure to Submit Affidavits Precludes the Required Findings of a Reasonable Likelihood of Judgment in the Amount Requested.**

As set forth in the Union's original opposition, Exhibit 1, and the Union's initial Memorandum in Support of Union Defendants' Motion to Strike, attached as Exhibit A to Exhibit 1, plaintiffs' failure to submit supporting affidavits precludes any possibility of making the findings required for approval of a motion for attachment.  As noted in the previous filings, the affidavits referenced by the plaintiffs, which were not attached to their motion for attachment, fail to satisfy the requirements of Rule 4.1 requiring a party moving for attachment to establish (1) "that there is a reasonable likelihood that the plaintiff will recover judgment" and (2) that such judgment is reasonably likely to be "in an amount equal to or greater than the amount of the attachment." Rodriguez v. Montalvo, 337 F.Supp.2d 212, 215 (D. Mass. 2004) (citing Mass. R. Civ. P. 4.1(c)). Therefore, for the reasons asserted in the Union's opposition to the plaintiffs' initial attachment motion and in the Union's motions to strike both the initial and supplementary attachment motions, the plaintiffs' motion to attach must be denied.

    B.    **Plaintiffs Failure to Offer Substantiation or Support for the Facts Asserted Precludes the Required Finding of a Reasonable Likelihood of Judgment in the Amount Requested.**

As previously discussed, under Rule 4.1, the party seeking an attachment must "set forth with specificity the underlying facts in support of the attachment." Aetna Casualty and Surety Co. v. Rodco Autobody, 138 F.R.D. 238, 340 (D. Mass. 1991). However, the plaintiffs' Superceding Memorandum contains page after page of unsupported factual allegations with absolutely no citation to an affidavit or other record

evidence.  <u>See</u> Superceding Memo. at 2-9.  Indeed, all of the facts alleged in the Superceding Memorandum are drawn verbatim from the Second Amended Complaint filed on March 8, 2006, which the Defendants have yet to answer and most of which will be denied when the Union files its answer.[2]

Therefore, because the plaintiffs have failed to attach an affidavit setting forth the facts on which the motion is based or even to provide a citation to any affidavit or other record evidence for the facts asserted, the motion fails to establish the support necessary for an attachment.  The plaintiffs' motion must therefore be denied for the reasons asserted herein and those asserted in the earlier filings attached hereto and made a part hereof.

## II.    THE PLAINTIFFS CANNOT SHOW A REASONABLE LIKELIHOOD OF SUCCESS ON THEIR DISCRIMINATION CLAIMS

### A.    The Plaintiffs Title VII and Chapter 151B Claims are Mostly Time Barred, and There Has Been No Record Developed to Support the Newly Asserted Section 1981 Claims.

As thoroughly argued in the Union's opposition to the original attachment motion, most of the claims asserted by the plaintiffs in support of their motion for attachment are barred by the 300-day statute of limitations for federal Title VII and state Chapter 151B discrimination claims.  <u>See</u> Memo. in Support of Opp., Exhibit 1, at 14-15.  Although the plaintiffs continue their specious reliance on <u>Mercado v. Ritz Carleton San Juan Hotel</u>, 410 F.3d 41 (1st Cir. 2005), to establish some sort of equitable tolling, the holding in that case cannot and does not apply in the instant situation, since the Union did not have any obligation to post notices about the employees' rights and cannot be held

---

[2] The Answer to the Second Amended Complaint will be filed tomorrow in accordance with the Court's scheduling order.  In that Answer, the Union will deny nearly every allegation of fact put forward by the plaintiffs.

4

accountable for the employer's alleged failure to do so here.  Moreover, as argued at

the motion hearing, the Supreme Court's decision in National Railroad Passenger Corp.

v. Morgan, 536 U.S. 101 (2002), restricts the continuing violation theory in

discrimination cases such that only discrete acts of discrimination alleged to have

occurred within the 300-day limitations period are actionable.  Whether such acts might

be admissible as background evidence, which the Union strongly disputes in this case,

is immaterial to the Court's decision on the attachment motion, since the plaintiffs may

only seek judgment on alleged acts occurring within the limitations period.

While the Second Amended Complaint, for the first time on the eve of trial, raises

allegations arising under 42 U.S.C. § 1981, which could extend the statute of limitations

from 300 days to 3 years, the Union will be seeking to oppose the inclusion of those

allegations in this matter.[3]   However, even if such claims are properly asserted at this

extremely late stage of litigation, there has been absolutely no record developed on any

claims falling outside the 300-day statute of limitations for Title VII actions, since all

parties have been operating under that limitations period since the filing of this action.[4]

Moreover, since the plaintiffs have failed even to file a single affidavit supporting the

allegations occurring within the 300-day limitations period, they have in no way provided

any of the required showing to support attachment relating to any allegations falling

beyond the 300-day statute of limitations.

---

[3] Such opposition will be filed together with the Union's Answer to the Second Amended Complaint.

