**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

| | |
|---|---|
| EUCLIDES SOTO, LOUIS A. MARTINEZ, JOSE RAMIREZ, CLEMENTE HERNANDEZ, CESAR PIZARO, ELISON PENA, JUAN COLON, JOSE ORTIZ, RAFAEL TORRES, ANGEL BAEZ, ANTONIO MARTINEZ, WILFREDO ORTIZ, EULOGIO ORTIZ, MIRRAIN MIRANDA, RAFAEL MORENO, NELSON ACEVEDO, and RAMON RODRIQUEZ, <br><br>            Plaintiffs, <br><br>v. <br><br>UNITED STEELWORKERS OF AMERICA, LOCAL 421-U, and UNITED STEELWORKERS OF AMERICA, <br><br>            Defendants. | Civil Action No. 04-10892-JLT |

_____

**MEMORANDUM IN SUPPORT OF UNION'S MOTION TO**
**STRIKE PORTIONS OF SECOND AMENDED COMPLAINT, OR,**
**IN THE ALTERNATIVE, FOR A CONTINUANCE TO ENGAGE IN**
**FURTHER DISCOVERY REGARDING NEWLY ASSERTED CLAIMS**

*Introduction*

Now come the Defendants United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, Local Union 421-U (the Local) and United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC (the International) (collectively, the Union) and hereby file this memorandum in support of their motion to strike portions of the Second Amended Complaint or, in the alternative, for a continuance to engage in further discovery regarding newly asserted claims.

On May 5, 2004, the Plaintiffs filed their original complaint in this matter against their former employer, Farnsworth Fibre Corp. and Sherman-Feinberg Corp. (the Employer), and Local 421-U of the United Steelworkers alleging that the Local violated its duty of fair representation toward the Plaintiffs. See Complaint, attached hereto as Exhibit 1. Thereafter, on January 25, 2005, the Plaintiffs filed a motion to amend the complaint together with the First Amended Complaint in this matter, adding the International Union as a defendant and adding claims that the Union engaged in intentional discrimination against the plaintiffs in violation of Title VII of the federal Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Chapter 151B of the Massachusetts General Laws. See First Amended Complaint, attached hereto as Exhibit 2.

Thereafter the parties engaged in several months of discovery, during which time the Union deposed all of the plaintiffs with regard to matters occurring within the 300-day statute of limitations for Title VII and Chapter 151B matters and within the six-month statute of limitations for duty of fair representation actions. See Plaintiff Deposition Transcripts, attached to Affidavit of Robert O. Berger filed on September 1, 2005 (not reproduced here because of their volume).

On March 2, 2006, during the scheduled final pretrial conference, the plaintiffs stated their intent to amend their complaint to withdraw the duty of fair representation allegations and drop the Employer as a defendant. See Transcript at 9-11, attached hereto as Exhibit 3. The exchange with the Court was as follows:

> **MR. BERGER:**  . . . . [W]e are seriously contemplating dropping the whole DFR scenario to simplify – [Attorney Diaz] and I reached each other last night to talk about that -- and make this -- where we are now -- and this is one of the things I wanted to tell you about.

2

>       Where we are now is I think that the case is
> going to be strictly discrimination law and strictly
> 151(b), drop the DFR. That gets the employer out
> without any worries.
>
>       We don't have to think about that one.
>
>       And it will simplify -- and then we don't have
> what would be very confusing to the jury, two windows
> on the statute of limitations, three hundred days and
> one hundred eighty days. I don't know how they're not
> going to get confused with that.
>
>       **THE COURT:** Well, let me ask you this: Does it
> make sense for you to recast your complaint then?
>
>       **MR. BERGER:** Well, you know, that's -- what I am
> trying to say then is that I'm willing at this point
> to waive the DFR.
>
>       **THE COURT:** No, I understand that, and that would
> be helpful. Do you think that what we ought to do is
> to work from a new piece of paper?
>
>       **MR. BERGER:** Absolutely. I'd be glad to do that.
>
>       **THE COURT:** You come up with an amended complaint
> –
>
>       **MR. BERGER:** Absolutely.
>
>       **THE COURT:** -- of those claims that you are
> pressing. The others we will deemed to have been
> waived without prejudiced.
>
>       **MR. BERGER:** I think that would save a lot of
> time.
>
>       And can I get back to the motion?
>
>       **THE COURT:** Wait a minute.
>
>       Do you agree with that?
>
>       **MR. LICHTEN:** I have no problem with that.

