1                           UNITED STATES DISTRICT COURT
                              DISTRICT OF MASSACHUSETTS
2

3     EUCLIDES SOTO, et al                    *
                  Plaintiffs,                  *
4                                              *
                  vs.                          *         CIVIL ACTION
5                                              *         No. 04-10892-JLT
      SHERMAN-FEINBERG                         *
6     CORPORATION, et al                       *

7                 Defendants.                  *

8                     BEFORE THE HONOR-ABLE JOSEPH L. TAURO
                        UNITED STATES DISTRICT JUDGE
9                       **FINAL PRETRIAL CONFERENCE**

10    A P P E A R A N C E S

11                    LAW OFFICE OF ROBERT O. BERGER, 11I
                      11 Beacon Street, Suite 1210
12                    Boston, Massachusetts 02108
                      for the plaintiffs
13                    By: Robert O. Berger, 11I, Esq.

14

                      LAW OFFICE OF JOHN LEE DIAZ
15                    801A Tremont Street
                      Boston, Massachusetts 02108
16                    for the plaintiffs
                      By:    John Lee Diaz, Esq.
17

18

19
                                    Courtroom No. 20
20                                  John J. Moakley Courthouse
                                    1 Courthouse Way
21                                  Boston, Massachusetts 02210
                                    March 2, 2006
22                                  10:25 a.m.

23

24

25

1     **APPEARANCES, CONTINIUED**

2

3
                    PYLE, ROME, LICHTEN, EHRENBERG & LISS-RIORDAN, P.C.
4                   18 Tremont Street, Suite 500
                    Boston, Massachusetts 02108
5                   for the defendants
                    By: Harold L. Lichten, Esq.
6

7

8

9
                    DUANE MORRIS LLP
10                  470 Atlantic Avenue, Suite 500
                    Boston, Massachusetts 02110-2600
11                  for the defendants
                    By: Matthew R. Roberts, Esq.
12

13

14

15

16

17

18

19

20

21

22                  CAROL LYNN SCOTT, CSR, R-MR
                    Official Court Reporter
23                  One Courthouse Way, Suite 7204
                    Boston, Massachusetts 02210
24                  (617) 330-1377

25

<u>**PROCEEDINGS**</u>

1

2          **THE CLERK:** Civil Action No. 04-10892,

3     Euclides Soto versus Sherman-Feinberg. Counsel please come

4     forward and identify themselves for the record.

5               (Whereupon, the Court and the Clerk conferred.)

6          **THE COURT:** Sit down. Let me catch up with

7     you.

8               (Pause in proceedings.)

9          **THE COURT:** Let me start off by saying I am

10    going to deny the motion to attach and allow the motion to

11    strike the request for attachment. I also am going to deny

12    the motion to appoint a translator. This is a civil case.

13    As I understand it, you have to pay for your own translator.

14          **MR. BERGER:** Your Honor, with respect to the

15    translator, we will be paying for it. But the question is

16    the Court has to help us select the translator as I

17    understand it. And I understand Zita has a number of --

18          **THE COURT:** Well, if we can accommodate you,

19    we certainly will. You can take care of that, Zita?

20          **THE CLERK:** Yes, Judge.

21          **THE COURT:** Okay. So we will deny the motion

22    to appoint one but we certainly will do what we can to

23    facilitate the appointment.

24               So those two motions are denied: Motion to appoint

25    a translator and a motion to appoint one at the cost of the

1    government.

2                    Now, are you going to just have one translator that

3    all the parties are going to share; is that it?

4                    **MR. DIAZ:** Yes, Your Honor.

5                    **THE COURT:** I hear the front table saying yes.

6    What about the back table?

7                    **MR. LICHTEN:** We have no objection to that,

8    Your Honor.

9                    **THE COURT:** So you are going to pay for half,

10   you are going to pay for whatever the cost is?

