UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
EUCLIDES SOTO, et al.,              )
                                    )
            Plaintiffs,             )
                                    )   Civil Action No.
v.                                  )   04-10892-JLT
                                    )
UNITED STEELWORKERS OF AMERICA,     )
AFL-CIO/CLC and UNITED STEELWORKERS )
OF AMERICA, LOCAL 421-U,[1]         )
                                    )
            Defendants.             )
_____ )

**PRETRIAL MEMORANDUM OF THE DEFENDANTS UNITED STEELWORKERS, LOCAL 421-U AND UNITED STEELWORKERS**

Pursuant to the Court's Order dated October 5, 2006, Defendants United Steelworkers, Local 421-U and United Steelworkers (the union) respectfully submit the following Pretrial Memorandum:

**A.    Trial Counsel:**

Harold L. Lichten
Alfred Gordon
Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C.
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 367-7200

Robert Alexander
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Ste. 1000
Washington, DC 20005
(202) 842-2600

---

[1] The United Steelworkers of America has merged, and now, the official name is United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC.

B. **Matters Addressed in the Court's Pretrial Order**

1. **Concise Summary of Evidence**

Plaintiffs are former employees of the Sherman Feinberg Corp. and Farnsworth Fibre Corp. (the company) who lost their jobs when the company closed its mattress factory and went out of business.[2] At all relevant times, the plaintiffs were represented by the Union, which took over as the plaintiffs' exclusive representative when the Upholsters International Union merged into the United Steelworkers. When, in early October 2003, the company stated its intention to close the factory and cease all operations, the union met with the company and the company refused to offer any severance benefits because the company was going out of business. Such a scenario is typical of small companies that close their doors without offering any severance to their employees despite the union's attempt to negotiate such benefits. Here, in November of 2003, the union did file three grievances relating to the closing, all of which were settled by the union in the employees' favor.

Though the plaintiffs contend that they suffered health and safety issues at the factory prior to the closing – such as injuries from broken machinery or small fires at the plant – none of the plaintiffs, nor indeed any employee, ever brought any such concerns to the Steelworkers representative assigned to the bargaining unit nor indeed to any other union representative, until many months after the plant closed. The union was therefore unaware of these issues until such time

---

[2] The company was originally a party to this case, which alleged that the company breached its contractual obligations in violation of section 301 of the Labor-Management Relations Act. The Plaintiffs amended those allegations out of its most recent complaint, leaving only an allegation of intentional racial discrimination against the Union under Title VII.

as it could no longer address them through the grievance and arbitration machinery that existed under the collective bargaining agreement.

### 2. Facts Established by the Pleadings

There have been no stipulations or admissions of counsel. The following facts are established by the pleadings:

Plaintiffs are all Hispanic.

Plaintiffs were employed by the company until the company closed in November 2003 and were members of the union during the period of their employment with the company. Plaintiffs became members of Local 421-U, an amalgamated local union of the United Steelworkers, after the Upholstery Workers union merged with the United Steelworkers.

The company and the union entered into a number of collective bargaining agreements over the years, the most recent of which was effective from November 1, 2002, to October 31, 2006. The contract contained no provision preventing the plant from shutting down. In addition, the contract contained no provision for severance pay in the event of a plant shutdown, though it did require the company to continue paying into the union's pension fund.

Lowell Alexander was the union's International Representative assigned to the plaintiffs' unit since January 2002. He is an African-American.

Since at least 2001 and during all relevant times, Masiel DaSilva was an administrative assistant at the Steelworkers' District 4 office in Milford, Massachusetts, where Mr. Alexander works. Ms. DaSilva is herself Hispanic and speaks fluent Spanish.

At relevant times during 2002-2003, Jose Ortiz, one of the plaintiffs in this case, was elected by his fellow employees to serve as unit chair/shop steward. Miguel DeJesus (who is not a plaintiff in the case) was selected by his fellow employees to serve as Local Union Committee Representative. Mr. Ortiz and Mr. DeJesus were on the union's negotiating team with Mr. Alexander during the contract negotiations that led to the November 1, 2002, collective bargaining agreement. Both Mr. Ortiz and Mr. DeJesus recommended that the employees ratify the agreement, and the employees did so. After the contract was executed and ratified, the union translated the contract into Spanish and provided copies of the agreement to the employees.

Pursuant to Article 16 of the collective bargaining agreement, the only duly authorized agents of the union for the purposes of enforcing the terms of the contract were the Staff Representative assigned by the United Steelworkers, Mr. Alexander, and for the purposes of filing and adjusting grievances, the shop steward, Mr. Ortiz.  Pursuant to Article 18 of the collective bargaining agreement, the shop steward is responsible for initiating grievances that arise at the facility, and several employees brought such concerns or grievances to Mr. Ortiz.