[4] The other claims in the original and First Amended Complaint were allegations that the Union violated its duty of fair representation, but those claims have an even shorter 6-month statute of limitations.

**B.    Notwithstanding the Statute of Limitations Issues, the Plaintiffs Have Utterly Failed to Produce Sufficient Evidence to Establish a Likelihood of Success on their Claims of Intentional Discrimination.**

**1.    Plaintiffs' Mere Verbatim Restatement of their Summary Judgment Opposition Does Not Come Close to Achieving the Much Higher Standard of Establishing a Reasonable Likelihood of Success on their Claims.**

As noted above, in order to qualify for an attachment order, the plaintiffs must establish a ***reasonable likelihood*** that they will recover judgment and that such judgment will be in the amount of the attachment.  See Rodriguez v. Montalvo, 337 F.Supp.2d at 215 (citing Mass. R. Civ. P. 4.1(c)).  Such a standard is much higher than the standard plaintiffs were required to meet in order to avoid summary judgment against them, as that standard merely required the plaintiffs to show, with all inferences in their favor, that there was some material issue of fact or law in controversy preventing the Court from granting judgment without further proceedings.  See, e.g., Fernandes v. Costa Brothers Masonry, Inc., 199 F.3d 572 (1st Cir. 1999).  However, in seeking to support their motion for attachment, the plaintiffs did not even attempt to satisfy the attachment standard in that they merely restated ***verbatim*** the arguments they used to support their opposition to the Union's summary judgment motion.

The plaintiffs arguments in support of their attachment motion correspond word-for-word to the arguments in the Plaintiffs' Opposition to the Union's Motion for Summary Judgment.  Compare Superceding Memo. at 19-22 with Pl. Opp. to Mot. for S.J. at 1-4, 40-64.  In fact, at several points in their attachment memorandum, the plaintiffs specifically apply the summary judgment standard to their arguments.  See, e.g., Superceding Memo. at 28 (discussing a First Circuit case applying a pretext analysis "at this stage in the summary judgment analysis"); Superceding Memo. at 38

(arguing that the plaintiffs established "a factual issue for trial" with regard to a statute of

limitations matter).  It is clear from these two excerpts that the plaintiffs have not even

attempted to tailor their earlier arguments to meet the very high attachment standard

and they have therefore failed to show that they have a reasonable likelihood of

success on their claims.  Therefore, for the reasons stated herein and in the Union's

earlier filings in opposition to the attachment motion, the Court must deny the plaintiffs'

motion.

> **2.      Even Putting Aside All of the Procedural Insufficiencies in the Plaintiffs' Filings, They Have Utterly Failed to Establish One Iota of Evidence Supporting Their Claims of Intentional Discrimination.**

Having now abandoned their duty of fair representation allegations in the Second

Amended Complaint, the only allegations remaining in this case allege that the Union

has intentionally discriminated against the plaintiffs because of their race or national

origin in violation of state and federal discrimination laws.[5]  In this regard, as noted in

previous filings, in order to establish a viable claim of discrimination, the plaintiffs must

show that the Union itself failed to take some required action because of the plaintiffs

race or national origin, not merely that the Union failed to take some action in the face of

the employer's discriminatory acts.

As Judge Posner has stated for the Seventh Circuit:

> The duties of nondiscrimination imposed by Section 703(a) and (c) have
> reference to the respective roles of company and union in the workplace.
> The company, not the union controls the workplace. . . .  The union is not
> the company, but the workers' agent in dealing with the company.  If it
> discriminates in the performance of its agency function, it violates Title VII,

---

[5] As noted above, supra text accompanying note 3, the Union will be opposing the inclusion of the section 1981 allegations in this case, but in any event, since the legal standards are the same in Title VII and section 1981 discrimination cases, this analysis applies with equal force to the section 1981 allegations. See, e.g., Goodman v. Lukens Steel Co., 482 U.S. 656 (1987).

but not otherwise. Thus, a union that refuses to accept blacks as
members, or refuses to press their grievances, is guilty of discrimination.
But if it merely fails to effectuate changes in the workplace – if, for
example, it urges the company to take steps to prevent harassment and
the company fails to do so – the union is not guilty of discrimination,
though the company is. . . .

Pipe Fitters Assoc., 334 F.3d at 659.

In Pipe Fitters Assoc., the Seventh Circuit went on to hold that while a union is

clearly liable for intentionally refusing to take action on behalf of a group of employees

because of their race or ethnic origin, mere passivity, that is not taking action to prevent

the employer from discriminating, does not rise to the level of actionable discrimination

against a union unless it can be proved that the union intentionally did not take such

action specifically because the employees involved were in a protected group. Id. at

658-659. The court held:

But inaction, unless invidious, is not discrimination in any accepted sense
of the term. People don't take active measures to combat discrimination,
their inaction does not condemn them as discriminators. Suppose that a
union is lackluster, and while it will file a grievance if pressed to do so by a
member of the collective bargaining unit, it will do nothing on its own
initiative. We do not understand how such passivity, though it means the
union will not take measures to prevent racial harassment on its own
initiative, could be thought to be a form of racial discrimination.