Id.  As this exchange makes clear, the plaintiffs apprised the Court of their desire to withdraw the duty of fair representation allegations and to drop the Employer as a defendant, but the plaintiffs made no request during this proceeding to amend their

3

complaint to add new facts or new legal claims.  Id.  The Court gave the plaintiffs one week (until March 9, 2006) to file their amended complaint and gave the Union two weeks (until March 23, 2006) to respond to the amended complaint.

Thereafter, within the time limits set by the Court, the plaintiffs filed their Second Amended Complaint, attached hereto as Exhibit 4.  The plaintiffs filed the Second Amended Complaint without filing a motion seeking leave of the Court to add new factual allegations or legal claims not discussed during the pretrial conference.

The Second Amended Complaint for the first time alleges, *inter alia*, that the Union failed to invite plaintiffs to Union meetings, ¶ 11; that the Union failed to arbitrate any grievance in the last 25 years, ¶ 12; that the Union refused to take the plaintiffs' phone calls, ¶ 17; and that the Union failed to post some required notices at the Employer's plant, ¶ 29.  In addition to these new allegations, the plaintiffs greatly expanded the original allegations from their First Amended Complaint such that the 5-page First Amended Complaint actually grew into an 11-page Second Amended Complaint at a time when the plaintiffs were supposed to be **withdrawing** claims.  Furthermore, the Second Amended Complaint for the first time alleges that the Union in some way violated the plaintiffs' civil rights pursuant to 42 U.S.C. § 1981.

At no time prior to the filing of the Second Amended Complaint did the plaintiffs seek leave to add either these new factual allegations or this new legal claim.

*Discussion*

I. **THE COURT MUST STRIKE THE NEW FACTUAL ALLEGATIONS AND LEGAL CLAIM IN THE SECOND AMENDED COMPLAINT BECAUSE THE PLAINTIFFS FAILED TO PROPERLY SEEK LEAVE TO FILE SUCH NEW ALLEGATIONS AND CLAIM AND BECAUSE IT WOULD CAUSE UNDUE PREJUDICE TO THE UNION TO ALLOW SUCH AMENDMENT ON THE EVE OF TRIAL.**

   A. **The Plaintiffs Failed to Seek Leave of the Court to File the Proposed Amendments, so the Court Must Strike Those Claims as Improperly Asserted.**

Rule 15(a) of the Federal Rules of Civil Procedure specifically states that, after responsive pleadings have been filed, a party must seek leave of the Court in order to amend its pleadings. Fed. R. Civ. P. Rule 15. See Tavares v. U.S., 230 F. Supp. 2d 126, 134 (D. Mass. 2001) ("After service of a responsive pleading, Rule 15(a) requires leave of court to amend a [pleading]."); Span East Airlines, Inc. v. Digital Equipment Corp., 486 F. Supp. 831, 835 (D. Mass. 1980). This Court has held that it will not address new causes of action that have been pleaded without leave of court. Santana v. Deluxe Corp., 12 F. Supp. 2d 162, 179 n. 3 (D. Mass. 1998) (refusing to address new causes of action raised in a summary judgment motion because the plaintiffs did not seek leave of court to plead them in accordance with Rule 15(a)).

Here, after the plaintiffs indicated their desire to withdraw the duty of fair representation claims and remove the Employer as a party, the Court specifically suggested that the plaintiffs amend their complaint to reflect these changes and gave them permission to do so. The plaintiffs *did not* request, and the Court *did not* grant, permission for the plaintiffs to add significant new factual allegations or to add an additional legal claim that was not included in the original or First Amended Complaint. However, this is precisely what the plaintiffs have done. The plaintiffs' Second

5

Amended Complaint for the first time adds specific allegations regarding facts known to the plaintiffs at the time of the original filing and adds a civil rights claim under 42 U.S.C. § 1981, which the plaintiffs, through counsel, could have asserted in the First Amended Complaint.

Since the plaintiffs plainly failed to seek leave of the Court to amend their complaint in this fashion, the Court should strike the new factual and legal allegations from the Second Amended Complaint as improperly asserted.

### B. The Plaintiffs Cannot Show Good Cause to Amend Their Complaint, and the Proposed Amendments Would Prejudice the Union, are Sought After Undue Delay, and Would Be Wasteful of the Court's Time and Resources.

While Rule 15(a) specifically states that "leave [to amend pleadings] shall be freely given when justice so requires," this "pro-amendment orientation" is not the proper rule to apply in this circumstance. O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 154 (1st Cir. 2004). Rather, "[a]s a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). In this regard, the First Circuit has held that a plaintiff seeking to amend a complaint after the time for amending the pleadings set forth in the Rule 16(b) scheduling order has passed must show "good cause" to amend his or her complaint. Fed. R. Civ. P. Rule 16(b); see Steir, 383 F.3d at 12; O'Connell, 357 F.3d at 154-155; see also Berwind Property Group Inc. v. Environmental Mgmt. Group Inc., 233 F.R.D. 62, 66-67 (D. Mass. 2005) (applying the '"good cause" standard to amendments proposed after the Court has entered a scheduling order).