11                   **MR. LICHTEN:** We are not seeking appointment

12   of a translator so -- yes, we will pay for half. That's

13   fine, Your Honor. That's fine.

14                   **THE COURT:** Otherwise, are you going not to

15   listen to the translator --

16                   **MR. LICHTEN:** I understand the point. If we

17   cross-examine, we want to get -- I understand so we will pay

18   for half.

19                   **THE COURT:** So whatever the bill is, it will

20   be split fifty/fifty and that will be split between the

21   plaintiffs and the defendants.

22                   **MR. DIAZ:** Yes, Your Honor.

23                   **MR. LICHTEN:** Your Honor, there is another

24   party that is here today, the attorney for Farnsworth Fibre

25   is here so half and half (indicating). There is a third

1    party in this case. He is present. .They are represented

2    here today.

3              **THE COURT:** So how do you want to handle it?

4    Do you think that I can leave it up to you people to see

5    whether you split it three ways or two ways and you divide

6    your two ways any way you want?

7              **MR. LICHTEN:** Absolutely.

8              **THE COURT:** All right.

9              **THE CLERK:** Would you identify yourself for

10   the record?

11             **MR. ROBERTS:** Matthew Roberts, for Farnsworth

12   Fibre Corporation.

13             **THE COURT:** You understand you are going to

14   participate in the payment of this fee for the translator?

15             **MR. ROBERTS:** I understand I'm going to speak

16   to counsel to work that out, yes, Your Honor.

17             **THE COURT:** Okay.

18        (Pause in proceedings.)

19             **THE COURT:** I am going to deny without

20   prejudice the union defendant's claim that punitive damages

21   are unavailable in this case, either on the fair

22   representation claim or the other theory. When I say

23   "without prejudice," without prejudice to it being raised at

24   the conclusion of the plaintiffs' case.

25             In other words, it may be that the defendants will

1    have a motion for a directed verdict. If I don't think the

2    evidence in its totality warrants submission to the jury of

3    any issue on emotional distress, then I am not going to -- I

4    will direct the verdict.

5              Now, having said that, do you want to be heard on

6    that?

7              **MR. LICHTEN:** Very briefly, from the

8    defendants' point of view, Your Honor, because of the

9    Supreme Court's decision in the Foust case which holds

10   squarely -- and I don't think it's subject to dispute --

11   that punitive damages simply are unavailable to a plaintiff

12   in a DFR claim, I would respectfully disagree with the

13    Court's --

14              **THE COURT:** Yes, I will allow it with respect

15    to -- you are right. As far as your duty of fair

16    representation, that is what you are saying to me?

17              **MR. LICHTEN:** Yes, that's correct.

18              **THE COURT:** But I am going to deny without

19   prejudice the motion to the extent that the union seeks to

20   exclude emotional distress and front pay damages arising

21   from the union defendant's actions, that we will reserve

22   until after the conclusion of the plaintiffs' evidence and

23   see whether or not it all adds up to something that ought to

24   go to the jury.

25              **MR. LICHTEN:** Thank you.

1          **THE COURT:** Okay.

2               In other words, we will see if there is evidence of

3     extreme misconduct as an example. If there is not, then

4     under First Circuit law the -- do you want to be heard

5     further? I mean, as I understand, you can't -- the claim

6     for extreme misconduct can't be anything that really arises

7     from the employer's decision to shut down the plant. Where

8     is the evidence of extreme misconduct that is going to be

9     here in this case?

10          **MR. BERGER:** Your Honor, there were various

11    fires that they were aware of, smashed cans. They knew that

12    the fires were burning at the time that they were in the

13    plant in November 2003.

14               There was extreme misconduct in connection with a

15    wide variety of failures to follow-up with the union

16    membership, inviting them to meetings, failing to post

17    notices, no bulletin board and those kinds of items.