Mr. Alexander encouraged Mr. Ortiz to attend a special training seminar being put on by the United Steelworkers at the Holiday Inn in Braintree in January 2003, which was entitled "Union Stewards Training in Spanish."  In order to encourage Mr. Ortiz to attend, Mr. Alexander secured the Steelworkers International's agreement to let Mr. Ortiz attend at the International's expense (the International would pay his tuition).  The Steelworkers did put on this training on January 3, 2003, and it did pay for a number of Spanish-speaking union representatives to attend, though Mr. Ortiz did not attend.

In the summer of 2003, at the request of Mr. Ortiz, Mr. Alexander arranged to meet with the workers at Farnsworth Fibre on the shop floor, with the machines turned off, to answer any questions the employees had about the union.  Mr. Alexander brought with him Masiel DaSilva to translate.

In early October of 2003, the company announced that it was shutting down its facility completely and going out of business.  Mr. Alexander came to the facility with Ms. DaSilva (as an interpreter) to meet with the employees and the company.  Mr. Alexander answered employees' questions regarding such issues as vacation pay and pension entitlements, and Ms. DaSilva had later conversations with at least one employee about his pension entitlement.  (The plaintiffs do not dispute these facts; they only dispute whether issues such as vacation pay and pension benefits are related to the plant closing.  See Pl. Opp. to SJ at ¶¶ D23.)

Later, after conferring with Mr. Ortiz and the workers, Mr. Alexander filed three grievances alleging the following contract violations: (1) that the company attempted to stop health insurance coverage for employees at the time of the shutdown without providing such benefits until the end of the month; (2) that the second shift was terminated before the first shift without affording senior individuals on the second shift the right to bump to the first shift; and (3) that the company failed to pay report pay to employees on the second shift who showed up for work but were told that the shift had already been disbanded.  Mr. Ortiz participated in preparing those grievances and signed them, and though he was invited to attend the grievance meetings with the company, Mr. Ortiz did not attend.  During the grievance meeting on November 19, 2003, Mr. Alexander settled each

4

of the three grievances, receiving monetary compensation for the affected employees. (The plaintiffs do not dispute that these grievances were filed and resolved; they only dispute whether these grievances are related to the plant closing. See Pl. Opp. to SJ at ¶¶ D24-26.)

3. **Contested Issues of Fact**

   a. Whether any claims are within the relevant statutes of limitation.

   b. Whether the union was ever requested to and failed to file or pursue any valid grievance on behalf of any member, and if so, whether such failure was the result of intentional race discrimination against the plaintiffs.

   c. Whether the union could have forced the company to pay severance pay or could otherwise have prevented the plant from closing in November of 2003, and if so, whether the union's failure to do so was the result of intentional race discrimination against the plaintiffs.

4. **Jurisdictional Questions**

None.

5. **Questions Raised by Pending Motions**

Motion in Limine –    For the reasons asserted in the union's pending motions in limine, the Court should disallow evidence to be taken regarding matters falling outside the relevant statute of limitations for discrimination claims.

6. **Issues of Law**

The plaintiffs' allegations regarding race or national origin discrimination must necessarily fail because the plaintiffs have not alleged any intentional conduct on the part of the union relating to their protected status.[3]

---

[3] Pipe Fitters Assoc., Local Union 597, 334 F.3d 656 (7th Cir. 2003); Barbour v. Dynamics Research Corp., 63 F.3d 32, 39 (1st Cir. 1995) (plaintiffs must offer proof that the "defendant acted with the specific intent of discriminating against the plaintiff.").

5

The union cannot be found to have intentionally discriminated against the plaintiffs by failing to prevent job terminations or otherwise negotiate provisions in the contract regarding the effects of plant closure because there is no contractual obligation on the part of the union to prevent plant closures or terminations or to provide severance benefits, and none is required under federal labor law.[4]

Vague allegations that the union has not provided apprenticeship, educational, or safety programs are without merit since a union has no duty under state or federal law to provide apprenticeship, educational or safety programs and the plaintiffs have failed to produce evidence of programs or privileges withheld from Farnsworth Fibre employees.[5]

The plaintiffs cannot introduce the kind of vague and unspecific testimony of safety problems at the plant as were offered in pretrial motions since such evidence is not probative of the issues relevant to this case, is too vague to be admissible, and would unfairly prejudice the union.[6]