Id. at 660.

Thus, under the standard for union liability under Title VII, a plaintiff "must show

that there is evidence in the record that the union intentionally discriminated against her

because of her [ethnic origin]." Rainey v. Town of Warren, 80 F.Supp.2d 5, 14-15

(D.R.I. 2000). That burden may be satisfied by either producing direct or circumstantial

evidence which would prove intentional discrimination. Absent direct evidence of

intentional discrimination, plaintiffs must demonstrate that the Unions' asserted reasons

for not taking the action complained of in the complaint was a "pretext" and that the real reason was because of intentional discrimination.  Id. at 16-17.  The general rules for proving such intentional discrimination are the same for union liability as they are for establishing discrimination by employers.  At bottom, the plaintiffs must offer proof that the "defendant acted with the specific intent of discriminating against the plaintiff."  Barbour v. Dynamics Research Corp., 63 F.3d 32, 39 (1st Cir. 1995).

Of course, the plaintiffs cannot prevail simply by showing that the local union's decision was wrong or mistaken, since the disputed issue is whether plaintiffs' protected class status "motivated the local union, not whether it was wise or competent."  Rainey, 80 F.Supp.2d at 16; see also Villanueva v. Wellesley College, 930 F.2d 124, 131 (1st Cir. 1991).  While the question remains one of intentional conduct, the plaintiffs must prove that they were subjected to "disparate treatment" by the local in that it failed to process their grievances while, at the same time, processed the grievances of similar situated non-protected status members in the union.  Rainey, 80 F.Supp.2d at 14; see also Woodman v. Haemonetics Corp., 51 F.3d 1087, 1093 (1st Cir. 1995).

In the present case, as set forth fully in the Union's original opposition, Exhibit 1 at 18-25, the plaintiffs cannot satisfy their burden of demonstrating a reasonable likelihood of succeeding on any of the allegations that remain in their Second Amended Complaint.  As an initial matter, there is no evidence that the Union ever failed to file a grievance that had any contractual basis.  The only grievance the plaintiffs ever asked the Union to file was a grievance alleging disparate treatment by the employer based on the plaintiffs' race or national origin, see Second Amended Compl. ¶ 16; however, such a claim would be impossible to raise since **the entire workforce** at Farnsworth Fibre

was Hispanic and the Union therefore could not show any non-minority individuals who were treated any better or differently.  The plaintiffs similarly cannot show that the Union violated any specific duty it had with regard to negotiations, notice posting, or safety programs.  Finally, as set forth fully in the previous filings, there is absolutely no evidence that the Union treated these Hispanic members any differently than non-Hispanic members at other facilities that went out of business.  The Union's inability to secure severance benefits was a function of the employer's refusal to offer any such benefits during negotiations together with the Union's lack of bargaining power to achieve such an agreement.  The Union could not spin gold out of straw, and there is no evidence that the Union was able to spin gold for any other similarly situated non-Hispanic employees.

Therefore, based on the foregoing and on all of the arguments contained in the Union's previous opposition, the Court must deny the plaintiffs' motion for attachment.

### III.    PLAINTIFFS CANNOT SHOW A REASONABLE LIKELIHOOD OF ACHIEVING A JUDGMENT IN THE AMOUNTS INDICATED IN THE ATTACHMENT MOTION.

Although the plaintiffs again submit a summary of damages, the plaintiffs have again failed to file an affidavit supporting these calculations; therefore, for the reasons set forth supra part I(A), the plaintiffs' motion to attach must be denied as failing to comply with Rule 4.1.  Moreover, even had the plaintiffs satisfied those requirements and established a reasonable likelihood of success on the merits of their claims, for the reasons set forth in the previous opposition, Exhibit 1 at 25, 29-31, the plaintiffs have failed to establish a reasonable likelihood of recovering damages in amounts anywhere approaching those set forth in their motion for attachment.  Therefore, the motion for attachment must be denied.

WHEREFORE, for the reasons set forth above and in the attached Memorandum in Support of Union Defendants' Opposition to Plaintiffs' Motion to Attach, the Union respectfully requests that the Court deny Plaintiffs' Supplementary Motion to Attach Assets of the United Steelworkers of America.

Respectfully submitted,

Dated:  March 22, 2006

___/s/ Alfred Gordon_____
Harold L. Lichten, BBO # 549689
Alfred Gordon, BBO # 630456
PYLE, ROME, LICHTEN, EHRENBERG
    & LISS-RIORDAN, P.C.
18 Tremont St., Ste. 500
Boston, MA  02108
(617) 367-7200

Robert W. Alexander, Esq., *pro hac vice*
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W.
Washington, D.C. 20005-2207
(202) 842-2600

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by electronic filing on the attorney of record for each party on March 22, 2006.

___/s/ Alfred Gordon_____
Alfred Gordon