6

In this matter, the time for amending pleadings has long since passed, and the time for discovery is long over. Therefore, the Court should apply the "good cause" standard to the plaintiffs' attempt to amend their complaint and, for the reasons set forth below, deny such attempt. Moreover, even should the Court apply the more lenient standard of Rule 15(a), as will be shown below, the Court must still exercise its discretion to deny the plaintiffs' attempt to amend the complaint beyond the parameters specifically allowed by the Court during the pretrial conference.

    **1.    The Plaintiffs Have Not Shown and Cannot Show Good Cause to Amend Their Complaint by Adding New Factual Allegations and Legal Claims.**

As noted above, the First Circuit requires a plaintiff to show good cause, pursuant to Rule 16(b), to amend the complaint at this point in the proceedings. See O'Connell, 357 F.3d at 154-155. Here, because the plaintiffs have failed even to seek leave of the Court to add the newly asserted factual allegations and legal claim, they have not even attempted to show such good cause. The only reason the plaintiffs have asserted for amending the complaint at this time is to conform the pleadings to the their desire to withdraw certain allegations and exclude the Employer as a defendant. At no time, either during the pretrial conference or in any papers filed with the Court, have the plaintiffs asserted any reason for adding new allegations and claims; therefore, the Court should strike the new factual allegations and section 1981 claim from the Second Amended Complaint.

Putting aside the fact that the plaintiffs failed to actually assert any reason for adding new allegations and claims, neither could the plaintiffs possibly assert such a reason that would satisfy the good cause standard. The plaintiffs were plainly aware of their ability to amend the pleadings and the avenue for doing so, since they amended

7

the complaint by motion once before in this proceeding.  Moreover, there is nothing about the new factual allegations or new legal claim that the plaintiffs did not know when they filed their Title VII allegations in January 2005.  The new factual assertions are purportedly based on the plaintiffs' own knowledge, and their able counsel was most certainly aware of the existence of section 1981 as a possible legal claim at the time of the First Amended Complaint.

For these reasons, the plaintiffs have not and cannot show good cause for the Court to allow an amendment to the complaint that would add new factual allegations and the newly asserted section 1981 claim.

### 2. The Proposed Amendments Would Prejudice the Union, are Sought After Undue Delay, and Would Be Wasteful of the Court's Time and Resources and Thus Should Not Be Allowed.

Even under the more lenient "freely given" leave standard of Rule 15(b), a plaintiff is not automatically entitled to amend his or her complaint at any time, and these plaintiffs are certainly not entitled to the amendments they are seeking.

In ruling on requests to amend pleadings, courts must consider factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962), cited in Marsman v. Western Electric Co., 719 F. Supp. 1128, 1142 (D. Mass. 1988); see also Hatch v. Dept. for Children, Youth and Families, 274 F.3d 12, 19 (1st Cir. 2001).  Other factors courts consider include judicial economy, the court's ability to manage the case, and whether the moving party has previously amended the pleading or had the opportunity to do so.  Moore's Federal Practice 15.15[1], at 15-42.1 (3d ed. 2005); see also Little v. Liquid Air Corp., 952 F.2d

8

841, 846 (5th Cir. 1992), aff'd 37 F.3d 1069 (1994) (court could not manage the case if leave to amend was granted because it would establish a new factual basis for claim, and the delay would be excessive); Perrian v. O'Grady, 958 F.2d 192, 195 (7th Cir. 1992) (factors justifying denial of leave include prejudice to the judicial system and the public's interest in prompt resolution of disputes); DCD Programs, Ltd. V. Leighton, 833 F.2d 182, 186 n. 3 (9th Cir. 1987) (court has especially broad discretion when plaintiff has already been given opportunity to amend).

In this case, the Court should strike Plaintiffs' proposed amendments because they would clearly prejudice the union, are sought after undue delay, and would be wasteful of the Court's time and resources.

### a.   The Proposed Amendments, Coming After Such Undue Delay, Would Prejudice the Union.

Plaintiffs' proposed amendments would unduly prejudice the Union because this case is so far along, with discovery completed and a trial that was supposed to be already underway but is now being briefly held in abeyance.