18               Your Honor, the --

19          **THE COURT:** But those are allegations of the

20    employer misconduct, aren't they, as opposed to any action

21    taken by the union itself to harm --

22          **MR. BERGER:** Well, the union in our position

23    was on notice about those things. And under the standards

24    that were set forth by the Kolstad versus American Dental

25    Association, those would be covered under Title V11. And

1     all that needs to be shown under <u>Kolstad,</u> which was a

2     departure, is that there was acting with malice or reckless

3     or careless indifference to their rights --

4                    **THE COURT:** All right. So we will face that

5     issue again at the conclusion of the plaintiffs' case. So I

6     am going to deny the motion without prejudice as I indicated

7     that I will.

8                    **MR. BERGER:** Thank you, Your Honor.

9               Your Honor, can I just query the record on one

10    thing?   On the motion for the attachment, I believe --

11                   **THE COURT:** Can you wait just one second?

12                   **MR. BERGER:** Sure.

13                   **THE COURT:** I will listen to you.  I just want

14    to finish reading what I am reading.

15                   (Pause in proceedings.)

16                   **THE COURT:** What is the story on the motion to

17    exclude evidence occurring beyond the statute of

18    limitations?

19                   **MR. BERGER:** That's very clearly resolved by

20    the U.S. Supreme Court, Your Honor. Let me read you the

21    specific language --

22                   **THE COURT:** But the defendants haven't opposed

23    this motion?

24                   **MR. BERGER:** Yes, they did, Your Honor.

25                   **THE COURT:** Okay. Then I missed it. Go

1     ahead.

2              **MR. BERGER:** The <u>National Railroad versus</u>

3     <u>Morgan,</u> 536 U.S. 101, Page 118, the Supreme Court

4     specifically said, Nor does the statute of limitations bar

5     an employee from using the prior acts as background evidence

6     in support of a timely claim.

7              They specifically dealt with the problem. And

8     that --

9              **THE COURT:** What do you say about that?

10              **MR. LICHTEN:** Your Honor, <u>National Railroad</u>

11     <u>versus Morgan</u> -- I haven't seen their document -- has

12     nothing to do with the DFR claim. That's a discrimination

13     claim.

14              Your question related to the DFR claim. There is

15     no tolling exception known to law to the <u>DelCostello</u>

16     decision in the U.S. Supreme Court that says any acts

17     occurring before six months filing in federal court is time

18     barred.

19              The case that he's referring to is a case involving

20     discrimination under Title V11. With respect to that issue,

21     Your Honor, it doesn't relate to the DFR claim.

22              **MR. BERGER:** He's right on that. The DFR,

23     there is a window. And we are seriously contemplating

24     dropping the whole DFR scenario to simplify -- John and I

25     reached each other last night to talk about that -- and make

1     this -- where we are now -- and this is one of the things I

2     wanted to tell you about.

3              Where we are now is I think that the case is going

4     to be strictly discrimination law and strictly 151(b), drop

5     the DFR. That gets the employer out without any worries.

6     We don't have to think about that one.

7              And it will simplify -- and then we don't have what

8     would be very confusing to the jury, two windows on the

9     statute of limitations, three hundred days and one hundred

10    eighty days. I don't know how they're not going to get

11    confused with that.

12              **THE COURT:** Well, let me ask you this: Does

13    it make sense for you to recast your complaint then?

14              **MR. BERGER:** Well, you know, that's -- what I

15    am trying to say then is that I'm willing at this point to

16    waive the DFR.

17              **THE COURT:** No, I understand that, and that

18    would be helpful. Do you think that what we ought to do is

19    to work from a new piece of paper?

20              **MR. BERGER:** Absolutely. I'd be glad to do

21    that.

22              **THE COURT:** You come up with an amended

23    complaint --

24              **MR. BERGER:** Absolutely.

25              **THE COURT:** -- of those claims that you are

1    pressing. The others we will deemed to have been waived

2    without prejudiced.

3                 **MR. BERGER:** I think that would save a lot of

4    time.