Plaintiffs' allegations regarding safety infractions at the plant involve company conduct, not union conduct, and must be dismissed on that basis alone, as there is no general far-reaching duty of a union to provide employees with a safe working environment in the absence of a contractual requirement.[7]

Plaintiffs' discrimination claims relating to the union's alleged failure to file grievances on their behalf are time-barred since no plaintiff ever sought or

---

[4] First National Maintenance Corp. v. NLRB, 452 U.S. 666, 677, 681-82 (1981) (a company has a duty to bargain only over the effects on employees of a shutdown of operations, and not the decision itself); Textile Workers v. Darlington Mfg. Co., 380 U.S. 263, 274 (1985) (employer has right to close its entire business, thereby ending employer-employee relationship); Magic Fraser v. Magic Chef-Food Giant Markets, Inc., 324 F.2d 853, 855-56 (6th Cir. 1963) (an employer has right to cease operations even when business is discontinued during the life of a collective bargaining agreement).

[5] USWA v. Rawson, 495 U.S. 362, 376 (1990) (to the extent that a union assumes any obligations of care towards its members, they derive from the collective bargaining agreement).

[6] Perez v. Volvo Car Corp., 247 F.3d 303, 316 (1st Cir. 2001) (evidence must meet certain rudiments of specificity); Kaufman v. Puerto Rico Tel. Co., 841 F.2d 1169, 1172-73 n.5 (1st Cir. 1988) (the evidence "must generate the specific facts necessary to take the asserted claim out of the realm of speculative, general allegations."); Dente v. Riddell, Inc., 664 F.2d 1, 5 (1st Cir. 1981) (discussing the use of the balancing test in Rule 403 as a guide to exclude prejudicial evidence).

[7] USWA v. Rawson, 495 U.S. 362 (1990); Condon v. Local 2944, United Steelworkers of America, 683 F.2d 590 (1st Cir. 1982); Goulet v. Carpenters District Council of Boston, 884 F. Supp. 17, 23 (D. Mass. 1994).

was denied the union's assistance in filing a valid and supportable grievance within 300 days of the plaintiffs' filing with the MCAD/EEOC.[8]

See also Defendant's Proposed Jury Instructions, attached hereto as Exhibit A.

### 7. Requested Amendments to Pleadings

In the time since this action was initiated, the union has merged with another organization and has changed its name. The union therefore requests that the caption in this case be amended to reflect its new name: United Steel, Paper, and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO/CLC.

### 8. Additional Matters

None.

### 9. Probable Length of Trial

As all of the seventeen plaintiffs have expressed their intention to testify, the Defendants estimate that the trial will last for approximately two weeks, or slightly longer.

---

[8] National Railroad Passenger Corporation v. Morgan, 536 U.S. 101 (2002); Luciano v. Coca-Cola, 307 F.Supp.2d 308, 318 (D. Mass. 2004)

**10.    Witnesses to Be Called[9]**

    Lowell Alexander
    Albert H. Polk
    Masiel DaSilva
    Kenneth J. Doucette
    Lawrence S. Feinberg
    Nelson Acevedo
    Angel Baez
    Clemente Hernandez
    Antonio Martinez
    Luis A. Martinez
    Jose E. Ortiz
    Eulogio Ortiz
    Juan R. Colon Ortiz
    Wilfredo C. Ortiz
    Elison Pena
    Cesar Narciso Pizarro
    Jose D. Ramirez
    Ramon Rodriguez
    Euclides Soto
    Rafael Torres
    Mirrain Miranda
    Rafael Moreno

**11.    Proposed Exhibits**

    a.    Video deposition of Theresa Merrill Stones, taken on December 14, 2006.

    b.    Written transcript of video deposition of Theresa Merrill Stones, taken on December 14, 2006, together with deposition exhibits 1 through 11.

    c.    Collective bargaining agreement between Sherman-Feinberg Corp. & Farnsworth Fibre Corp. and U.S.W.A. Local 421-U (English version)

    d.    Collective bargaining agreement between Sherman-Feinberg Corp. & Farnsworth Fibre Corp. and U.S.W.A. Local 421-U (Spanish version)

---

[9] The Court granted the union's motion to take the videotaped deposition of Theresa Merrill Stones for use at trial. Such deposition was taken on December 14, 2006.