Prejudice to the nonmoving party is one of the key factors courts consider when deciding whether to grant leave to amend. Moore's Federal Practice 15.15[2], at 15-43 (3d ed. 2005); see also Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330-31 (1971) (court must consider prejudice to nonmoving party that would result from allowing amendment) (citing Moore's). First Circuit precedent clearly holds that amendments to a complaint cause undue prejudice and must therefore be denied when they are raised too close to trial to allow the opposing party sufficient opportunity to respond. See Executive Leasing Corp., 48 F.3d 66, 71 (1st Cir. 1995) quoting Rodriguez v. Banco Central Corp., 990 F.2d 7, 14 (1st Cir. 1993) ("[t]he further along a

9

case is toward trial, the greater the threat of prejudice and delay"); see also Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 71 (1st Cir. 1995) (affirming denial of amendment after extensive litigation "and a prior amendment of the complaint, and with the trial less than three months away"); Wolf v. Reliance Standard Life Ins. Co., 71 F.3d 444, 450 (1st Cir. 1995) (affirming denial of amendment where party attempted to amend "five days before trial").  In this case, Plaintiffs' proposed amendments clearly prejudice the Union because permitting them would require the Union to develop defenses and responses without the benefit of discovery and on the eve of trial.[1]

The plaintiffs' proposed amendments prejudice the Union here not only because they are raised so close to trial, but also because they essentially constitute an attempt to bring a case with a new standard of recovery and a greatly extended statute of limitations.  See, e.g., Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998) (finding prejudice where proposed amendment raised new factual and legal issues, which would require additional discovery).  The Supreme Court long ago recognized the distinction between Title VII and section 1981 claims and the very different kinds and amounts of remedies plaintiffs can recover under the two statutes, Johnson v. Railway Express Agency, Inc., 421 U.S. 454 (1975), and the plaintiffs' attempt to amend their

---

[1] As discussed below, infra part II, if the Court permits Plaintiffs' untimely proposed amendments, the Union must be permitted to reopen discovery in order to defend against and respond to plaintiffs' newly asserted factual allegations and any previously asserted allegations that fell outside of the Title VII statute of limitations but might fall within the section 1981 limitations period.

complaint to add a section 1981 claim at this time subjects the Union to a much different case than under the First Amended Complaint.[2]

Moreover, and of great importance in this case, the differing statutes of limitations under Title VII and section 1981 create a huge pitfall for the defendant Union. See 42 U.S.C. § 2000e-5(e)(1) (establishing 300-day statute of limitations under Title VII in which to file with the appropriate administrative agency); Johnson v. Rodriguez, 943 F.2d 104, 107 (1st Cir.1991) (setting three-year statute of limitations for § 1981 claims as borrowed from state personal injury limitations period). The Union has defended against the discrimination claims under Title VII with the assumption that all allegations occurring beyond the 300-day statute of limitations were time-barred.[3] To change the relevant statute of limitations to a three-year period would unjustly prejudice the Union, which has not engaged in any thorough discovery relating to claims occurring prior to the 300-day limitations period. Allowing the plaintiffs to add a section 1981 claim at this time would force the Union to seek to re-depose every plaintiff regarding their allegations that occurred during the newly enlarged limitations period, which would be unduly burdensome and prejudicial at this stage of the proceedings when the Union is preparing for trial.[4] See Bleiler v. Cristwood Contracting Co., Inc., 868 F. Supp, 461,

---

[2]   Though Title VII's damages provisions were modified pursuant to the Civil Rights Act of 1991, the cap on compensatory damages under Title VII is not applicable to section 1981, which has no statutory cap on damages. See Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 851 (2001).

[3]   In the present case, some of the plaintiffs filed charges of discrimination against the union on May 7, 2004, and others filed claims on June 4, 2004. Thus, any allegations prior to July 11, 2003 are barred by the 300-day statute of limitations.

[4]   This argument presumes that the section 1981 claims, if allowed to be added at this late stage of the proceedings, would relate back to the filing of the Title VII allegations in the First Amended Complaint in January 2005. Although the Union does not necessarily concede that the section 1981 allegations would relate back to the Title VII allegations, such an outcome is certainly possible under Rule 15(c), which allows relation back of an amendment when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading." Fed.

463 (D. Conn. 1994) ("Prejudice may exist if extensive additional discovery would be required . . . .").

For these reasons, plaintiffs' proposed amendments would be severely prejudicial to the Union, and the Court must therefore strike these untimely amendments that were asserted without leave of the Court.