5                 And can I get back to the motion?

6                 **THE COURT:** Wait a minute.

7                 Do you agree with that?

8                 MR. LICETEN: I have no problem with that. I

9    was going to further address your question about the prior

10   acts and the statute of limitations with respect to the

11   discrimination claim but I will wait until --

12                **THE COURT:** All right. Okay. So how much

13   time do you need to do that?

14                **MR. BERGER:** I can do that in a couple days,

15   Your Honor.       Early next week, Tuesday.

16                **THE COURT:** All right. So let's say a week

17   from today.

18                **MR. BERGER:** That's fine.

19                (Pause in proceedings.)

20                **THE COURT:** Now, you want to be heard further

21   on the statute of limitations?

22                **MR. LICHTEN:** Yes. With respect to the

23   discrimination claim, the United States Supreme Court's

24   decision in Morgan is very important. What it says is with

25   respect to a harassment claim, which this is not, there you

1      can go back and use a continuing violation theory. You

2      cannot use a continuing violation theory on a discrimination

3      case, which this is.

4              They do that and say at the end, However, if you

5      have discrete acts of discrimination occurring outside the

6      statute of limitations, they're admissible to show

7      discriminatory conduct. They're not admissible for the

8      purpose of showing liability and establishing damages.

9              The law is very clear on that.

10             Now, in this case what --

11             **THE COURT:** Do you agree with that?

12             **MR. BERGER:** Yes, I agree with that. However,

13     I do want to say that state courts have taken the opposite

14     direction in Ocean Spray Cranberries, Inc. versus MCAD, 441

15     Mass. 632, 686 N.E., 2d 1303 (2004). So the 151(b) is the

16     opposite of that.  They wholeheartedly endorse a continuing

17     violation theory.

18             So we've got a real divergence.

19             **MR. LICHTEN:** Well, I disagree with that

20     because I don't think the SJC has ever addressed directly --

21     they have held a continuing violation theory applies in

22     Cuddyer which is a harassment claim. And they have held it

23     applies in a retaliation claim. But they have never held

24     that it applies strictly in a discrimination claim.

25             So I think that's a, at the very least an open

1    question under state law. We think the state law tends to

2    preempt it in any event.

3         What I wanted to say though to go to the heart of

4    this matter though, it would be one thing if they wanted to

5    bring into evidence prior to the 300-day statute of

6    limitations evidence that the union official came down and

7    said I'm not going to deal with you people, you're all

8    Hispanic or something, if it was a discrete act of

9    discrimination, or we're not going to take those grievances

10   to arbitration because, you know, we don't think you really

11   deserve it, something like that. They're not alleging

12   anything like that.

13        They're saying that these acts of alleged

14   discrimination that occurred before it are there were fires

15   three years ago. Someone got their hand hurt three years

16   ago. Those aren't discrete acts of discrimination. They're

17   not claims of discrimination at all. They're claims that

18   something bad happened to these employees and the union I

19   guess their claim is should have done something about it and

20   then did something.

21        I suggest they don't even fall within the statement

22   in Morgan that you can use discrete acts of discrimination

23   outside of the statute of limitations as evidence because

24   it's not evidence of discrimination.

25        Thank you.

1               **MR. BERGER:** It's fair to say that this

2      (indicating) is the amount of documentary evidence that's in

3      the case. It's going to be a long trial. I completely

4        disagree with my brother on what he said.

5               And what I think the SJC, the Supreme Court is very

6        clearly saying is that we can't completely sever relevant

7        evidence about a pattern in a plant. We have to take what

8        information can prove the evidence of the case as it comes

9        in.

10               And I think that the decision could hardly be

11        clearer. I mean, it was a little surprising that it went

12        this pro plaintiff. And I think that any motion in limine

13        would be premature. Clearly it depends on what the evidence

14        is.

15               And our main witness, of course, is the union's

16        representative who had knowledge of many things and didn't

17      do anything.    So it's really going to depend.