8

e. Letter designating Lowell Alexander as staff representative for Local 421 U-6.

f. Salary voucher for Jose Ortiz's participation in collective bargaining

g. Notice of Spanish stewards training

h. Memo and checks relating to Spanish stewards training

i. Letter from Feinberg to Alexander announcing the shop closing

j. Benefit report for Jose Ramirez

k. Grievance Report regarding medical benefits

l. Grievance Report regarding seniority provisions

m. Grievance Report regarding report pay

n. Collective bargaining agreement between Sealy Mattress Co. and USWA, Local 421-U

o. Sealy Mattress plant closure agreement

p. Collective bargaining agreement between Beebe Rubber Co. and USWA, Local 570

q. Collective bargaining agreement between Cone Blanchard Machine Co. and USWA.

r. Collective bargaining agreement between Rosbro Plastics and USWA.

s. Rosbro Plastics closing agreement

t. Seniority listing for Sealy Mattress Company's Randolph, MA, plant

u. Settlement proposal for contract extension/plant closing between Davol, Inc. and USWA, Local 911.

v. Settlement agreement for contract extension/plant closing between Davol, Inc. and USW, Local 911.

w. List of union employees from Davol, Inc.

9

x.  Receiver's Recommendation on Allowance of Claims in <u>Rosen v. E. Rosen Co.</u>, Rhode Island Superior Court Case P.M. Nos. 98-3870, 98-3871, 98-4061.

y.  Collective bargaining agreement between Bristol Boat Co. d/b/a Bristol Yacht & Marine Service and the USWA.

z.  Collective bargaining agreement between Robert E. Derecktor of Rhode Island, Inc. and the USWA.

aa. Collective bargaining agreement between Glas-Kraft, Inc. and the USWA.

bb. Agreement between Yarns Unlimited, Inc. and USWA.

cc. Deposition transcript for Jose Enrique Ortiz

dd. Deposition transcript for Nelson Acevedo

ee. Deposition transcript for Angel Baez

ff. Deposition transcript for Clemente Hernandez

gg. Deposition transcript for Antonio Martinez

hh. Deposition transcript for Luis A Martinez

ii. Deposition transcript for Eulogio Ortiz

jj. Deposition transcript for Juan R. Colon Ortiz

kk. Deposition transcript for Wilfred Ortiz

ll. Deposition transcript for Elison Pena

mm. Deposition transcript for Cesar Pizarro

nn. Deposition transcript for Jose D. Ramirez

oo. Deposition transcript for Ramon Rodriguez

pp. Deposition transcript for Euclides Soto

qq. Deposition transcript for Rafael Torres

rr. Letter from Robert Berger to union – March 4, 2004

ss. Letter from Theresa Merrill Stones to Robert Berger – March 18, 2004

tt. Letter from Berger to Merrill Stones – April 1, 2004

uu. Letter from Kenneth Doucette to Berger – April 6, 2004

vv. Letter from Merrill Stones to Berger – April 7, 2004

ww. Complaint and Demand for Jury Trial

xx. Amended Complaint and Demand for Jury Trial

yy. July 29, 2002, letter from Steelworkers Pension Trust to USWA – District 4

zz. August 19, 2002, letter from USWA – District 4 to Farnsworth Fibre Corp.

aaa. August 19, 2002, letter from USWA, Local Union 421-U to USWA International President

bbb. August 29, 2002, letter from FMCS to Lowell Alexander

ccc. September 20, 2002, email from USWA International President to USWA – District 4.

ddd. October 2002 bargaining proposals presented by Farnsworth Fibre Corp. and Sherman-Feinberg Corp.

eee. First-round bargaining notes of Lowell Alexander.

fff. October 28, 2002, bargaining notes of Lowell Alexander.

ggg. October 29, 2002, letter from Lowell Alexander to Kenneth Doucette.

hhh. Contract extension.

iii. November 1, 2002, letter from USW to Kenneth Doucette.

jjj. Correspondence from Lowell Alexander to Marge Stout regarding a request to get a quote for a dental program

kkk. November 4, 2002, letter from Marge Stout to Lowell Alexander.

lll. November 4, 2002, bargaining notes of Lowell Alexander.

mmm. November 13, 2002, bargaining notes of Lowell Alexander.

Respectfully submitted,

UNITED STEELWORKERS, LOCAL 421-U and UNITED STEELWORKERS, AFL-CIO,

By their attorneys,

\_\_/s/ Alfred Gordon_____
Harold L. Lichten, BBO # 549689
Alfred Gordon, BBO # 630456
Pyle, Rome, Lichten, Ehrenberg
   & Liss-Riordan, P.C.
18 Tremont St., Ste. 500
Boston, MA  02108
(617) 367-7200

Robert Alexander
Bredhoff & Kaiser, P.L.L.C.
805 15th Street N.W., Ste. 1000
Washington, DC 20005
(202) 842-2600

DATE:     January 10, 2007

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served by electronic notice on the attorney of record for each party on January 10, 2007.

\_\_/s/ Alfred Gordon_____
Alfred Gordon