### b. Plaintiffs' Proposed Amendments Would Be Wasteful of the Court's Time and Resources.

Allowing plaintiffs' proposed amendments would also be wasteful of the Court's time and resources. See Reisner v. Gen. Motors Corp., 511 F.Supp. 1167, 1172 (S.D.N.Y. 1981), aff'd 671 F.2d 91 (2d Cir. 1982), cert. denied, 459 U.S. 858 (1982) (holding that a Court is justified in denying request to amend where amendment would be prejudicial to defendants and wasteful of Court's and attorneys' time).  Since, as discussed above, plaintiffs' proposed amendments allege new facts and legal theories that would significantly change the nature of the case and require a new discovery period, considerations of judicial economy, prejudice to the legal system, and the public's interest in prompt resolution of legal disputes all weigh in favor of granting the Union's motion to strike the Plaintiffs' untimely proposed amendments.  See id.; Assam v. Deer Park Spring Water, Inc., 163 F.R.D. 400, 404 (E.D.N.Y. 1995) ("When permitting the amendment would require extensive preparation and consume extensive amounts of trial time to the detriment of a speedy resolution of the case, the amendment should be denied."). See also Moore's Federal Practice 15.15[1], at 15-42.1; Little v. Liquid Air,

---

R. Civ. P. 15(c). See also Sessions v. Rusk State Hospital, 684 F.2d 1066 (5th Cir. 1981) (holding that Title VII and section 1981 claims relate back to each other).

952 F.2d at 846; Perrian v. O'Grady, 958 F.2d at 195; DCD Programs, 833 F.2d at 186 n. 3.

For these reasons, in the interest of judicial economy and the prompt resolution of this dispute, the Court should strike the newly asserted facts and claims that were asserted without leave of the Court.

**II. SHOULD THE COURT DETERMINE THAT THE NEWLY ASSERTED FACTS AND CLAIM ARE PROPERLY ASSERTED IN THE SECOND AMENDED COMPLAINT, THE COURT MUST CONTINUE THIS MATTER AND REOPEN DISCOVERY TO AVOID UNDUE PREJUDICE TO THE DEFENDANT UNION.**

Allowing the amendments to this case would open up the possibility of a longer statute of limitations, which would enlarge the limitations period and increase the potential number of allegations the Union would be required to defend against. In that event, the Union would need to seek discovery relating to any acts alleged to have occurred within the newly enlarged limitations period. See, e.g., Steir, 383 F.3d at 12-13 (holding that to delve into new claims providing for potentially greater damages against the defendant on the eve of trial "would have required the re-opening of discovery"); see also Zurn Constructors, Inc. v. B.F. Goodrich Co., 746 F. Supp. 1051, 1055 (D. Kan. 1990) ("[T]he court agrees with defendant that allowing the amendment would necessitate additional discovery.").

As noted above, the addition of a section 1981 claim would lead to a longer limitations period. Should the Court allow the relation back of the section 1981 claims to the filing of the Title VII claims in federal court, see supra note 4, the Union would be forced to defend its conduct going all the way back to January 2002 – three years before the filing of the First Amended Complaint – instead of the current limitations period covering allegations occurring on or after July 11, 2003. However, even if the

13

Court does not allow relation back of the new claims, the newly filed section 1981 claims would still increase the limitations period by more than five months, back to February 2003.  In either event, but particularly if the section 1981 claims do relate back to the First Amended Complaint, the Union would now need to engage in discovery relating to allegations occurring prior to July 11, 2003, which the Union has all but ignored up until now.

     To allow the new claims to be asserted without reopening the discovery period would unduly prejudice the Union's right to defend itself against these spurious allegations of intentional discrimination.  For this reason, should the Court allow the plaintiffs to add new factual allegations and legal claims at this late date, the Court must further continue this already lengthy proceeding to allow for additional discovery, including the possible re-deposition of all of the plaintiffs.

*Conclusion*

For the reasons asserted herein, the Union respectfully requests that the Court grant its motion and strike those portions of the Second Amended Complaint improperly included or, in the alternative, that the Court continue this matter and reopen the discovery period to allow the Union to engage in discovery related to the newly asserted claims.

Respectfully submitted,

Dated:  March 23, 2006

___s/Alfred Gordon_____
Harold L. Lichten, BBO # 549689
Alfred Gordon, BBO # 630456
PYLE, ROME, LICHTEN, EHRENBERG
    & LISS-RIORDAN, P.C.
18 Tremont St., Ste. 500
Boston, MA  02108
(617) 367-7200

Robert Alexander, *pro hac vice*
BREDHOFF & KAISER, P.L.L.C.
805 Fifteenth Street, N.W.
Washington, D.C. 20005-2207
(202) 842-2600

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served by electronic filing on the attorneys of record for each party on March 23, 2006, and by U.S. Mail on those who cannot receive electronic filings.

___s/Alfred Gordon_____
Alfred Gordon