18               **THE COURT:** Okay. I will take that under

19      advisement. I will deal with all these motions in one

20      order.

21               The same is true with the motion in limine to

22      preclude unspecific testimony.

23               Now, I take it that you are going to -- can't you

24      simplify the case by just eliminating the --

25               **MR. BERGER:** The DFR stuff --

1                    **THE COURT:** -- state law discrimination

2       claims?

3                    **MR. BERGER:** No, because of an interesting

4       problem. The cap on damages under the federal law is

5       $800,000. There is no cap on damages under 151(b). So this

6       is a God awful case for the plaintiff or I mean a great case

7       for the plaintiff.

8                    **THE COURT:** What about the contention that

9       there is a preemption here?

10                   **MR. BERGER:** Well, that was already addressed

11      in your summary judgment papers. And I consider it to be a

12      very weak argument as I think summary judgment resolution

13      pointed out because this is not the kind of case where there

14      is one in preemption.

15                   **THE COURT:** I am going to take that --

16                   **MR. BERGER:** Okay.

17                   **THE COURT:** I am going to reconsider that and

18      we will see.

19            Since you waved that pile of documents and have put

20      fear in my heart as to what kind of case this is going to

21      be, what is the chance of my getting you to settle this

22      case?

23                   **MR. BERGER:** That's a -- if I could just back

24      up for one minute.

25            On the motion to attach, if I could just focus on

```
 1     that for one minute because it has to do with the

 2     settlement.

 3            What happened was there were some confusion. I had

 4     filed two affidavits (indicating) in this case -- the one

 5     thing I do know about is collection law -- that I referred

 6     to in my motion to attach under Rule 64.

 7            Rule 64 says at any time you can move for an

 8     attachment. This is the classic scenario of a motion for an

 9     attachment.

10            Now, the motion that was allowed here was to strike

11     our submission because there was no affidavit. There was an

12     affidavit and it was in the papers. And I have practiced

13     for almost thirty years. The affidavit was in the

14     papers and was --

15                THE COURT: Well, let's assume that I am not

16     penalizing you because there was no affidavit. But it is

17     that whatever was submitted -- give me a second.

18            (Pause in proceedings.)

19                THE COURT: The evaluation --

20                MR. BERGER: Yes.

21                THE COURT: Everything that has been submitted

22     does not constitute an evaluation that poses danger that

23     there is going to be a verdict here of 65 million dollars or

24     whatever it is and there won't be any money to pay.

25                MR. BERGER: There are some indicia. First
```

1      off, what we went through in 17 pages of detailed evidence,

2      evidence, not my comments, was the information from the

3      transcripts and the documentary evidence which is part of

4      the case now. That's been ruled on by the Court.

5           In that 17 pages of evidence we also included an

6      assessment of damages based on their testimony. And here is

7      why it is critical to the scenario that we are dealing with

8      in terms of resolving this dispute.

9           I think it is an understatement to say that what

10     this case is about is the union ignoring these people. And

11     so what we tried to do, apparently awkwardly by referring to

12     affidavits that were already in the file -- and then I

13     couldn't believe it. They filed a motion to strike it when,

14     knowing that these affidavits were in the file but they, you

15     know, it was clever.

16          But here's what we're dealing with is an assessment

17     of damages where each plaintiff has lost wages -- these are

18     poor people -- maybe $60,000. Future wages, maybe $150,000.

19     We don't have to worry about tax because these aren't

20     taxable people because their income is too low.

21          Emotional distress, 400,000. I have myself in a

22     case called Thomasi (ph.) versus Commonwealth gotten an

23     assessment of emotional damages of $800,000. So that's not

24     crazy because I have done it.

25          Punitive damages, 200,000. That's under the

```
 1        federal bar. That equals $810,000 for the five unemployed

 2        plaintiffs for damages of five million fifty thousand. The

 3        unemployable ones, the ones who passed their peak years,

 4        each plaintiff, there are seven of those. Lost wages,

 5        again, $60,000. Not a big item. Future wages, $175,000.

 6        Emotional distress, again, 400,000.

 7             Now, this was a complete sweat shop. People

 8        were -- there was fire going on while the union was there.

 9        What was going on -- it was upholstery workers and there

10        were burning fires going on. There was one man who talks

11        about spitting up blood constantly.

12             There were people who had their fingers cut off.

13        The machinery was a hundred years old.

14             And bear in mind that in the lead case in the

15        United States, United States versus Lukens (ph.), it

16        involved the same union, the same conduct. So this is

17        nothing new. In fact, if you go through the history of this

18        union, you will see that they have been attacked for their

19        safety issues in mills, whether the mills are like this one

20        which is just a sweat shop for upholstery workers or whether

21        it is mine workers. This a far-reaching case.

22             Let me go through the emotional distress where

23        people are living in a sweat shop. 400,000 for the seven,

24        200,000 punitive, for a total there of 835. So seven times

25        that is 584,000.
```

1          Now, the mix. That goes 40, 120, 400, 200, 760,

2     the three million eight hundred for a grand total of

3     $13,695,000.

4          Now, we went through the attachment under 151(b) to

5     get the attention of these people. If you would have your

6     clerks do a search in the Internet of the number of times

7     the United Steelworkers have been sued for safety

8     violations, my suggestion is it's going to be in the

9     hundreds. And nobody, nobody has called them to task.

10    Nobody. That's why we filed the attachment. And then it's

11    off on some procedural thing which doesn't even exist.

12         The affidavits are here (indicating). We

13    painfully --

14         **THE COURT:** What does this all have to do with

15    your willingness to try to settle the case? I thought that

16    was my question.

17         **MR. DIAZ:** Let me address the question, Your

18    Honor. Good morning.

19         I have spoken to all the individuals. I have had

20    two individuals, Jose Ramirez and Jose Ortiz, on call.

21    They're more than willing to bring it to the table, discuss

22    it. They have given me a number they have in mind. I'd be

23    more than happy to talk to my brother here --

24         **THE COURT:** No, have you had any conversation

25    about settling the case?

1          **MR. DIAZ:** I contacted them. I think one of

2     the concerns -- and I'm sure that they're going to address

3     it -- is they don't necessarily want to resolve the case

4     that may open up a Pandora's box to other people making

5     claims. I told them we would be more than happy to have a

6     confidentiality agreement. Anything that happens here stays

7     here.     You know, we are more than willing to discuss that.

8               I'll let my brothers address it.

9          **THE COURT:** Well, has there been any --

10    everybody keeps popping up here.

11         **MR. BERGER:** There was a one-day mediation,

12    federal mediation. That was before the summary judgment.

13         **THE COURT:** That was with Magistrate Dein?

14         **MR. BERGER:** That's right. And the whole

15    thing was what would happen on summary judgment and we won.

16         **MR. DIAZ:** The bottom line, Judge, is there

17    has been no further -- other than inquiry from time to time,

18    there has been no settlement discussion.

19         **THE COURT:** All right. Now, you guys sit down

20    at the front table. No more popping up.

21               The defendants, is there any interest in trying to

22    settle this case?

23         **MR. LICHTEN:** I have spoken to the general

24    counsel for the steelworkers. And it is hard for the

25    steelworkers to make an offer because it's still not clear

1    what it did wrong and doesn't believe that there is anything

2    that legally could support any type of verdict.

3           However, they're willing to make a nominal offer

4    of, you know, a couple thousand dollars per individual and

5    some modest amount of attorneys' fees. But that's where

6    they're at.

7           **THE COURT:** Okay. So what I have to do is to

8    just revisit these motions that are pending, decide them and

9    then give you a trial date.

10           **MR. BERGER:** And may I request that you

11    revisit the motion to attach?

12           **THE COURT:** Yes.

13           **MR. BERGER:** With the knowledge that the

14    affidavits are in the file.

15           **THE COURT:** Yes.

16           **MR. BERGER:** Thank you.

17           **MR. LICHTEN:** Your Honor.

18           (Whereupon, the Court and the Clerk conferred.)

19           **THE COURT:** Zita reminds me that we are going

20    to take care of all this last-minute business so we probably

21    won't be able to meet the March 20 trial date.

22           You are going to come up with a new complaint for

23    us to get in mind exactly what we -- they have to have an

24    opportunity to respond to the amended complaint. I want to

25    deal with these motions.

1          So what we will do is kick ahead -- we will excuse

2     you from the March 20th trial date, which is not -- this is

3     a fairly new case so that is not so bad.

4          And at the time that I issue an order with respect

5     to the motions that I am going to take under advisement

6     again we will give you a date to return for a further final

7     conference and set a trial date that is convenient for

8     everybody not too far in advance of the conference.

9          Does that seem okay?

10          **MR. BERGER:** Yes.

11          TRE COURT: So you are going to file your

12     amended complaint. How much time do you need to respond to

13     the amended complaint so we are dealing with a --

14          **MR. LICHTEN:** Just perhaps two weeks, Your

15     Honor.

16          **THE COURT:** All right, two weeks to respond.

17          **MR. ROBERTS:** Your Honor, if I may?

18          TRE COURT: Yes.

19          **MR. ROBERTS:** Based on the fact that

20     Mr. Berger will be redrafting the complaint, I wonder if it

21     makes sense to issue some sort of nisi order regarding

22     Farnsworth Fibre and Sherman-Feinberg in that it sounds like

23     they won't be part of the new matter.

24          **MR. BERGER:** Your Honor, when I do the

25     drafting, I'm just going to amend them out. But I haven't

1     done the drafting yet. I make that representation.

2                    TRE COURT: All right.

3                    **MR. LICHTEN:** Well, Your Honor, we may cross

4     claim against them. Some of the issues raised by my brother

5     counsel about back pay and front pay, the plant closed and

6     went bankrupt. There is no such thing as a front pay claim

7     or a back pay claim that the union would be responsible for.

8     We cited this to you in our responsive motion for

9     attachment.

10                    If there is anything like a back pay or a front pay

11     obligation, it would have to be the responsibility, if any,

12     of the employer because the union can't stop a plant from

13     closing.

14                    **THE COURT:**     You haven't made a direct case

15     against them I take it.

16                    **MR. LICHTEN:** Well, they're in the case right

17     now.   They're a joint defendant right now so.

18                    **THE COURT:** He is going to let them out.

19                    **MR. LICHTEN:** What?

20                    **THE COURT:** He is going to let them out.

21                    **MR. LICHTEN:** All I'm saying is I want to

22     apprise the Court that we may then file a cross claim

23     against them.

24                    **THE COURT:** All right. You have got two weeks

25     after he files his complaint. You do whatever you want.

1          **MR. LICHTEN:** Thank you.

2          With respect to some of the comments made about the

3     motion to attach, we fully addressed this in our brief but I

4     would like to address some of the points that were made.

5          **THE COURT:** Go ahead.

6          **MR. LICHTEN:** Very briefly, Your Honor, the

7     reason we moved to strike was not necessarily because there

8     were no affidavits. We understand he's contending there

9     were other affidavits they had filed. It's because we cited

10    clear law that attorney affidavits may not suffice as a

11    matter of law. And he cited you First Circuit and district

12    court precedent, that an attorney's affidavit cannot

13    constitute a showing of a reasonable likelihood of success

14    on the merits. And that law I submit is clear.

15         Secondly, this 17 pages of evidence is just

16    testimony of witnesses to the effect that there were fires,

17    there was smoke, I hurt my finger. Nothing saying that this~

18    was discriminatory. There was no evidence, not one shred of

19    evidence that anything the steelworkers did or did not do

20    was the result of discrimination.

21         In fact, the international rep that they're

22    complaining about is himself black and his assistant was

23    Puerto Rican. So there is no evidence of discrimination.

24         Now they just announced that they're doing away

25    with the DFR claim. So all this stuff about safety

1    violations and all that, those are DFR violations. They're

2    not discrimination without some showing that the actions

3    taken was because of discrimination.

4        Now, here's the interesting thing. They just

5    accused us of doing this all over the country. First of

6    all, the U.S. Supreme Court held in the Rawson case, 495

7    U.S. 362, that a union has no responsibility for ensuring

8    safety. That's for OSHA. That's for the employer and the

9    Worker's Comp. There is no generalized duty of a union to

10   ensure safety. And that's U.S. Supreme Court precedent.

11       But let's assume he is correct. If we've done this

12   all over the country in mines where there are all these

13   white workers, then how could we be guilty of discrimination

14   if we generally don't take care of safety violations,

15   because they just announced that they're dropping their DFR

16   claim. So how could they possibly get an attachment for 65

17   million dollars saying that this is a pattern of treating

18   minorities and whites equally across the country.

19       It doesn't make any sense, Your Honor. It's

20   illogical. And it borders on the absurd.

21       Finally, Your Honor, and I'd like to address this,

22   with respect to these damage calculations of front pay and

23   back pay, again, what is absolutely not disputed in this

24   case is this employer -- arguably it was an old mattress

25   stuffing plant in Boston with outdated machinery. There is

1       no question. And they closed, they closed their doors. And

2       they have never been heard of again. They don't even exist

3       any more.

4              That's unfortunate but it's hard to understand how

5       in a motion for attachment they could claim front pay and

6       back pay because even if we didn't bargain some severance

7       pay for these individuals, that would be the extent of their

8       damages -- and we briefed this in the motion to attach --

9       there would be a couple of weeks of severance pay.

10             How could there be front pay? How could -- the

11      union has no obligation and no lawful way that they could

12      prevent a plant closing.

13             The U.S. Supreme Court has decided in the National

14      Labor Relations Board context that a union can't prevent a

15      plant from closing. The only duty to bargain that the

16      employer had is to bargain over the effects of the closure,

17      which the union did by the way, but it has no right to even

18      bargain over the decision to close.

19             So how can there be front pay and back pay as a

20      matter of law when we couldn't prevent the plant from

21      closing. And they got paid everything, the workers got paid

22      everything. They've been paid their health insurance, their

23      pension, their wages up until the plant closure. It doesn't

24      make any sense, Your Honor.

25                     **THE COURT:** Okay.

1          **MR. BERGER:** Your Honor, it is true that I

2    submitted an affidavit. It annexes all of the deposition

3    transcripts of the case. It doesn't reflect any of my

4    opinions about the case whatsoever, although that was what

5    was represented in the papers.

6               And in the other affidavit it annexes the

7    documentary evidence in the case, every piece of it. None

8    of my opinions in it. For them to say that I have put an

9    opinion as an attorney in it, which they said, is just not

10   correct.

11             **THE COURT:** All right. We will take it all

12   under advisement. Thank you very much.

13             **MR. BERGER:** Thank you, Your Honor.

14             **MR. DIAZ:** Thank you, Your Honor.

15             **MR. LICHTEN:** Thank you, Your Honor.

16             **MR. ROBERTS:** Thank you, Your Honor.

17

18        (WHEREUPON, the proceedings were recessed at 11:05

19             a.m.)

20

21

22

23

24

25

CERTIFICATE

I, Carol Lynn Scott, Official Court Reporter for the United States District Court for the District of Massachusetts, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

CAROL LYNN SCOTT Official Court Reporter John J. Moakley Courthouse 1 Courthouse Way, Suite 7204 Boston, Massachusetts 02210

(617) 330-1377